No. 26-2806

IN THE

# United States Court of Appeals for the Eighth Circuit

X.AI LLC,
Plaintiff-Appellant,

v.

KEITH ELLISON, IN HIS OFFICIAL CAPACITY, AS ATTORNEY GENERAL OF MINNESOTA
Defendant-Appellee.

On Appeal From
The United States District Court for the District of Minnesota
No. 0:26-cv-03425-DWF-DTS
Judge Donovan W. Frank

## EMERGENCY MOTION OF PLAINTIFF-APPELLANT X.AI LLC FOR AN INJUNCTION PENDING APPEAL

Kenton J. Skarin
Reid Coleman
SPACEXAI LLC
800 West Cesar Chavez Street
Austin, TX 78701
kskarin@x.ai
rcoleman@x.ai

Robert E. Dunn
*Counsel of Record*
EIMER STAHL LLP
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008
(408) 889-1690
RDunn@eimerstahl.com

Johnathan Hall
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100

Chicago, IL 60604
(312) 660-7600
jhall@eimerstahl.com

Todd A. Noteboom
Andrew P. Leiendecker
Sarah R. Almquist
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.leiendecker@stinson.com
sarah.almquist@stinson.com

*Attorneys for Plaintiff-Appellant SpaceXAI LLC*

## TABLE OF CONTENTS

INTRODUCTION ........ 1
BACKGROUND ........ 4
A. Grok Imagine and § 325E.91 ........ 4
B. Procedural History ........ 6
ARGUMENT ........ 8
I. SPACEXAI IS LIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL. ........ 8
A. Section 325E.91 Targets Protected Free Speech. ........ 8
B. Section 325E.91 Is Content Based and Cannot Survive Heightened Scrutiny. ........ 11
C. Section 325E.91 Is Also Facially Overbroad. ........ 19
II. SPACEXAI IS LIKELY TO PREVAIL ON THE REMAINING FACTORS. ........ 20
A. SpaceXAI and Its Users Face Ongoing, Irreparable Harm. ........ 20
B. The Balance of Equities and the Public Interest Support Relief. ........ 25
CONCLUSION ........ 28



Appellate Case: 26-2806 Page: 3 Date Filed: 09/11/2026 Entry ID: 5682805

## TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) .......... 8

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021) .......... 24, 25, 27

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) .......... 19

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) .......... 16

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) .......... 13, 14

*Benisek v. Lamone,*
585 U.S. 155 (2018) .......... 22

*Brandt v. Davis*,
191 F.3d 887 (8th Cir. 1999) .......... 25

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) .......... 8, 9

*Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
562 F. Supp. 279 (E.D. Ark. 1983) .......... 24

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... 15

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 20, 21

*Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975) .......... 12

*Free Speech Coal. v. Paxton*,
606 U.S. 461 (2025) .......... 2



Appellate Case: 26-2806 Page: 4 Date Filed: 09/11/2026 Entry ID: 5682805

*Gordon v. Holder*,
632 F.3d 722 (D.C. Cir. 2011) ........................................................... 21

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*,
115 F.4th 889 (8th Cir. 2024) ........................................................... 22

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995) ........................................................................ 9

*Iancu v. Brunetti*,
588 U.S. 388 (2019) ...................................................................... 20

*Irizarry v. Yehia*,
38 F.4th 1282 (10th Cir. 2022) ........................................................... 9

*KH Outdoor, L.L.C. v. City of Trussville*,
458 F.3d 1261 (11th Cir. 2006) .......................................................... 27

*Kohls v. Ellison*,
166 F.4th 728 (8th Cir. 2026) ........................................................... 22

*Kohls v. Ellison*,
No. 24-cv-3754 (LMP/DLM), 2025 WL 66765 (D. Minn. Jan. 10, 2025) ........................................................................................ 18

*Maryland v. King*,
567 U.S. 1301 (2012) .................................................................... 27

*McCullen v. Coakley*,
573 U.S. 464 (2014) ...................................................................... 11

*Minn. Chamber of Commerce v. Choi*,
707 F. Supp. 3d 846 (D. Minn. 2023) ........................................... 21, 22

*Minn. Citizens Concerned for Life, Inc. v. Swanson*,
692 F.3d 864 (8th Cir. 2012) ............................................................ 20

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*,
460 U.S. 575 (1983) ........................................................................ 9

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ...................................................................... 10

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ........................................................ 25

*Ness v. City of Bloomington*,
11 F.4th 914 (8th Cir. 2021) ........................................................ 10

*NetChoice v. Griffin*,
812 F. Supp. 3d 905 (W.D. Ark. 2025) ........................................................ 19

*NetChoice, LLC v. Fitch*,
134 F.4th 799 (5th Cir. 2025) ........................................................ 10

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................ 25

*Novus Franchising, Inc. v. Dawson*,
725 F.3d 885 (8th Cir. 2013) ........................................................ 23

*Packingham v. North Carolina*,
582 U.S. 98 (2017) ........................................................ 19

*Phelps-Roper v. Nixon*,
509 F.3d 480 (8th Cir. 2007) ........................................................ 20

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ........................................................ 11, 12

*Rodgers v. Bryant*,
942 F.3d 451 (8th Cir. 2019) ........................................................ 27

*Schmitt v. Rebertus*,
148 F.4th 958 (8th Cir. 2025) ........................................................ 21, 25

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
467 U.S. 947 (1984) ........................................................ 10

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ........................................................ 9

*State v. Casillas*,
952 N.W.2d 629 (Minn. 2020) ........................................................ 13, 18



Appellate Case: 26-2806 Page: 6 Date Filed: 09/11/2026 Entry ID: 5682805

*United States v. Playboy Ent. Grp.*,
529 U.S. 803 (2000) ........ 12, 15, 16

*United States v. Stevens*,
559 U.S. 460 (2010) ........ 19, 20

*Video Software Dealers Ass'n v. Webster*,
968 F.2d 684 (8th Cir. 1992) ........ 15

*Virginia v. Am. Booksellers Ass'n*,
484 U.S. 383 (1988) ........ 10

*Walker v. Lockhart*,
678 F.2d 68 (8th Cir. 1982) ........ 8

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) ........ 19

**Statutes**

15 U.S.C. § 6851 ........ 16

47 U.S.C. § 223 ........ 6, 17

Minn. Stat. § 325E.91 ........ passim

Minn. Stat. § 609.341 ........ 3, 5

Minn. Stat. § 617.262 ........ passim

**Rules**

Fed. R. App. P. 8(a)(2) ........ 4

**Other Authorities**

S.F. 1119, 94th Leg., as introduced, subd. 1(b) (Minn. Feb. 5, 2025) ........ 17

## INTRODUCTION

Minnesota Statute § 325E.91 violates the First Amendment by imposing an overbroad, content-based ban on protected speech and the tools of visual expression. Without even examining the important First Amendment questions—which SpaceXAI, its amicus, and the United States briefed at length—the district court denied SpaceXAI's preliminary-injunction motion.[1] The court held that SpaceXAI waited too long—even though the company sought relief two-and-a-half months after the law was enacted and *before* it became effective—and declared that the government's interest in enforcing its law outweighed any interest in securing constitutional rights. But there is no support for the district court's manufactured delay rule, nor did the court cite any. And a court that ignores the merits in a First Amendment challenge cannot analyze the public interest; states have no valid interest in enforcing unconstitutional laws. This Court should grant an injunction pending appeal.

[1] SpaceXAI LLC, which was named "X.AI LLC" when it filed this action, changed its name to SpaceXAI LLC on August 6, 2026. It remains the same legal entity. The district court record and the notice of appeal use the former name; this motion refers to the company by its current name, SpaceXAI.

Section 325E.91 makes it unlawful for a company to let a user alter an image to depict an "intimate part" in an image or video of an individual. Minn. Stat. § 325E.91, subds. 1(d)(1), 2(a). SpaceXAI does not contest that Minnesota has a legitimate interest in prohibiting the dissemination of artificially generated nude images of real people without their consent. Indeed, SpaceXAI strictly prohibits its users from generating nonconsensual nude or sexualized images, and it has imposed technological barriers to prevent the creation of such images. But the statute stretches far beyond the Legislature's claimed target to hit other, equally protected constitutional interests.

Section 325E.91 is a content-based speech restriction. It is content based because liability turns entirely on what an image depicts. Content-based restrictions must satisfy strict scrutiny, a standard "fatal in fact absent truly extraordinary circumstances." *Free Speech Coal. v. Paxton*, 606 U.S. 461, 485 (2025). Minnesota cannot carry that burden.

Section 325E.91 omits every limit that might have confined its scope to the state's asserted interest. Rather than define "intimate part" with a common-sense definition of nudity (as similar statutes do), the Act borrows a criminal sexual-contact definition to include the "inner

thigh" or "breast"—male or female—in addition to "the primary genital area, groin, [or] buttocks … of a human being." Minn. Stat. § 609.341, subd. 5. Section 325E.91 thus reaches a large amount of ordinary and lawful expression protected by the First Amendment. The statute also has no scienter or dissemination requirements and applies even to images created with the consent of the depicted individual. Moreover, it lacks any exception for images with genuine artistic, satirical, journalistic, scientific, educational, medical, religious, or (most troublingly) political value. And it is not the least restrictive means because Minnesota and Congress each already have enacted narrower statutes that address the same issues.

To avoid the law's crushing $500,000 per image liability, SpaceXAI has been compelled to restrict access to Grok Imagine in Minnesota since August 1. Consequently, Minnesota users cannot create First Amendment-protected speech using SpaceXAI's industry-leading platform. That loss of First Amendment freedoms alone constitutes irreparable harm, and the public has no interest in enforcing an unconstitutional law. Accordingly, SpaceXAI asks this Court for the relief the dis-



Appellate Case: 26-2806 Page: 10 Date Filed: 09/11/2026 Entry ID: 5682805

trict court wrongfully withheld: an injunction pending appeal barring enforcement of § 325E.91 against SpaceXAI. *See* Fed. R. App. P. 8(a)(2).

## BACKGROUND

### A. Grok Imagine and § 325E.91

SpaceXAI is a frontier artificial-intelligence developer whose flagship product, Grok, includes an image- and video-generation model called Grok Imagine. Dkt. 40, *Declaration of Naser Baseer in Support of X.AI LLC's Reply in Support of Motion for Preliminary Injunction*, attached as Exhibit B ¶¶ 6-7. Grok Imagine generates and edits images and short videos from ordinary written or spoken prompts: a user describes what they have in mind, and the result arrives in seconds, with no artistic training or specialized software required. *Id.* ¶ 7. The images and videos users create span the full range of visual culture—illustration and concept art, animated family photographs, memes, product mockups, journalism, religious imagery, and political satire. *Id.* ¶ 9. Grok Imagine is available in all fifty States, and many of its users are in Minnesota. *Id.* ¶¶ 8-9.

Section 325E.91 makes it unlawful for a provider to allow a user to "nudify" an image or video. Minn. Stat. § 325E.91, subd. 2(a). The Act

defines the term as altering or generating an image "to depict an intimate part not depicted in an original unaltered image or video of an identifiable individual," where the result is "so realistic that a reasonable person would believe that the intimate part belongs to the identifiable individual." *Id.*, subd. 1(d). Rather than adopt a common-sense definition that focuses on images displaying the genitals, anus, or nipples of depicted individuals—as the State previously did in its deepfake statute, *id.* § 617.262, subd. 1(f)—the Act borrows the definition of "intimate part" from Minnesota's criminal sexual-contact statute, *id.* § 325E.91, subd. 1(c), sweeping in the "inner thigh," "buttocks," and "breast"—male or female—in addition to the "primary genital area" and "groin," *id.* § 609.341, subd. 5. Any AI provider that allows a user to create such an image can be fined up to $500,000 and is subject to a civil cause of action for treble and punitive damages. Minn. Stat. § 325E.91, subds. 4, 5(a).

What § 325E.91 omits is just as important as what it says. The statute contains no consent element, so an image created of a consenting adult is treated exactly like a nonconsensual image. Nor does it contain a dissemination requirement, so an image deleted immediately af-

ter its creation exposes the AI provider to sanctions. It contains no exception for images of artistic, political, scientific, journalistic, educational, medical, or religious value. And the statute contains no scienter requirement, instead imposing strict liability regardless of what a provider knew or could have prevented, and it offers no safe harbor for a provider with strong terms of service restrictions and technical controls.

### B. Procedural History

SpaceXAI filed this action on July 27, 2026, and sought a TRO and preliminary injunction on July 29, 2026—several days before § 325E.91's August 1 effective date and two-and-a-half months after the statute's enactment. Dkt. Nos. 1, 11. Liberty Justice Center filed an amicus brief in support of a preliminary injunction. Dkt. 26-1. And the United States filed a Statement of Interest, which explained the national interest in promoting AI dominance and contrasted § 325E.91 with the TAKE IT DOWN Act, 47 U.S.C. § 223(h), a federal statute enacted in 2025 to address deepfakes. Dkt. 42 at 7. The Foundation for Individual Rights and Expression (FIRE) similarly filed an amicus brief supporting SpaceXAI, Dkt. 33, but the district court refused to consider it. Dkt. 36.



Appellate Case: 26-2806 Page: 13 Date Filed: 09/11/2026 Entry ID: 5682805

The district court denied the TRO motion on July 31, citing the timing of the request, and set the matter for preliminary injunction hearing. Dkt. No. 21. To avoid strict-liability exposure once the Act took effect, SpaceXAI imposed additional restrictions on Grok Imagine's image-editing feature for Minnesota users on August 1, and those restrictions have remained in place since. Dkt. 40 ¶¶ 18-19.

On September 4, 2026, the district court denied the preliminary injunction. Dkt. 54, attached as Exhibit A. It did not address the merits of SpaceXAI's First Amendment claim, and instead rested its denial on two grounds. First, it held that SpaceXAI had "unreasonably delayed" and "failed to otherwise demonstrate a sufficient threat of irreparable harm." *Id.* at 11. Second, without even addressing the statute's constitutionality, the court concluded that the state's interests in enforcing the law outweighed the speech concerns SpaceXAI asserted. *Id.* at 12.

SpaceXAI filed a timely notice of appeal on September 4, 2026, Dkt. 55, and sought an injunction pending appeal in the district court on September 8, 2026, Dkt. 59. The district court denied that motion on September 9, 2026, reiterating its original order. Dkt. 66, attached as Exhibit C.

## ARGUMENT

A motion seeking an injunction pending appeal turns on the same four factors as a preliminary injunction motion: (1) whether plaintiff is likely to succeed on the merits; (2) whether the plaintiff will suffer irreparable injury absent an injunction; (3) whether an injunction will substantially injure the other parties; and (4) whether the public interest supports an injunction. *See Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982) (per curiam). SpaceXAI satisfies each of those factors.

### I. SPACEXAI IS LIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL.

#### A. Section 325E.91 Targets Protected Free Speech.

The images and videos users create with Grok Imagine are protected expression. "All manner of speech—from pictures, films, paintings, drawings, and engravings, to oral utterance and the printed word—qualify for the First Amendment's protections." *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023) (citation modified). Like other expressive media, those images and videos "communicate ideas—and even social messages," and "[t]hat suffices to confer First Amendment protection." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011). Protection does not depend on a work's merit, its medium, or whether it

carries any "narrow, succinctly articulable message." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). The use of artificial intelligence to create speech changes nothing, because "the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary when a new and different medium for communication appears." *Brown*, 564 U.S. at 790.

The act of *creating* protected expression is also protected. "Whether government regulation applies to creating, distributing, or consuming speech makes no difference." *Id.* at 792 n.1; *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). Accordingly, a State may not evade the First Amendment by "proceeding upstream and damming the source of speech." *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022). A law banning the "purchase or use of ink" is just as unconstitutional as a law forbidding the publication of books. *Sorrell*, 564 U.S. at 571 (citation modified); *see also Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582 (1983) (holding that a tax on the paper and ink a newspaper consumed burdened "rights protected by the First Amendment").

Grok Imagine is a speech-creation tool that provides Minnesotans the ability to generate expressive content. Dkt. 40 at 6-7. Designing and operating such a tool is an inherently expressive exercise that requires aesthetic and editorial judgment about what the tool will create. Its creation and operation are protected activity because they are "important stage[s] of the speech process that ends with the dissemination of information." *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021). And because SpaceXAI makes "expressive choices" about how Grok Imagine will alter an image at a user's direction, SpaceXAI has a protected First Amendment interest. *Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024); *see also id.* at 716 (platforms that "create expressive products … receive the First Amendment's protection").[2]

[2] SpaceXAI also has third-party standing to assert the First Amendment rights of its users because "the statute's very existence may cause others not before the court to refrain from constitutionally protected speech." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988); *see also Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984); *NetChoice, LLC v. Fitch*, 134 F.4th 799, 807 (5th Cir. 2025) ("online platform" has standing to "assert[] its users' First Amendment rights").

### B. Section 325E.91 Is Content Based and Cannot Survive Heightened Scrutiny.

Section 325E.91 regulates expression based on its content and is therefore subject to strict scrutiny. While SpaceXAI does not dispute Minnesota's interest in curbing the nonconsensual dissemination of artificially generated nude images—an interest SpaceXAI enforces through its own moderation and terms of service—Section 325E.91 is not narrowly tailored to advance that interest because the law is overinclusive, and there are far less restrictive alternatives that could achieve the same ends.

**1.** A law is content based when it "draws distinctions based on the message a speaker conveys," or when liability can be determined only by "examin[ing] the content of the message that is conveyed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *McCullen v. Coakley*, 573 U.S. 464, 479 (2014).

Section 325E.91 is content based on its face. Whether a provider is liable turns entirely on what a finished image depicts: a user may edit a photograph to alter a hairstyle without consequence, but the same tool used to reveal an inner thigh or bare chest exposes the provider to a $500,000 penalty. Minn. Stat. § 325E.91, subds. 1(d), 2(a). The Act thus

"singles out specific subject matter for differential treatment," the most "obvious" form of content discrimination. *Reed*, 576 U.S. at 163, 169.

**2.** Content-based restrictions are "presumptively unconstitutional," and Minnesota bears the burden of proving that the statute is narrowly tailored to a compelling interest and is the "least restrictive means" of advancing it. *Id.* at 163; *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 813 (2000). Section 325E.91 is not narrowly tailored because it sweeps far beyond Minnesota's interest and punishes a large amount of innocuous and protected speech.

*First*, § 325E.91 forbids a wide range of images containing no nudity as that term is ordinarily understood. The Act covers benign images of people in shorts (inner thigh), men without shirts (breast), and competitive swimmers (buttocks and breast). Penalizing a company because a user created an image of that kind serves no legitimate state interest. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975) (ordinance forbidding films containing "any uncovered buttocks or breasts" unconstitutionally reached beyond protecting minors from sexual content to "bar a film containing a picture of a baby's buttocks, the



Appellate Case: 26-2806 Page: 19 Date Filed: 09/11/2026 Entry ID: 5682805

nude body of a war victim, or scenes from a culture in which nudity is indigenous").

*Second*, the law reaches images created with consent. Creating a revealing image of oneself (or of one's partner with that person's consent) and creating the same image of an unwilling stranger are not morally equivalent acts, and a statute that treats them identically restricts far more speech than its object requires. As the Supreme Court explained, "[p]rotected speech does not become unprotected merely because it resembles" speech the state may prohibit. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002); *see also State v. Casillas*, 952 N.W.2d 629, 643-44 (Minn. 2020) (drawing constitutional distinction between sexually explicit images disseminated with consent of the identified individual and without).

*Third*, the Act reaches images that are never disseminated. A picture generated once, seen by no one, and immediately deleted exposes SpaceXAI to the same $500,000 penalty as one broadcast to the world. While the Legislature invoked harms caused by *distribution* of images—harms SpaceXAI itself already addresses—such harms are irrelevant to justify a law that imposes liability regardless of distribution. *See Free*

*Speech Coal.*, 535 U.S. at 253 (state "may not prohibit speech because it increases the chance an unlawful act will be committed at some indefinite future time" (citation modified)).

*Fourth*, the statute has no exemption for entire categories of protected speech, such as altered images with artistic, medical, educational, religious value, or—most troublingly—core political satire. The following AI-generated image of the President, shirtless and lounging in the reflecting pool with other government officials, would thus be actionable so long as any of the fabricated "intimate part[s]"—i.e., the depicted individuals' chests—appear real. Minn. Stat. § 325E.91, subd. 1(d)(2). *See also* Dkt. 1 ¶¶ 37–38 (additional satirical images).



*Fifth*, the statute imposes strict liability on AI platforms, a clear violation of controlling First Amendment precedents. Because of the chilling effects of any speech-based punishment, the Supreme Court requires a "subjective mental-state requirement" before liability may attach—even to the least protected categories of expression, obscenity, incitement, and true threats. *Counterman v. Colorado*, 600 U.S. 66, 75-76 (2023). Likewise, this Court has cautioned that "any statute that chills the exercise of First Amendment rights must contain a knowledge element." *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992). Yet § 325E.91 makes a provider strictly liable for a user's creation of a prohibited image. There is no safe harbor even for providers whose terms of service forbid prohibited images and whose content filters are engineered to block it.

**3.** Additionally, § 325E.91 is not the least restrictive means of advancing the State's interest. "If a less restrictive alternative would serve the [g]overnment's purpose, the legislature must use that alternative." *Playboy*, 529 U.S. at 813. The State bears the burden "to prove that the [less restrictive] alternative will be ineffective to achieve its goals," and "the risk of nonpersuasion … must rest with the [g]overnment, not with



Appellate Case: 26-2806 Page: 22 Date Filed: 09/11/2026 Entry ID: 5682805

the citizen." *Id.* at 816, 818; *see also Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) (requirement ensures "that speech is restricted no further than necessary to achieve the goal, for it is important to ensure that legitimate speech is not chilled or punished"). Minnesota cannot carry that burden because numerous already-enacted laws demonstrate that the tailoring problems discussed above *have actually been* addressed in less restrictive ways in existing statutes that Minnesota ignored in passing § 325E.91.

First, other statutes already provide a substantially narrower definition of "intimate parts" than § 325E.91. The State's own deepfake statute defines "intimate parts" in a common-sense manner as "the genitals, pubic area, anus, or partially or fully exposed nipple of an individual." Minn. Stat. § 617.262, subd. 1(f). Congress drew the line even more carefully, defining "intimate visual depiction" in the TAKE IT DOWN Act—which similarly punishes deepfakes—as "the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual," 15 U.S.C. § 6851(a)(5)(A)(i); *see also* 47 U.S.C.



Appellate Case: 26-2806 Page: 23 Date Filed: 09/11/2026 Entry ID: 5682805

§ 223(h)(1)(E) (TAKE IT DOWN Act incorporating that definition).[3] These definitions would reach the Legislature's purported goals without also applying to a runner in shorts or a swimmer in a racing suit—and the federal definition would not reach shirtless males. The Legislature was not ignorant of these narrower alternatives: an earlier version of § 325E.91 even cross-referenced the deepfake statute's definition, until the Legislature inexplicably replaced it with the more sweeping one. *See* S.F. 1119, 94th Leg., as introduced, subd. 1(b) (Minn. Feb. 5, 2025).

Next, both of those statutes—Minnesota's deepfake statute and the federal TAKE IT DOWN Act—contain the very safeguards that § 325E.91 omits. Both condition liability on the depicted individual's lack of consent and on actual dissemination, Minn. Stat. § 617.262, subd. 2; 47 U.S.C. § 223(h)(3)(A), and both exempt speech of evident value—medical, artistic, newsworthy, and scientific or educational material alike. Minn. Stat. § 617.262, subd. 6(3)-(6); 47 U.S.C. § 223(h)(3)(A)(iii); *see also* Dkt. 42 at 7 (describing elements of offense

---

[3] The Statement of Interest filed by the United States described other elements of the TAKE IT DOWN Act designed to ensure compliance with the First Amendment, including a requirement the defendant acted "knowingly," the image be created "without the consent" of the individual depicted, an exemption for matters of public concern, and the defendant acted deliberately to cause harm. Dkt. 42 at 7.



Appellate Case: 26-2806 Page: 24 Date Filed: 09/11/2026 Entry ID: 5682805

for publishing a digital forgery of an adult). Further, Minnesota's separate election-deepfake law survived First Amendment challenge in part because it exempted evident parody. *See Kohls v. Ellison*, No. 24-cv-3754 (LMP/DLM), 2025 WL 66765, at *4 (D. Minn. Jan. 10, 2025). Finally, Minnesota also knew how to craft an appropriate scienter requirement. Its deepfake statute includes multiple layers of *mens rea* requirements. Minn. Stat. § 617.262, subd. 2(1) (requiring "intentional" dissemination and knowledge—or constructive knowledge—of nonconsent).

The State cannot claim that these safeguards are irrelevant to the First Amendment because it relied on similar features to defeat a challenge to its revenge-porn statute. *See Casillas*, 952 N.W.2d at 643-44 (upholding the statute as narrowly tailored where the State pointed to the statute's consent element, multiple layers of *mens rea*, and enumerated exemptions for protected speech categories). Minnesota knew precisely how to craft a statute to satisfy the First Amendment—it just chose not to.

**4.** Even if § 325E.91 were content neutral, it would fail intermediate scrutiny. A content-neutral restriction still must be "narrowly tai-

lored to serve a significant governmental interest" and must "leave open ample alternative channels for communication." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Section 325E.91 satisfies neither requirement: it burdens vastly more protected expression than the State's interest requires, and it forecloses an entire category of AI-assisted expression across the whole State. *See Packingham v. North Carolina*, 582 U.S. 98, 107-08 (2017); *NetChoice v. Griffin*, 812 F. Supp. 3d 905, 924 (W.D. Ark. 2025). It thus fails as applied to SpaceXAI under any level of heightened scrutiny.

### C. Section 325E.91 Is Also Facially Overbroad.

Section 325E.91 must also be enjoined because it is facially overbroad. A law is invalid on its face when "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," such that its "impermissible applications … far outnumber any permissible ones." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021); *United States v. Stevens*, 559 U.S. 460, 481 (2010). Section 325E.91's impermissible applications—non-nude images, consensual and self-created images, images that were never disseminated, and political and religious expression—dwarf whatever narrow

set of applications the State could permissibly reach. Below, the State defended § 325E.91 on the ground that the Legislature sought to prohibit only unprotected speech—child sexual abuse material, obscenity, and nonconsensual pornography. Dkt. 38 at 37-38. But if those were the Legislature's targets, it should have (and could have) drafted the law more narrowly. *See Iancu v. Brunetti*, 588 U.S. 388, 398-99 (2019); *Stevens*, 559 U.S. at 481.

## II. SpaceXAI Is Likely to Prevail on the Remaining Factors.

In a First Amendment case, "the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007). Accordingly, "[w]hen a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012).

### A. SpaceXAI and Its Users Face Ongoing, Irreparable Harm.

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*,



Appellate Case: 26-2806 Page: 27 Date Filed: 09/11/2026 Entry ID: 5682805

427 U.S. 347, 373 (1976); *Schmitt v. Rebertus*, 148 F.4th 958, 970 (8th Cir. 2025). Since August 1, 2026, § 325E.91 has forced SpaceXAI to restrict Grok Imagine's image-editing features for every Minnesota user to avoid crippling penalties. Dkt. 40 ¶ 19. SpaceXAI's users have consequently been barred from creating protected expression that may lawfully be created in every other State.

The district court did not deny that SpaceXAI's users are currently suffering a deprivation of their First Amendment rights, nor did it deny that the loss of those rights, even briefly, is irreparable. Dkt. 54 at 11. Instead, the district court erroneously asserted that SpaceXAI could not show irreparable harm because, in its view, SpaceXAI had "unreasonably delayed" in seeking relief. *Id.* That holding was error because SpaceXAI made a timely challenge: it filed suit and moved for preliminary relief *before* § 325E.91 took effect and two-and-a-half months after the statute was enacted. *Id.* at 7-8. A party that moves before a statute may lawfully be enforced has not slept on its rights. On the contrary, "[a] motion seeking to enjoin a statute's enforcement before the statute may legally be enforced is timely—or at least not late—by definition." *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011); *see also Minn.*



Appellate Case: 26-2806 Page: 28 Date Filed: 09/11/2026 Entry ID: 5682805

*Chamber of Commerce v. Choi*, 707 F. Supp. 3d 846, 869 (D. Minn. 2023) (finding no undue delay where plaintiffs sought relief in a pre-enforcement challenge five months after a statute was enacted and before it took effect).

The decisions the district court invoked provide no support for its conclusion. To the contrary, they highlight SpaceXAI's diligence. In *Kohls v. Ellison*, the plaintiffs waited *sixteen months* after the challenged law was enacted before moving for relief—and one of the plaintiffs was a state legislator who *actually voted for the law she later challenged*. 166 F.4th 728, 732-33 (8th Cir. 2026). The plaintiff in *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.* similarly waited sixteen months after receiving the no-trespass notice he sought to enjoin, 115 F.4th 889, 893-94 (8th Cir. 2024). And the plaintiffs in *Benisek v. Lamone* waited roughly *six years* before seeking relief. 585 U.S. 155, 159 (2018). SpaceXAI's pre-enforcement suit—brought two-and-a-half months after the statute was enacted—bears no resemblance to any of these cases.

The district court compounded its error by measuring delay from the wrong starting point. Delay undercuts a showing of irreparable harm where the movant sits idle while suffering the allegedly irrepara-

ble injury. *Cf. Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894-95 (8th Cir. 2013). Because § 325E.91 inflicted no harm on SpaceXAI until it took effect on August 1, the intervening weeks between the statute's enactment and effective date cannot vitiate an irreparable-harm showing.

To preserve any right to interim relief under the district court's novel rule, a company would have to rush to the courthouse immediately after a bill is signed—before it has fully evaluated the law, weighed its options, or even retained counsel. Diligence has never required plaintiffs to file half-baked motions within days of enactment, and a rule penalizing modest deliberation would only encourage hasty, ill-considered filings.

Nor does it matter that SpaceXAI is "a sophisticated and well-resourced litigant with the means to move quickly when its interests are at stake." Dkt. 54 at 8. The courthouse is open to litigants of every means, and the diligence standard does not tighten because a party could, in theory, have moved faster. In all events, large corporate entities may have greater difficulty in moving quickly because of the number of decision-makers involved and the varied interests a large corpo-



Appellate Case: 26-2806 Page: 30 Date Filed: 09/11/2026 Entry ID: 5682805

ration must balance. This Court should thus reject the district court's counterproductive rule requiring plaintiffs to seek preliminary relief within days or weeks of a statute's enactment.

Beyond the ongoing First Amendment violations, SpaceXAI has incurred, and continues to incur, compliance costs to ensure that Minnesota users cannot create restricted images using Grok Imagine. Dkt. 40 ¶ 19. As the State conceded, these "cost[s] will not be compensable by the State if the law is invalidated." Dkt. 54 at 10. Unrecoverable economic and operational injuries constitute irreparable harm. *See, e.g.*, *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021). The district court's contrary view rested on a single, forty-year-old decision addressing *recoupable* monetary loss. Dkt. 54 at 9 (citing *Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 562 F. Supp. 279, 283 (E.D. Ark. 1983)).

The district court incorrectly asserted that SpaceXAI provided no evidence of ongoing costs. *Compare* Dkt. 54 at 10 (dismissing SpaceXAI's cost evidence as "vague and conclusory" and finding SpaceXAI did "not provide evidence" of future cost), *with* Dkt. 40 ¶ 19 (attesting that SpaceXAI designed, tested, and deployed geographically targeted con-

trols within Grok Imagine's image-editing pipeline and diverted substantial engineering resources to do so). But a sworn, unrebutted declaration by a competent witness is sufficient to prove an essential fact. *See Brandt v. Davis*, 191 F.3d 887, 892 (8th Cir. 1999). Indeed, no one should be surprised that creating and maintaining a bespoke version of Grok Imagine for Minnesota users entails ongoing costs.

At bottom, SpaceXAI faces the daily "Hobson's choice" of "expos[ing itself] to potentially huge liability" or "suffer[ing] the injury of obeying" an unconstitutional law—which alone constitutes "irreparable injury." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).

### B. The Balance of Equities and the Public Interest Support Relief.

The balance-of-equities and public-interest factors "merge when the [g]overnment is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "It is always in the public interest to protect constitutional rights," and "the balance of the equities generally favors the constitutionally-protected freedom of expression." *Rebertus*, 148 F.4th at 970 (citation modified). Conversely, the State cannot "act unlawfully even in pursuit of desirable ends," and so has no valid interest in enforcing an unconstitutional statute. *Ala. Ass'n of Realtors*, 594 U.S. at 766.



Appellate Case: 26-2806 Page: 32 Date Filed: 09/11/2026 Entry ID: 5682805

Both factors weigh in favor of an injunction pending appeal. Section 325E.91's broad restrictions are, right now, abridging the First Amendment rights of SpaceXAI and its users, and it is always in the public interest to protect those rights. Minnesota, for its part, has no legitimate interest in enforcing a statute that violates the First Amendment. And restoring the pre-enactment status quo will cause the State little harm. It is already unlawful to use image-alteration tools to create nonconsensual, sexually explicit images, *see* Minn. Stat. § 617.262; SpaceXAI's own terms of service prohibit the use of Grok Imagine to create such images, Dkt. 40 ¶ 12; and the undisputed record shows that Grok Imagine has rigorous protections in place to prevent the creation of nudified or sexualized images of real people, Dkt. 40 ¶¶ 13-14. An injunction prohibiting the State from enforcing the statute against SpaceXAI pending appeal would leave those protections fully intact and withdraw only § 325E.91's additional, unconstitutional speech restrictions.

The district court nevertheless concluded that the balance "tips steeply in favor of the State." Dkt. 54 at 12. That conclusion was only possible because the district court erroneously weighed only the State's

side of the scale. It never even addressed the law's ongoing First Amendment violations while crediting the State's interest in enforcing a "democratically" and "nearly unanimously" enacted statute. Dkt. 54 at 12-13 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012)). That was error because *King*'s presumption that a State is injured whenever it is enjoined from enforcing its statutes applies only to *constitutionally valid* laws. *See*, *e.g.*, *Ala. Ass'n of Realtors*, 594 U.S. at 766; *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019); *KH Outdoor, L.L.C. v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). The court's balancing assumed away the First Amendment violation and gave dispositive weight to the State's interest in enforcing an unconstitutional law.

The district court then compounded its earlier error by asserting that the threat to SpaceXAI's First Amendment interests was "belied by [its] own delay." Dkt. 54 at 12. As SpaceXAI has explained, however, it did not delay in seeking preliminary relief—it timely moved before the statute's effective date.

## CONCLUSION

For these reasons, SpaceXAI respectfully requests that the Court enter an injunction pending appeal barring the Attorney General from enforcing § 325E.91 against SpaceXAI and grant expedited consideration of this motion.

Dated: September 11, 2026

Respectfully submitted,

/s/ *Robert E. Dunn*
Robert E. Dunn
EIMER STAHL LLP
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008
(408) 889-1690
RDunn@eimerstahl.com

Johnathan Hall
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 660-7600
jhall@eimerstahl.com

Kenton J. Skarin
Reid Coleman
SPACEXAI LLC
800 West Cesar Chavez Street
Austin, TX 78701
kskarin@x.ai
rcoleman@x.ai



Appellate Case: 26-2806 Page: 35 Date Filed: 09/11/2026 Entry ID: 5682805

Todd A. Noteboom
Andrew P. Leiendecker
Sarah R. Almquist
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.leiendecker@stinson.com
sarah.almquist@stinson.com

*Counsel for Plaintiff-Appellant*
*SpaceXAI LLC*

## CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,182 words, excluding the parts exempted by Rule 32(f).

2. This motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ *Robert E. Dunn*
Robert E. Dunn

*Counsel for Plaintiff-Appellant*
*SpaceXAI LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system, which will serve all counsel of record.

/s/ *Robert E. Dunn*
Robert E. Dunn

*Counsel for Plaintiff-Appellant*
*SpaceXAI LLC*



Appellate Case: 26-2806 Page: 38 Date Filed: 09/11/2026 Entry ID: 5682805