NO. 26-2806

---

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

X.AI LLC,
*PLAINTIFF - APPELLANT*

v.

Keith Ellison,
IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL,
*DEFENDANT – APPELLEE*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
NO. 0:2026-CV-03425

---

# MOTION OF THE LIBERTY JUSTICE CENTER TO FILE AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF X.AI

---

Timothy R. Snowball
Timothy Kilcullen
LIBERTY JUSTICE CENTER
1629 K Street NW
Suite 300
District of Columbia, 20006
(512) 481-4400
tsnowball@ljc.org
tkilcullen@ljc.org
*Counsel for Amicus*
*Liberty Justice Center*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

CORPORATE DISCLOSURE STATEMENT ........ 1

INTEREST OF AMICUS CURIAE ........ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 3

The preliminary injunction should be granted because HF 1606 burdens the free speech rights of millions. ........ 3

The preliminary injunction should be granted because HF 1606 sweeps so broadly that it is irrational. ........ 8

CONCLUSION ........ 12

CERTIFICATE OF COMPLIANCE ........ 13

CERTIFICATE OF SERVICE ........ 14

## TABLE OF AUTHORITIES

**Table of Authorities**

**Cases**

*Abrams v. United States*

250 U.S. 616 (1919)........................................................3–4

*Anderson v. City of Hermosa Beach*

621 F.3d 1051 (9th Cir. 2010)........................................11

*Ashcroft v. ACLU*

535 U.S. 564 (2002)........................................................4

*Bridges v. California*

314 U.S. 252 (1941)........................................................5

*Brown v. Entm't Merchs. Ass'n*

564 U.S. 786 (2011)........................................ 4 n.1, 5, 9

*City of Boerne v. Flores*

521 U.S. 507 (1997)........................................................ 10

*Consol. Edison Co. v. Pub. Serv. Comm'n*

447 U.S. 530 (1980)........................................................ 3–4

*Erznoznik v. Jacksonville*

422 U.S. 205 (1975) ..... 5

*FEC v. Ted Cruz for Senate*

596 U.S. 289 (2022) ..... 10

*Free Speech Coal., Inc. v. Paxton*

606 U.S. 461 (2025) ..... 10

*Kaplan v. California*

413 U.S. 115 (1973) ..... 5

*NetChoice, LLC v. Bonta*

113 F.4th 1101 (9th Cir. 2024) ..... 4 n.2

*NetChoice, LLC v. Yost*

16 F. Supp. 3d 539 (S.D. Ohio 2024) ..... 11

*N.Y. Times Co. v. Sullivan*

376 U.S. 254 (1964) ..... 3

*R.A.V. v. St. Paul*

507 U.S. 377 (1992) ..... 8

*Reed v. Town of Gilbert*

576 U.S. 155 (2015) .......... 5

*Reno v. ACLU*

521 U.S. 844 (1997) .......... 5, 11

*Snyder v. Phelps*

562 U.S. 443 (2011) .......... 4–5, 8

*Stromberg v. California*

283 U.S. 359 (1931) .......... 3

*Texas v. Johnson*

491 U.S. 397 (1989) .......... 4, 8

*303 Creative LLC v. Elenis*

600 U.S. 570 (1927) .......... 3, 4, 5

*United States v. Hansen*

599 U.S. 762 (2023) .......... 10

*United States v. Mackey*

652 F. Supp. 3d 309 (2d Cir. 2023) .......... 4 n.1

*United States v. Stevens*

559 U.S. 460 (2010) .......... 4–8

*Wash. State Grange v. Wash. State Republican Party*

552 U.S. 442 (2008) .......... 7–8

*W. Va. State Bd. of Educ. v. Barnette*

319 U.S. 624 (1943) .......... 3

*Whitney v. California*

274 U.S. 357 (1927) .......... 3

**Statutes**

Minn. Stat. § 325E.91 .......... 2–3, 5–8, 10–12

Minn. Stat. § 609.341 .......... 2–3, 5–8, 10–12

**Constitution**

U.S. Const. amend. I .......... 1–5, 7–9, 11–12

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Local Rule 26.1A, Amicus Curiae Liberty Justice Center certifies that it does not have a parent company and no publicly held company owns 10% or more of its stock.

## Interest of Amicus Curiae

The Liberty Justice Center (LJC) is a nonprofit, nonpartisan public interest litigation firm that defends and advances individual liberties and limited, accountable government. This work includes pursuing strategic, precedent-setting litigation aimed at protecting and maximizing the First Amendment's freedom of speech guarantee, including serving as counsel of record in the landmark Supreme Court case *Janus v. AFSCME*, *Council 31*, 585 U.S. 878 (2018). LJC has previously filed amicus briefs on free speech issues, including in this case below at the district court, and in other cases concerning the attempted censorship of AI platforms. *See, e.g.*, *The Babylon Bee, LLC v. Bonta*, No. 25-6138 (9th Cir. Mar. 18, 2026).

## Introduction & Summary of Argument

Regardless of his potential good intentions, Attorney General Ellison's attempt to restrict speech imperils the protected right of millions of Americans to use AI technology to express themselves.

Due to its mission of advocating for First Amendment liberties across the United States, LJC filed an amicus brief in the district court in support of X.AI. In its brief, LJC explained that House File 1606's sweeping censorship would injure not just large tech platforms but also numerous individual citizens who wish to engage in expressive speech.

Unfortunately, the district court did not respond to any of the points raised in LJC's amicus brief. Instead, it weighed only the burden *to X.AI*, rather than the public at large, of denying a preliminary injunction. This decision will have devastating consequences for millions of Americans if allowed to stand. Therefore, LJC now offers the same arguments so this Court can understand the significance of the issues before it, and decide x.AI's requested preliminary relief in accordance with the guarantees of the First Amendment.

## ARGUMENT

### I. The preliminary injunction should be granted because HF 1606 burdens the free speech rights of millions.

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox" when it comes to speech. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). As a result, the First Amendment protects an uninhibited, robust, and wide-open exchange of ideas. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The freedom of speech is thus a "fundamental principle of our constitutional system," *Stromberg v. California*, 283 U.S. 359, 369 (1931), and functions as both an end and as a means.

It is an end "because the freedom to think and speak is among our inalienable human rights," and it is a means "because the freedom of thought and speech is indispensable to the discovery and spread of political truth." *303 Creative LLC v. Elenis*, 600 U.S. 570, 584–86 (2023) (quoting *Whitney v. California*, 274 U. S. 357, 375 (1927) (Brandeis, J., concurring)). In short, "the best test of truth is the power of the thought to get itself accepted in the competition of the market." *Consol. Edison*



Appellate Case: 26-2806 Page: 9 Date Filed: 09/18/2026 Entry ID: 5685619

*Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 534 (1980) (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)).

Thus, United States law and tradition dictate that "more speech, not less, is the governing rule." *Citizens United v. FEC*, 558 U.S. 310.[1] As a result, the First Amendment prohibits the government from "restricting expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (tidied) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)).[2] The government "may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989); *303 Creative*, 600 U.S. at 584–86 (quoting *Snyder v. Phelps*, 562 U.S. 443, 460 (2011) (upholding speech even though it was

---

[1] While the theoretical possibility that new categories of unprotected speech can be created, the standard to do so is high, *United States v. Mackey*, 652 F. Supp. 3d 309 (2d Cir. 2023), and requires the government to present evidence that the restriction is part of a long, historically recognized tradition, *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011). Without a clear historical tie dating back to the framing of the First Amendment, a novel restriction requires application of strict scrutiny. *Id.*; *Mackey*, 652 F. Supp. 3d at 309.

[2] This is doubly true when a restriction holds one party liable for the speech of another, as doing so "deputizes covered businesses into serving as censors for the State." *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1118 (9th Cir. 2024).

"certainly hurtful and its contribution to public discourse may be negligible.")).

Stated plainly, it is "a prized American privilege to speak one's mind." *Bridges v. California*, 314 U.S. 252, 270 (1941). As xAI notes, this privilege includes speech in many different mediums and forms, including outdoor signs, *Reed v. Town of Gilbert*, 576 U.S. 155, 159 (2015), violent video games, *Brown*, 564 U.S. at 799, "female buttocks and bare breasts," *Erznoznik v. Jacksonville*, 422 U.S. 205, 206 (1975), and even sexually "indecent" content, *Reno v. ACLU*, 521 U.S. 844, 874 (1997). "All manner of speech—from 'pictures, films, paintings, drawings, and engravings,' to 'oral utterance and the printed word' — qualify for the First Amendment's protections." *303 Creative*, 600 U.S. at 587 (quoting *Kaplan v. California*, 413 U.S. 115, 119–20 (1973)) (internal quotation marks omitted)).

*United States v. Stevens* is particularly relevant to a consideration of HF 1606. In *Stevens*, Congress enacted a statute intended to end the dissemination of "crush videos," which "depict women slowly crushing animals to death 'with their bare feet or while wearing high-heeled shoes,' sometimes 'while talking to the animals in a kind of dominatrix

patter,' over 'the cries and squeals of the animals, obviously in great pain.'" *Stevens*, 559 U.S. at 470 (quoting the record). But Congress was sloppy, and instead of narrowly targeting crush videos, it instead prohibited the far broader category of "depiction of animal cruelty," with "animal cruelty" defined as images or videos "in which a living animal is intentionally maimed, mutilated, tortured, wounded, or killed." *Id.* at 474. The Court rejected this statute as overbroad, noting that it would theoretically prohibit videos of relatively innocuous activities like fishing. *Id.* at 475.

Here, the Minnesota Legislature was sloppy in crafting HF 1606. The Legislature has stated its interest as seeking to prevent the public dissemination of AI-generated nonconsensual "nudified" images or videos of real people. As noted, HF 1606 requires neither intent, knowledge, nor evidence that an image or video was created or shared with the public in order to trigger strict liability for xAI. An adult can use xAI's service to change a photograph of themselves or another adult who freely gave consent, and HR 1606 imposes the same penalties on xAI as though a person used the service to create a naked or sexualized picture of a nonconsenting adult or child.

In fact, HF 1606 is far more egregious than the law struck down in *Stevens*. The *Stevens* statute only applied if it depicted conduct that violated federal or state law where the creation, sale, or possession of the image occurred—an exception that exists nowhere in HF 1606. *Stevens*, 559 U.S. at 465 (quoting 18 U.S.C. § 48(c)(1) (2010)). And that law was enforced by the Department of Justice, whereas HF 1606 may be enforced by the state and by private litigants seeking treble damages, punitive damages, and attorney fees. MN 325E.91 Subd. 5.

Nor did the *Stevens* ruling foreclose Congress's ability to specifically address crush videos. Recognizing the constitutional issues the Court highlighted, Congress enacted a more explicit version of its statute that passed constitutional muster. *See* 18 U.S.C. § 48. Similarly, there is nothing to stop the Minnesota Legislature from amending HF 1606 to target nonconsensual images and videos that are intentionally shared to "nudify" third parties and violate their right to privacy. The State of Minnesota is not without the power to protect its citizens. But the First Amendment forbids it from doing so as currently written, where "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Stevens*, 559 U.S. at

473 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).

To quote *Stevens* on the subject: "The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it." *Stevens*, 559 U.S. at 460. If the First Amendment protects offensive speech like burning of the American flag, *Johnson*, 491 U.S. at 397, cross burning to inspire racial hatred, *R.A.V. v. St. Paul*, 505 U.S. 377, 381 (1992), or displaying signs that proclaim things like "Thank God for 9/11," *Snyder*, 562 U.S. at 443, then it protects the comparatively benign, and often consensual, AI generated images and videos unconstitutionally swept within HF 1606.

## II. The preliminary injunction should be granted because HF 1606 sweeps so broadly that it is irrational.

There is no accounting in the statute for the actual reasons why a "nudified" image or video is so offensive to privacy in the first place.

Perhaps most astoundingly, xAI can be held strictly liable even if the person depicted in the image or video requested the image or video or it was a personal self-portrait saved on someone's computer and not

shared with the public. *Id.* at p. 16 ¶ 32. If a person wished to depict themselves as a superhero such as Wonder Woman or the Incredible Hulk, or wished to place themselves in a bathing suit at the beach, they would expose xAI to a $500,000 fine.

This is not only unconstitutional, it is irrational. The Minnesota Legislature crafted a statute under which an individual with access to a computer and the internet can unintentionally cost xAI $500,000 every time they use the service to modify a picture of themselves for private enjoyment. As xAI notes, when a staff member pointed out that the Act's "prohibition applies to consensual images," Senator Maye Quade, the bill's main sponsor, explained "that is intentional." Compl. at ¶ 32. But just like traditional mediums of expression, the images and videos created through xAI's products potentially "communicate ideas—even social messages," and that "suffices to confer First Amendment protection." *Brown*, 564 U.S. at 790.[3]

---

[3] Of course, this protection also extends to xAI insofar as it facilitates the creation of speech. Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue, 460 U.S. 575, 582 (1983) (states cannot target the tools of expression as a means of prohibiting expression).

If HF 1606 is not enjoined, xAI may be forced to block uploads from Minnesota IP addresses. Such an outcome would be detrimental to the citizens of Minnesota. Overbroad laws do not merely impact those directly targeted; they hurt society at large. *United States v. Hansen*, 599 U.S. 762, 770 (2023) (if would-be speakers remain silent, society will lose their contributions to the "marketplace of ideas."). While HF 1606 was likely intended to safeguard citizens' privacy, its practical effect is to penalize xAI for providing a tool that allows users to engage in art, satire, and "core political speech." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 313 (2022).

Content-based bans like HF 1606 on speech are subject to strict scrutiny, *Free Speech Coal. v. Paxton*, 606 U.S. 461, 484 (2025), "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997).[4] While Minnesota's asserted interest in preventing the dissemination of "nudified" images or videos may be compelling, HF 1606 is not narrowly tailored to serve that interest. As

---

[4] Under strict scrutiny, a law may only be sustained if the government has a "compelling interest" in censoring the speech and demonstrates there is no "less restrictive means" available for accomplishing its objective. *Id.* at 469.



Appellate Case: 26-2806 Page: 16 Date Filed: 09/18/2026 Entry ID: 5685619

shown above, the statute captures all manner of protected speech that has nothing to do with the intentional creation and sharing of such material.

The fact that the speech at issue here is created through the use of new and continually evolving AI technology is also irrelevant. The First Amendment protects the "process of expression through a medium" as well as "the expression itself." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061–62 (9th Cir. 2010). Nor is it relevant that xAI's service is only one of many potential AI platforms for image and video creation, because "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Reno*, 521 U.S. at 880.

From the beginning of internet regulation, laws targeting online platforms have been recognized as inherently dangerous to free speech. *See Reno*, 521 U.S. at 868–70. This is true even where the government attempts to sidestep the First Amendment by claiming to advance some other non-speech interest. *See, e.g.*, *NetChoice, LLC v. Yost*, 716 F. Supp. 3d 539, 553 (S.D. Ohio 2024). Make no mistake: HF 1606 is a burden on protected speech. By imposing strict liability for all images of

real individuals with "intimate parts," HF 1606 is overbroad and violates the First Amendment.

But, as noted, this does not mean the Minnesota government is powerless to protect its citizens from the predators who would create nonconsensual "nudified" images or videos of real people. But it does mean the state cannot constitutionally do so by coercing xAI into banning Minnesotans from accessing AI technology. The First Amendment forbids such action.

**CONCLUSION**

For the forgoing reasons, x.AI's request for preliminary injunctive relief should be granted.

Respectfully Submitted,

/s/ Timothy R. Snowball

Timothy R. Snowball
Timothy Kilcullen
LIBERTY JUSTICE CENTER
1629 K Street NW
Suite 300
District of Columbia, 20006
(512) 481-4400
tsnowball@ljc.org
tkilcullen@ljc.org
*Counsel for Amicus*
*Liberty Justice Center*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 32 because it contains 2,336 words, excluding the parts of the brief exempted by Fed. R. App. P. 32, according to the word count as calculated by Microsoft Word for Microsoft Office 365, which was used to prepare this brief.

/s/ Tim Kilcullen
*Counsel for Amicus*
*Liberty Justice Center*



Appellate Case: 26-2806 Page: 19 Date Filed: 09/18/2026 Entry ID: 5685619

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF System. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Tim Kilcullen
*Counsel for Amicus*

*Liberty Justice Center*