No. 26-2806

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

X.AI LLC,

Plaintiff-Appellant,

vs.

Keith Ellison

Defendant-Appellee,

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

# DEFENDANT'S RESPONSE TO APPELLANT'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

KEITH ELLISON
Attorney General
State of Minnesota

PETER J. FARRELL (#0393071)
Acting Solicitor General
JANINE KIMBLE (#0392032)
MARGARET JACOT (#0346755)
MADELEINE DEMEULES (#0402648)
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1424 (Voice)
peter.farrell@ag.state.mn.us

*Attorneys for Defendant-Appellee*

## INTRODUCTION

Artificial-intelligence (AI) powered nudification technology has unleashed a tsunami of digital sexual victimization. This free technology allows anyone, anywhere, to victimize others on demand by digitally undressing anyone depicted in a photograph or video. It also generates staggering amounts of child sexual abuse material (CSAM).

Minnesota restricted the technology that makes this high-volume harm possible. X.AI, which offers nudification tools, waited months to sue without reason. Now it claims that Minnesota's law is an emergency that justifies some of the most extraordinary relief this Court can offer.

X.AI is wrong. The district court said so three times, denying a temporary restraining order, preliminary injunction, and injunction pending appeal. Nothing has changed. X.AI cannot show exigent circumstances or irreparable harm, let alone a likelihood of success, to justify such extraordinary relief from this Court.

## BACKGROUND

### I. TEXT AND LEGISLATIVE HISTORY.

House File 1606 prohibits companies that own or control AI-powered products from allowing users to generate sexual images and images of other intimate parts. It defines "nudify" as altering images or videos "to depict an intimate part not depicted in an original unaltered image or video of an identifiable individual," when

the alteration "is so realistic that a reasonable person would believe that the intimate part belongs to the identifiable individual." Minn. Laws 2026, c. 72 § 1, subd. 1(d); *id.* subd. 1(c) (defining "intimate part" under section 609.341, subd. 5).

When the legislature first considered House File 1606, three women directly impacted by nudification technology testified that a common perpetrator, whom they knew and trusted, nudified images of all three (and dozens of other women) into hyperrealistic pornographic images.[1] One victim testified that the perpetrator was her husband's best friend of 20 years.[2] The legislative record shows that these experiences are not unique.[3] In 2023, 96% of manipulated images were nonconsensual and sexually explicit; and in the first half of 2024, sixteen "nudify" websites had 200 million visits. (Com. Handouts 1.)

The legislature also considered evidence of harm to children. Research described a "pedophile guide" that "explicitly encourage[ed] perpetrators to use 'nudifying' tools to generate material to blackmail children; its author claims to have

---

[1] *See* https://perma.cc/N6E2-7FVP.

[2] Minn. H., Hearing on H.F. 1606 before the H. Commerce Finance & Policy Comm., 94th Leg., Reg. Sess., 1:33:20-1:34:06 (Feb. 19, 2026), https://www.house.mn.gov/hjvid/94/899698.

[3] H.F. 1606 Handouts, Minn. H., Hearing on H.F. 1606 before H. Com. Fin. & Pol'y Comm., 94th Leg., Reg. Sess. (Feb. 19, 2026), https://perma.cc/572K-SZJK [hereinafter Com. Handouts].

successfully blackmailed 13-year-old girls into sending intimate images. (*Id.* 78; *see also id.* 14 (nudification technology used for CSAM).) The legislative record further recounted posts from dark-web forums:

- "Am seeing the video trailers that were generated by AI, and my mind is blown . . . The ability to create any child porn we desire . . . our wildest fantasies . . . in high definition."

- "How long until we can use this new [] software to make whatever video we want? I want to put my sister's photos in from when she was a kid and make her do nasty things."

(*Id.* 79.) Through June 2025, the National Center for Missing and Exploited Children received more than 440,000 reports flagging AI-generated child pornography. (*Id.* 96; *see also id.* 9-12 (federal prosecution of Minnesota school employee in position of trust who photographed children to create AI-generated CSAM).)

The public harm is similarly evident. Once victimizing images are created, "they can be posted anonymously, are rapidly and widely disseminated, and become nearly impossible to remove."[4] Some victims have brought lawsuits, including one

---

[4] H.F. 1606 Handouts, Minn. H., Hearing on H.F. 1606 before H. Judiciary Fin. & Civ. Law Comm., 94th Leg., Reg. Sess., 4 (Mar. 26, 2026), https://perma.cc/U8GY-HNFS [hereinafter Judiciary Handouts].

woman who sued after X.AI users created fake images of her "being chloroformed and prepared for a sexual assault."[5]

X.AI has reserved over half-a-billion dollars for potential litigation losses from the well-known risks of Grok Imagine's "Spicy" and "Unhinged" modes.[6] But post-harm remedies are not always available: "[S]ome images are spread to the darkest corners of the internet, where they are difficult for law enforcement to reach." (Com. Handouts 98.) And more than half of victims do not know the identity of their perpetrator. (Judiciary Handouts 4.)

## III. X.AI'S TARDY LAWSUIT.

After the House and Senate passed the bill with all but one House member's approval, the Governor signed it into law on May 7, 2026. Minn. H.J., 94th Leg., Reg. Sess. 6139-40 (2026); Minn. Sen. J., 94th Leg., Reg. Sess. 9257-58 (2026); Minn. Laws 2026, c. 72; *see* Minn. Stat. § 645.02 (effective date Aug. 1, 2026). News media publicized its enactment.[7]

---

[5] Peter Walker, *Labour MP sues Elon Musk's xAI company over fake sexualised images*, The Guardian, (June 3, 2026), https://perma.cc/VD8S-S6B9.

[6] Maxwell Zeff & Paresh Dave, *SpaceX Listed Grok's 'Spicy' Mode as a Risk in Its IPO Filing*, Wired (May 20, 2026), https://perma.cc/4DXQ-33WW.

[7] *E.g.*, Jasmine Mithani, *Minnesota passes the nation's first ban on 'nudification' apps*, MinnPost (May 1, 2026), https://perma.cc/YKV5-NWNE; Madison Hunter, *Walz signs AI nudification ban in Minnesota law*, Fox 9 (May 7, 2026), https://perma.cc/3ABK-8MK7.

Later that month, on May 20, 2026, X.AI filed with the Securities and Exchange Commission before its initial public offering,[8] disclosing knowledge of ongoing state regulatory activity directed at its products[9]

X.AI did not sue until July 27, 2026, just days before the effective date. (R. Doc. 1.) The district court denied X.AI's motion for a temporary restraining order based on X.AI's unexplained delay. (R. Doc. 21.) At the preliminary injunction hearing, the court questioned X.AI's delay. Counsel argued that large companies like X.AI cannot be expected to know about new state legislation and that it takes time for management to learn about new laws after they are passed. (R. Doc. 45, at 33:7-14.)

The district court denied X.AI's preliminary injunction motion. (R. Doc. 54.) As to X.AI's assertions of commercial injury, the court found that X.AI "d[id] not provide evidence that there will be any future cost," and that its evidence of ongoing costs was "vague and conclusory." (*Id.* 10.) The court also found that X.AI's claim that it would lose Minnesota customers and business was "purely speculative." (*Id.*)

---

[8] Space Exploration Technologies Corp., Form S-1 (May 20, 2026), https://www.sec.gov/Archives/edgar/data/1181412/000162828026036936/spaceexplorationtechnologi.htm [hereinafter Form S-1].

[9] *Id.* 29-30.

X.AI appealed and sought an injunction pending appeal before the district court, which was denied. (R. Doc. 66.) The district court restated that X.AI had both "unreasonably delayed" and "failed to otherwise demonstrate a sufficient threat of irreparable harm." (*Id.* 2.) The district court again concluded that "the balance of the equities weighs heavily in favor of the State." (*Id.*)

X.AI now seeks an injunction pending appeal from this Court.

**STANDARD**

Requests for an injunction pending appeal are governed by the same factors that apply to preliminary injunctions. *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998). X.AI must show a likelihood of success on the merits; a likelihood of irreparable injury absent an injunction; lack of substantial harm to other interested parties if an injunction is granted; and lack of harm to the public interest if an injunction is granted. *Id.*

These requests are granted "sparingly and only in the most critical and exigent circumstances" when, as here, a district court has already denied injunctive relief. *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers) (quotation omitted); *see also OPAWL-Bldg. AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 774 (6th Cir. 2024) (requiring "significantly higher justification" (quotation omitted)). Movants must show that "the legal rights

at issue are indisputably clear." *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, J., in chambers) (quotation omitted).

## ARGUMENT

X.AI is eager to jump to the merits, but neither the merits nor X.AI's eagerness justifies its extraordinary request. At each turn below, X.AI's requests have taken the form of manufactured emergencies with little record support. This motion is no different. X.AI raises the same unsuccessful arguments it presented to the district court without identifying any reason for this Court to issue emergency relief. Its motion should be denied.

### I. X.AI IS NOT FACING IRREPARABLE HARM.

X.AI's motion fails because it is not suffering any irreparable harm. Nor has X.AI established the exigent circumstances and imminent risk needed to justify an injunction pending appeal. As the district court found each time it denied relief below, X.AI's eleventh-hour request for relief smacks of unreasonably delay.

#### A. The Record Does Not Show Any Imminent or Irreparable Harm.

A plaintiff must show irreparable harm that is not a "mere possibility," but "likely" to occur. *Ng. v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023). Only factually supported harm merits relief. *Hanson v. District of Columbia*, 120 F.4th 223, 244 (D.C. Cir. 2024) ("[I]njury that is sufficiently certain, persuasively demonstrated, and so clearly irremediable that it warrants a court

reaching out to alter the status quo before the merits are resolved”). X.AI advances two theories of alleged harm but establishes neither.

***First*****,** X.AI trumpets an argument this Court has flatly rejected, asserting that the “loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.” (Mot. 20-21 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).) This Court rejected this argument just two years ago, explaining that this interpretation of *Elrod* “is simply not the law.” *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 893 (8th Cir. 2024) (affirming denial of preliminary injunction); *accord Maixner v. Eidsness*, 182 F.4th 736, 739-40 (8th Cir. 2026) (vacating preliminary injunction). Asserting a possible constitutional violation “does not release plaintiffs from their burden of showing that irreparable harm is more than just a mere possibility.” *Morehouse Enters. v. BAFTE*, 78 F.4th 1011, 1017 (8th Cir. 2023) (quotation omitted).

***Second*****,** X.AI points to compliance costs it allegedly has and will incur. “Irreparable harm occurs when a party has no adequate remedy at law.” *La Belle Dairy, LLC v. Sharpe Holdings, Inc.*, 183 F.4th 606, 617-18 (8th Cir. 2026). Expense associated with seeking benefits or enforcing rights “does not generally constitute irreparable harm, even if unrecoverable.” *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 899 (8th Cir. 2000) (citations omitted); *see also Freedom Holdings,*

*Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005); *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980).

Compliance costs are not irreparable injury. *See* 11A *Wright & Miller's Federal Practice & Procedure* § 2948.1 (3d ed. Apr. 2026 update) (describing X.AI's approach as "minority position" that relies on what "is likely an incorrect reading of the precedents"). The case X.AI relies on is inapposite. It addresses an industry-specific revenue stream and says nothing about ordinary litigation or compliance costs. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021).

X.AI's argument is also factually insufficient. A plaintiff must establish its alleged harm "in definite enough terms to show the extent of any harm is 'actual and not theoretical.'" *Morehouse*, 78 F.4th at 1018 (quotation omitted) (finding no irreparable harm when plaintiffs did not "quantify, or clearly explain" alleged costs); *see Mgmt. Registry, Inc. v. A.W. Cos.*, 920 F.3d 1181, 1183 (8th Cir. 2019) (describing lost goodwill as "potentially viable theory" but finding no irreparable harm absent "enough evidence or analysis"); *Gen. Motors Cop. v. Harry Brown's, LLC*, 563 F.3d 312, 321 (8th Cir. 2009) (no irreparable harm when company "did not create a record below showing that denial of an injunction would materially affect its finances").

X.AI's record is sparse and conclusory. Its lone declaration does not quantify or substantiate its alleged compliance costs, stating only that X.AI diverted an unspecified number of employees for six days. (R. Doc. 40 ¶ 19). Further, X.AI provides no evidence that these harms are ongoing: "[B]y xAI's own account, the adjustment [to its technology] has already been made, and xAI does not provide evidence that there will be any future cost." (R. Doc. 54, at 10 ("Merely stating so is not enough.").) And rather than elicit this testimony from a knowledgeable developer, product manager, or business analyst, X.AI used one of its lawyers.

X.AI's goodwill theory fares no better. The most X.AI says is that it "*expects*" to lose Minnesota subscribers, revenue, and goodwill. (R. Doc. 40 ¶ 24 (emphasis added).) Without more, this expectation is just a "mere possibility." *Morehouse*, 78 F.4th at 1017; (R. Doc. 54, at 10 (describing X.AI's assertions as "purely speculative")). In any event, these speculative musings fall flat. No company can provide nudification technology in Minnesota right now, so Minnesota users cannot patronize other companies instead of X.AI. Its fears about lost customers are as illogical as they are unsubstantiated.

**B. Nor Is Any Harm Imminent.**

To show irreparable harm, a party must demonstrate the harm is "of such imminence that there is a clear and present need for equitable relief." *Sharpe*, 183 F.4th at 618 (quotation omitted). Failure to show irreparable harm is an

independently sufficient basis to deny a preliminary injunction. *Hotchkiss*, 115 F.4th at 893-94. A preliminary injunction "does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Id.* at 893-94 (quoting *Benisek v. Lamone*, 585 U.S. 155, 158 (2018)).

Rather than affirmatively establishing irreparable harm, X.AI faults the district court's analysis. This alone shows why its motion should be denied: X.AI simply disagrees with its loss below. (Mot. 21-25.) It raises no new circumstances "of such imminence" that the need for equitable relief is clear. *Sharpe*, 183 F.4th at 618. If speed is necessary, the Court may expedite the appeal. *See* U.S. Ct. App. Eighth Cir., *Internal Op. Proc.* § III(D). X.AI also may file its merits brief promptly to advance the appeal's timeline. If anything is warranted (though none is), it is at most a prompt appeal, not the extraordinary relief of an injunction that the district court denied on three separate occasions.

**C. X.AI Unreasonably Delayed.**

Further undercutting X.AI's assertion of irreparable harm is its delay and lack of diligence. Unreasonable delay in seeking a preliminary injunction "vitiates much of the force of [] allegations of irreparable harm." *Kohls v. Ellison*, 166 F.4th 728, 732 (8th Cir. 2026) (quotation omitted).

The record establishes delay that is both unreasonable and fatal to X.AI's claims of irreparable harm. X.AI is a sophisticated, well-resourced litigant. Earlier

this year, it sought preliminary relief from a Colorado law set to take effect on June 30, but which the legislature was considering amending. *See X.AI LLC v. Weiser*, No. 1:25-cv-01515-DDD-CYC (D. Colo. filed Apr. 9, 2026), ECF 1. Apparently monitoring the legislature's progress, X.AI sued on April 9, because the legislature "ha[d] not introduced a bill to amend the law during the current legislative session, which ends the second week of May." (*Id.*).

That conduct is exactly what one would expect from a litigant concerned about irreparable harm. Contrast that with X.AI's behavior here. Minnesota's legislation was far from secret. Public hearings were held across multiple legislative committees and there was widespread news coverage. Yet X.AI did nothing during the legislative session; after the bill's passage and signing into law; or after session ended.

This alone demonstrates unreasonable delay and lack of diligence. Before the district court, X.AI argued it could not have known about Minnesota's law early enough to make a prompt decision, insinuating it needed time for the law to "percolate" to upper management. (R. Doc 45, at 33:7-14.) That post-hoc argument lacks record support, and X.AI's conduct indicates, to the contrary, that it is a savvy, strategic actor that regularly tracks and responds to state laws like the one here. *See* Form S-1, at 29-30; *X.AI LLC v. Weiser*, No. 1:25-cv-01515-DDD-CYC.

In any event, delay need not span years to be unreasonable. *See, e.g.*, *Euphoric, LLC v. Westport Cmty. Improvement Dist.*, 179 F.4th 1118, 1128 (8th Cir. 2026) (six months); *Phillis Schafley Revocable Tr. v. Cori*, 924 F.3d 1004, 1010 n.4 (8th Cir. 2019) (five months).[10] X.AI's delay, on this record, is unreasonable and unexplained. It has no colorable claim of irreparable harm, but even if it did, its lack of diligence would defeat that claim.

## II. X.AI IS UNLIKELY TO PREVAIL ON THE MERITS.

To obtain a preliminary injunction, the moving party must demonstrate they are likely to prevail on the merits. *Adams*, 151 F.3d at 764. Here, that burden is onerous because X.AI brought a pre-enforcement facial challenge, which is "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). A party's failure to meet its facial burden is a sufficient basis to deny a preliminary injunction. *Iowa Safe Schs. v. Reynolds*, 172 F.4th 589, 595 (8th Cir. 2026).

X.AI cannot succeed on the merits because it lacks standing. But even on the merits, X.AI is unlikely to succeed because the law survives any level of scrutiny.

---

[10] *See also N.H. Youth Movement v. Scanlan*, F.4th, 2026 WL 2620381, at *1 (1st Cir. 2026) (five weeks before election); *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024) (four months); *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 79-80 (4th Cir. 1989) (six months); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984) (four months).

### A. X.AI Lacks Standing.

X.AI does not have third party standing. *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991). To satisfy third-party standing, a party must show an injury-in-fact; a close relationship to the third party; and some hindrance that prevents the third party's from protecting its own rights. *Id*.

X.AI cannot satisfy the second or third prong. There is no indication third parties cannot bring their own claims. And X.AI's interests are not aligned with that of its users because X.AI admits that it already prohibits its users from engaging in the very conduct that the law proscribes. (R. Doc. 14 ¶ 12 (prohibiting users from "nudifying real persons").) Further, X.AI has sued its own users over nudification and admits that third party users' use of its products exposes it to risk. (*Id.* ¶ 16); *see* Form S-1, at 29-31, 46-47.

X.AI also argues the law is overbroad. (Mot. 19-20.) But this does not solve its standing problem because it cannot meet the prudential requirements for a facial overbreadth claim. *See Sec'y of Md. v. Joseph H. Munson Co*., 467 U.S. 947, 956-58 (1984). For the reasons just stated, X.AI's interests diverge from those of its users that seek to create proscribed images, so it lacks standing even for its overbreadth claim.

Nor does X.AI have its own standing for a First Amendment claim. Merely offering a platform is not speech or expressive conduct, so X.AI has no protected

interest that could be injured. Moreover, states may regulate non-expressive conduct, even when the conduct is "initiated, evidenced, or carried out by means of language." *Shamrock Hills, L.L.C. v. Iowa*, No. 25-2991, __ F.4th__, 2026 WL 2330562, at *3 (8th Cir. Aug. 12, 2026) (citations omitted) (rejecting facial First Amendment challenge when some constitutional applications existed). And X.AI's new theory on appeal, that it makes expressive choices about its technology's operation, is unsupported because the record does not establish what "choices" X.AI allegedly makes and whether they qualify as expressive. *See Moody*, 603 U.S. at 724-26 (remanding for lower courts to "undertake the needed inquiries").

**B. X.AI's Claims Fail Under Any Level of Scrutiny.**

"Even in the First Amendment context, facial challenges are disfavored." *Id.* at 744. A challenger must establish that "no set of circumstances exists" under which the law would be valid, or that the law "lacks a plainly legitimate sweep." *Id.* at 778 (Alito, J., concurring) (quotations omitted). This onerous burden regularly forecloses preliminary relief in facial pre-enforcement challenges because plaintiffs cannot show, on a preliminary injunction record, that they are likely to clear the high bar necessary for success on the merits. *See Reynolds*, 172 F.4th at 595; *Students Engaged in Advancing Tex. v. Paxton*, 177 F.4th 665, 672 n.19 (5th Cir. 2026); *NetChoice, LLC v. Fitch*, 134 F.4th 799, 808-09 (5th Cir. 2025) (applying *Moody* to likelihood-of-success analysis in facial challenge).

X.AI has not met its facial-challenge burden here.

### 1. The law is content-neutral.

Minnesota's law regulates whether certain features can be provided for "access, download, or use" by others. 2026 Minn. Sess. Laws ch. 72, § 1. X.AI resists this obvious reading by attempting to cast Grok Imagine—which it calls a "product" and "tool," (R. Doc. 1 ¶ 20; Mot. 10)—as protected expression.

"[T]ools meant to facilitate the communication and content of others" are "not content in and of themselves." *Dryoff v. Ultimate Software Grp.*, 934 F.3d 1093, 1098 (9th Cir. 2019). Nor is nudification technology itself expressive. *See Green v. U.S. Dep't of Just.*, 111 F.4th 81, 96 (D.C. Cir. 2024) (trafficking in decryption software "is no more identified with expression than is the sale of lock picks for breaking into bookstores identified with the expressive conduct of reading the stores' books"); *Def. Distributed v. Att'y Gen. of N.J.*, 167 F.4th 65, 84-85 (3d Cir. 2026) (computer code for 3D-printed guns not expressive); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 454 (2d Cir. 2001) (decryption code is a "functional capability [that] is not speech").

The law does not target content. A regulation is "content based" if it targets speech "based on its communicative content." *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, 596 U.S. 61, 69 (2022) (quotation omitted). Courts look

to a law's purpose to determine whether it is content based. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The law targets harmful technology, not ideas, beliefs, or expression. *See Ubers Techs., Inc. v. City of Seattle*, 168 F.4th 1202, 1211-14 (9th Cir. 2026) (ordinance compelling app-deactivation policies that furthered worker safety not content based); *SOB, Inc. v. County of Benton*, 317 F.3d 856, 862 (8th Cir. 2003) (ban on live nude dancing content-neutral when purpose was combatting harmful secondary effects, despite "some minimal effect on the [underlying] erotic message"); *Wacko's Too, Inc. v. City of Jacksonville*, 134 F.4th 1178, 1186 (11th Cir. 2025) (adult entertainment ordinance content-neutral when passed to combat secondary effects like sex trafficking).

At its core, Minnesota's law regulates "not what images can be [generated] but instead the means by which those images can be generated." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 787-95 (5th Cir. 2024) (intermediate scrutiny applied to no-fly and no-surveillance drone ordinances). X.AI is thus wrong to assert that the statute regulates content simply because it may incidentally implicate protected images produced with dangerous technology.

**2. Intermediate scrutiny applies and the statute survives.**

Intermediate scrutiny applies to content-neutral laws and requires "a substantial government interest" that is less effectively achieved without the law,

without burdening "substantially more speech" than necessary. *TikTok, Inc. v. Garland*, 604 U.S. 56, 70 (2025).

***First***, X.AI concedes that Minnesota's interest is compelling. (Mot. 2.) And this compelling interest would be served less effectively without the law.

Nudification technology is an unparalleled marketplace for digital sexual violence with virtually no barrier to entry. It requires no money, skill, specialized software, or even physical presence in the United States—just a device with internet access. (R. Doc. 1 ¶¶ 23-24.) In mere seconds, this technology can violate and victimize, stripping depicted individuals of their dignity as much as their clothing.

X.AI posits that other laws already address this harm. But its admissions about the flood of illegal conduct that persists despite these laws prove the opposite: Curbing this "explosion of image-based" sexual violence is impossible without addressing the underlying technology. (*Id.*); *see Ward*, 491 U.S. at 800 (courts should defer to government's "reasonable determinations" about how legislative interests are best served).

***Second***, the law only incidentally burdens speech. Its focus on AI-powered nudification technology is prima facie evidence of narrow tailoring because that technology is inextricably linked with unlawful CSAM, obscenity, and other forms of digital sexual victimization, any incidental benign uses notwithstanding. *See SOB*, 317 F.3d at 862; *see also Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986)

(“Bookselling in an establishment used for prostitution does not confer First Amendment coverage to defeat a valid statute aimed at penalizing and terminating illegal uses of premises.”). Targeting the provision of technology that makes digital sexual victimization possible is no different than regulating other harmful conduct, like the possession of chemical precursors to dangerous drugs or the distribution of pamphlets laced with anthrax.

X.AI’s complaint raises many quotidian use cases of protected expression that are inapposite because they fall outside the law’s reach. (*E.g.*, R. Doc. 1 ¶¶ 21-22.) But X.AI also admits that Grok Imagine spews out staggering amounts of CSAM and other unlawful material. (*Id.* ¶ 26 (50,000 suspended accounts, 70,000 reports, and 244 arrests in 2026 alone).) The few arguable edge cases that X.AI identifies, (*e.g.*, Mot. 14), would not trigger liability because of the parody exemption. In any event, X.AI’s “highly particularized” yet “underdeveloped” examples of alleged infringement simply do not establish the “‘lopsided ratio’ of unconstitutional applications required to sustain a facial challenge.” *Green*, 111 F.4th at 100 (quotation omitted); *see also Brakebill v. Jaeger*, 932 F.3d 671, 677 (8th Cir. 2019) (refusing to grant preliminary injunction “as a form of as-applied relief” when plaintiffs failed to show likelihood of success under facial standard); *NetChoice, LLC v. Bonta*, 170 F.4th 744, 760 (9th Cir. 2026) (vacating preliminary injunction

when facial challenger failed to develop record about law's "full set of applications" that would support its likelihood of success (quotation omitted)).

***Third***, X.AI's overinclusivity arguments are unavailing. (Mot. 12-15.)

Its assertion about the definition of nudity misunderstands the law's purpose, which aims to prevent digital sexual victimization, not censor nudity.[11]

Its argument that consensual nudification is unduly proscribed also fails. With consent, any adult who wants a nude photo may take or request one. All the law proscribes is using certain harmful technology to obtain nude images.

Nor does the law target content with artistic, medication, educational, religious, or political value. It merely targets a technology that engenders unlawful harm at unprecedented rates, leaving intact less harmful means of expression for protected content. It also exempts parody and satire with its realism requirement. 2026 Minn. Sess. Laws ch. 72, § 1, subd. 1(d)(2); *see Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (parody is that which "cannot 'reasonably [be] interpreted as stating actual facts' about an individual" (quotation omitted, alteration original)).

[11] The interpretation of "intimate part" is a question of state law that should be certified absent clear state law guidance. *McKesson v. Doe*, 592 U.S. 1, 5-6 (2020) (per curiam).

X.AI's dissemination argument also fails. The legislative record reflects that the vast majority of AI-generated nudified images are not consensual, so harm occurs at the moment of nudification.

Finally, X.AI's concerns about strict liability flounder under the forgiving framework of intermediate scrutiny. X.AI admits that illegal conduct proliferates on its platform, yet it has failed to stop the flood of digital sexual victimization its technology makes possible. (R. Doc. 1 ¶¶ 23-24, 26); *see Scott v. Ross*, 140 F.3d 1275, 1283 (9th Cir. 1988) (holding association vicariously liable for member's tortious conduct did not violate First Amendment). X.AI cannot play ostrich and demur responsibility for the obvious consequences of its product.

**3. Even under strict scrutiny, the statute survives.**

Strict scrutiny does not apply, but even if it did, Minnesota's law would survive. This standard requires laws to be narrowly tailed to serve a compelling government interest. *TikTok*, 604 U.S. at 70. X.AI does not dispute Minnesota's compelling interest, so the focus is narrow tailoring.

Minnesota's law is the least restrictive alternative. Its prohibition is tightly coextensive with its aim, banning the technology that makes it possible to digitally sexually victimize identifiable individuals. It does not wholesale ban image-alteration technology; nudity; or modified images and videos. The law targets only the harmful technology that makes unlawful nudification possible—which

X.AI admits it can selectively disable. (R. Doc. 40 ¶¶ 19-20); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 815 (2000) ("[T]argeted blocking" is "less restrictive than banning.").

X.AI proposes alternatives, but each is less effective than Minnesota's law. Existing laws have not staunched the tide of harmful and illegal conduct that X.AI admits runs rampant on its platform. When a company's products are used unlawfully, "the only practical alternative" may be "to go against the distributor." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-30 (2005) (holding company liable for software's widespread use in copyright infringement). Moreover, X.AI's proposals only address nudification after the fact—they are downstream bandages, not upstream solutions. But harm occurs at the moment of nudification. Nudification technology uniquely facilitates digital sexual victimization, so the law justifiably targets the technology itself. Absent an equally effective alternative, Minnesota's law is the least restrictive option and therefore passes strict scrutiny.

### C. The Law's Constitutional Applications Substantially Outweigh Any Unconstitutional Applications.

X.AI cannot meet its facial-challenge burden even on an overbreadth theory because Minnesota's law has many constitutional applications. *See New York v. Ferber*, 458 U.S. 747, 757 (1982) (child pornography); *Untied States v. Miller*,

413 U.S. 15, 23 (1972) (obscenity); *State v. Casillas*, 952 N.W.2d 629, 643 (Minn. 2020) (revenge porn). The undisputed legislative record establishes that most nudified images fall into these categories. X.AI's thin preliminary record cannot satisfy its heavy facial burden of overcoming these constitutional applications.

## III. THE EQUITIES OVERWHELMINGLY FAVOR THE STATE.

The balance of harms and public interest merge when the government is the non-movant. *Morehouse*, 78 F.4th at 1018. The key question is whether the movant's likely harm without an injunction exceeds the nonmovant's likely harm with one. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1347 (8th Cir. 2024).

Here, the Attorney General has a sovereign interest in enforcing a near unanimous, democratically enacted law. An injunction would eviscerate this interest and the needs of the public, including the disproportionate number of women and children targeted by nudification technology. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (alteration and quotation omitted). Each day the law is enjoined, digital sexual violence will proliferate, serving no interest other than to demean, objectify, and harass victims. X.AI's monetary interests do not outweigh the safety, dignity, and privacy interests of the people of the State of Minnesota.

## CONCLUSION

X.AI's motion should be denied.

Dated: September 21, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ Madeleine DeMeules
PETER J. FARRELL (#0393071)
Acting Solicitor General
JANINE KIMBLE (#0392032)
MARGARET JACOT (#0346755)
MADELEINE DEMEULES (#0402648)
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1415 (Voice)
(651) 282-5832 (Fax)
janine.kimble@ag.state.mn.us

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this motion contains 5,104 words, excluding the parts exempted under Fed. R. App. P. 32(f).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365.

3. All required privacy redactions have been made pursuant to 8th Cir. R. 25A(i).

4. Paper copies are not required for this motion.

5. This motion has been scanned and is free of viruses.

s/ Madeleine DeMeules
MADELEINE DEMEULES

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I further certify that service will be accomplished to all registered CM/ECF users by the CM/ECF system.

s/ Madeleine DeMeules
MADELEINE DEMEULES