No. 26-2806

IN THE

# United States Court of Appeals for the Eighth Circuit

X.AI LLC,
Plaintiff-Appellant,

v.

KEITH ELLISON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MINNESOTA,
Defendant-Appellee.

On Appeal From
The United States District Court for the District of Minnesota
No. 0:26-cv-03425-DWF-DTS
Judge Donovan W. Frank

## PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL


Kenton J. Skarin
Reid Coleman
SPACEXAI LLC
800 West Cesar Chavez Street
Austin, TX 78701
kskarin@x.ai
rcoleman@x.ai

Robert E. Dunn
*Counsel of Record*
EIMER STAHL LLP
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008
(408) 889-1690
RDunn@eimerstahl.com

Johnathan Hall
EIMER STAHL LLP

224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 660-7600
jhall@eimerstahl.com

Todd A. Noteboom
Andrew P. Leiendecker
Sarah R. Almquist
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.leiendecker@stinson.com
sarah.almquist@stinson.com

*Counsel for Plaintiff-Appellant SpaceXAI LLC*

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. SPACEXAI IS LIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL .......... 2

A. Section 325E.91 Imposes a Content-Based Restriction on Speech .......... 2

B. The State Cannot Carry Its Burden Under Any Level of Scrutiny .......... 3

C. The Statute Is Facially Overbroad .......... 8

D. SpaceXAI May Assert Its Own Rights and Those of Its Users .......... 9

II. SPACEXAI IS LIKELY TO PREVAIL ON THE REMAINING FACTORS .......... 10

A. The Loss of First Amendment Freedoms Is Ongoing—and Irreparable .......... 10

B. The State Has No Interest in Enforcing an Unconstitutional Law .......... 13

CONCLUSION .......... 14



Appellate Case: 26-2806 Page: 3 Date Filed: 09/28/2026 Entry ID: 5688511

## TABLE OF AUTHORITIES

### Cases

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021) .......... 13, 14

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) .......... 8

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) .......... 4

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) .......... 4

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... 6

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 10, 11

*Gordon v. Holder*,
632 F.3d 722 (D.C. Cir. 2011) .......... 12

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*,
115 F.4th 889 (8th Cir. 2024) .......... 10, 11, 12

*Iowa Utils. Bd. v. FCC*,
109 F.3d 418 (8th Cir. 1996) .......... 13

*Irizarry v. Yehia*,
38 F.4th 1282 (10th Cir. 2022) .......... 9

*Mahmoud v. Taylor*,
606 U.S. 522 (2025) .......... 11

*Maixner v. Eidsness*,
182 F.4th 736 (8th Cir. 2026) .......... 11

*McCullen v. Coakley*,
573 U.S. 464 (2014) .......... 4

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .......... 8, 9

*Ness v. City of Bloomington*,
11 F.4th 914 (8th Cir. 2021) .......... 9

*NetChoice, LLC v. Fitch*,
134 F.4th 799 (5th Cir. 2025) .......... 10

*Packingham v. North Carolina*,
582 U.S. 98 (2017) .......... 7

*Powers v. Ohio*,
499 U.S. 400 (1991) .......... 9, 10

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... 3

*Schmitt v. Rebertus*,
148 F.4th 958 (8th Cir. 2025) .......... 13

*State v. Casillas*,
952 N.W.2d 629 (Minn. 2020) .......... 6

*Virginia v. Am. Booksellers Ass'n*,
484 U.S. 383 (1988) .......... 10

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .......... 7

*X.AI LLC v. Weiser*,
No. 1:26-cv-01515-DDD-CYC (D. Colo. filed Apr. 9, 2026) .......... 12

**Statutes**

47 U.S.C. § 223(h) .......... 6

Colo. S.B. 24-205 .......... 12

Minn. Stat. § 325E.91 .......... passim

Minn. Stat. § 604.32 .......... 14



Appellate Case: 26-2806 Page: 5 Date Filed: 09/28/2026 Entry ID: 5688511

Minn. Stat. § 617.262 ........................................................... 5, 6, 14

**Other Authorities**

11A Wright & Miller, *Federal Practice & Procedure* § 2948.1 (3d ed.) .. 13



Appellate Case: 26-2806 Page: 6 Date Filed: 09/28/2026 Entry ID: 5688511

## INTRODUCTION

The government *always* thinks it has a valid reason for imposing broad speech restrictions to combat harmful expression. Whether because video games are violent, displays of animal cruelty are offensive, or nonconsensual dissemination of explicit images is abusive, the government rarely lacks a facially popular justification for censorship. But as Minnesota demonstrates, the government often overreaches its asserted justification in attempting to remedy speech-based harms. To prevent the government from censoring protected speech, the Supreme Court has long applied heightened scrutiny to laws, like Minn. Stat. § 325E.91, that target speech based on its content—and invalidated them in almost every instance.

Section 325E.91 should suffer the same fate. The law is hopelessly overinclusive, sweeping in broad categories of protected speech such as parody, art, consensually created images, educational images, and more. Nor is the statute the least restrictive means of achieving the Legislature's goal. The Attorney General knows this: he previously argued that the State's revenge-porn statute—a similarly content-based restriction

on speech—survived strict scrutiny because of its safeguards against chilling protected speech, all of which § 325E.91 omits.

That is why the State desperately seeks to avoid a ruling on the constitutionality of § 325E.91. But those efforts fail because SpaceXAI has standing to assert its own First Amendment interests and those of its users; SpaceXAI sued *before* the statute took effect, which alone demonstrates diligence; the State has no cognizable interest in enforcing an unconstitutional statute; and there are already legal and, in SpaceXAI's case, practical barriers to the creation and dissemination of nonconsensual explicit material. This Court should halt the State's end-run around the Constitution and enjoin Minnesota's unlawful speech-restricting statute.

## ARGUMENT

### I. SpaceXAI Is Likely to Succeed on the Merits of Its Appeal.

#### A. Section 325E.91 Imposes a Content-Based Restriction on Speech.

Section 325E.91 is content based because it punishes AI platforms for the *specific images* they allow users to create. Contrary to the State's bare assertion, the statute does not merely "target[] harmful technology," Opp. 18; it restricts what images users may create with that technology.



Appellate Case: 26-2806 Page: 8 Date Filed: 09/28/2026 Entry ID: 5688511

It can, therefore, be enforced only by reference to what the created images depict—a textbook content-based law. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163, 169 (2015).

The State's appeal to legislative purpose fails because that purpose is itself defined by content: protecting Minnesotans from injuries caused by certain types of speech. And a facially content-based law triggers strict scrutiny "regardless of the government's benign motive." *Reed*, 576 U.S. at 165. Nor can the State secure intermediate scrutiny by recasting the statute as regulating a "feature[]" rather than speech. Opp. 17-18. The regulated "feature[]" is defined by the generated content—i.e., an image "altered or generated to depict an intimate part." § 325E.91, subd. 1(d)(1). The State's authorities, Opp. 17-18, are inapposite because, unlike statutes passed to combat secondary effects flowing from expressive conduct (e.g., sex trafficking affiliated with adult entertainment), the law here is designed to remedy asserted harms directly caused by the prohibited speech.

### B. The State Cannot Carry Its Burden Under Any Level of Scrutiny.

**1.** Under strict scrutiny, the State bears the burden of proving that § 325E.91 is not overinclusive and is "the least restrictive means of

achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). It fails to carry that burden in several ways:

*Definition.* The statute's capacious definition of "intimate part" sweeps in inner thighs, buttocks, and male chests. Mot. 12. The State responds only that SpaceXAI "misunderstands the law's purpose." Opp. 21. But a statute that reaches images of competitive swimmers and shirtless men is not tailored to "sexual victimization," Opp. 19, regardless of the Legislature's "purpose."

*Consent.* The statute contains no consent element, so it bans images adults create of themselves or with the depicted adult's permission—speech the State has no legitimate interest in suppressing. Mot. 12-13. The State answers that "any adult who wants a nude photo may take or request one." Opp. 21. But the First Amendment protects the choice of medium; the State could not ban protected speech from websites because it remains available in books. *See City of Ladue v. Gilleo*, 512 U.S. 43, 55-57 (1994). That the "vast majority" of explicit images are supposedly non-consensual, Opp. 22, does not justify a statute covering *consensual* ones. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002).

*Dissemination*. The statute punishes creation of proscribed images whether or not they are ever shared, even though every harm the State describes flows from dissemination. Mot. 13-14; Opp. 3-5. The State now asserts, without evidence, that harm occurs at creation, Opp. 22, a position the Legislature itself apparently rejected in the deepfake statute, which punishes only intentional dissemination. Minn. Stat. § 617.262, subd. 2.

*Exemptions*. Section 325E.91 does not exempt parody or satire, art, medical or scientific images, or matters of public concern. Mot. 14. The State claims that the statute's "realism requirement" "exempts parody and satire." Opp. 21. Nonsense. That requirement turns on the realism of the *fabricated anatomy*, not the realism of the scene. Subd. 1(d)(2). An image of the President lounging shirtless in the Reflecting Pool is actionable so long as his chest looks real, even if a reasonable person would recognize the image as fake news.

*Strict Liability*. Finally, the statute contains no mens rea requirement and renders an AI provider liable even when it prohibits and actively works to prevent proscribed images. Mot. 15. The State responds that strict liability does not "flounder under the forgiving framework of

intermediate scrutiny." Opp. 22. The Supreme Court says otherwise: regardless of the level of scrutiny, even laws punishing *unprotected* speech must contain a "subjective mental-state requirement." *Counterman v. Colorado*, 600 U.S. 66, 75-76 (2023); Mot. 15.

Nor is § 325E.91 the least restrictive means. Minnesota's deepfake statute and the federal TAKE IT DOWN Act reach nonconsensual explicit imagery while requiring scienter and lack of consent as well as exempting matters of public concern. Minn. Stat. § 617.262, subds. 1(f), 2, 6; 47 U.S.C. § 223(h). Indeed, the State defended its revenge-porn statute as narrowly tailored because it contained those very safeguards. *See State v. Casillas*, 952 N.W.2d 629, 643-44 (Minn. 2020). The Attorney General, who bears the burden here, never explains why the statutory model his office successfully defended would be ineffective. His only answer is that the Legislature did not "wholesale ban" image alteration. Opp. 22. But a statute is not narrowly tailored merely because the Legislature eschewed an even broader—and equally unconstitutional—option. Dkt. 39 at 17.

The State's evidence-free assertion that existing laws targeting users "have not staunched the tide," Opp. 23, does not even attempt to meet

its burden to explain why a more precise platform-directed statute would be ineffective.[1] The State may pursue "upstream solutions" to address the targeted harm, Opp. 23, but any such solution still must be constitutional and narrowly tailored.

**2.** The statute fares no better under intermediate scrutiny because it "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989); *see also Packingham v. North Carolina*, 582 U.S. 98, 107-08 (2017). The tailoring failures described above are equally fatal here. The State insists, though, that AI image editing is "inextricably linked" to unlawful use, Opp. 19, but the opposite is true: Grok Imagine's output includes substantial protected expression, including core political speech. Dkt. 40 ¶¶ 7-9.

*   *   *

Because the Legislature made no attempt to tailor § 325E.91 to the harm it sought to remedy, the statute is facially unconstitutional under

[1] The State misleads the Court by asserting that "harmful and illegal conduct" is "rampant" on SpaceXAI's "platform." Opp. 23. Individuals were barred from using Grok Imagine's image-alteration tool to create nonconsensual explicit images before § 325E.91 was enacted. *Cf.* Dkt. 40 ¶¶ 11-16.



Appellate Case: 26-2806 Page: 13 Date Filed: 09/28/2026 Entry ID: 5688511

any level of heightened scrutiny. *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), is no obstacle to SpaceXAI's facial challenge because, unlike the laws there, § 325E.91 operates identically across all AI platforms. At minimum, the statute is unconstitutional as applied to SpaceXAI, which already prohibits the nonconsensual explicit images the Legislature sought to prevent. The State ignores that as-applied challenge and has thus waived any objection to it.

### C. The Statute Is Facially Overbroad.

The statute is also unconstitutionally overbroad. Even if it had any constitutional applications (it does not, given its lack of mens rea), it restricts vast swaths of protected speech—consensual intimate images, parody, art, educational material, and more.[2] As SpaceXAI has demonstrated, and the State does not dispute, the statute's unconstitutional *applications* far outstrip its constitutional ones (if any). *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021).

[2] Any assertion that images created in the early days of image-alteration technology involved explicit content is irrelevant even if true.



Appellate Case: 26-2806 Page: 14 Date Filed: 09/28/2026 Entry ID: 5688511

### D. SpaceXAI May Assert Its Own Rights and Those of Its Users.

Confronted with binding Supreme Court precedent that dooms § 325E.91, the State seeks to avoid the merits by asserting that SpaceXAI lacks standing even to raise a First Amendment challenge. Opp. 15. But here again it ignores Supreme Court precedent and the record. Designing and operating an image-generation tool requires aesthetic and editorial judgment at every step, including about what the tool will create, *Moody*, 603 U.S. at 740, and operating Grok Imagine is "an important stage of the speech process that ends with the dissemination" of protected expression, *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021). The State cannot squash that protected expression by "proceeding upstream and damming the source." *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022) (citation modified). This is not a "new theory on appeal," Opp. 16. SpaceXAI pleaded and argued it below. Dkt. 1 ¶ 54; Dkt. 13 at 9; Dkt. 39 at 4-6.

SpaceXAI may also assert its users' First Amendment rights. The State applies the test for third-party standing in *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991), but third-party standing is relaxed in the First Amendment context because "the statute's very existence may cause

others not before the court to refrain from constitutionally protected speech." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988); *NetChoice, LLC v. Fitch*, 134 F.4th 799, 807 (5th Cir. 2025).

The State also bungles the facts in asserting that SpaceXAI's interests "are not aligned" with its users' interests. Opp. 15. SpaceXAI's terms prohibit only illegal, harmful, or abusive uses of its image-alteration technology, not the countless lawful uses § 325E.91 also bans. Dkt. 14-1. SpaceXAI may represent users engaged in protected expression even though it polices other users' misbehavior.

In all events, third-party standing is appropriate even under *Powers* because users (whom the statute does not target) may lack Article III standing, have only a "small financial stake," and risk losing anonymity if they sue. *Powers*, 499 U.S. at 415.

## II. SpaceXAI Is Likely to Prevail on the Remaining Factors.

### A. The Loss of First Amendment Freedoms Is Ongoing—and Irreparable.

It is black-letter law that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The State's contention that this Court "flatly rejected" that rule in *Hotchkiss,* Opp. 9, is absurd



Appellate Case: 26-2806 Page: 16 Date Filed: 09/28/2026 Entry ID: 5688511

and borders on lacking candor. This Court could not overrule *Elrod* even if it wished to, and the Supreme Court reaffirmed *Elrod*'s rule just last year. *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025). Moreover, *Hotchkiss* applied *Elrod* and denied relief only because the plaintiff—who had stopped attending Board meetings and sued sixteen months later—had no First Amendment interest "either threatened or in fact being impaired at the time relief was sought." *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 893-94 (8th Cir. 2024) (citation modified). *Maixner* likewise vacated an injunction only because the plaintiffs sought money for nonrenewed campsite leases and claimed no "immediate threat" to their speech. *Maixner v. Eidsness*, 182 F.4th 736, 738-40 (8th Cir. 2026). Both cases thus confirm that while a *past* or *speculative* First Amendment injury may not warrant preliminary relief, a *continuing* deprivation does.

That is precisely what is happening here. Since August 1, § 325E.91 has forced SpaceXAI to restrict Grok Imagine for every Minnesota user, barring lawful expression available in every other State. Dkt. 40 ¶ 19. An expedited appeal cannot remedy that ongoing violation. Opp. 11-12.

Nor did SpaceXAI unreasonably delay. Delay matters only where the movant sat idle while suffering injury; yet SpaceXAI sought relief *before* the statute took effect. *See Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011). After three rounds of briefing, the State still has not identified a single decision denying a preliminary injunction as untimely where the plaintiff sued before the law took effect or within three months of enactment. The shortest intervals it cites are significantly longer than (usually double) SpaceXAI's, and none involved a *pre-enforcement* challenge to a statute. Opp. 14 & n.10; *see also Hotchkiss*, 115 F.4th at 893-94 (plaintiff waited sixteen months).

SpaceXAI's suit to enjoin Colorado's AI statute, Opp. 12-13, cuts against the State's argument. Colorado enacted SB 24-205 on May 17, 2024, and SpaceXAI sued on April 9, 2026—nearly *two years* after enactment. *X.AI LLC v. Weiser*, No. 1:26-cv-01515-DDD-CYC (D. Colo. filed Apr. 9, 2026), ECF 1 ¶ 70. No precedent supports the State's theory that a challenger must move early enough for a court to rule before the

effective date, and such a rule would "encourage hasty, ill-considered filings." Mot. 23.[3]

SpaceXAI is also incurring substantial, unrecoverable compliance costs, Dkt. 40 ¶¶ 18-24, which its declaration amply substantiates and the State does not rebut. Such costs constitute irreparable harm under Supreme Court and Eighth Circuit precedent. *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996); *cf.* 11A Wright & Miller, *Federal Practice & Procedure* § 2948.1 n.33 (3d ed.) (collecting cases from the Fifth and Sixth Circuits holding the same).

### B. The State Has No Interest in Enforcing an Unconstitutional Law.

The balance of equities likewise favors an injunction because "it is always in the public interest to protect constitutional rights." *Schmitt v. Rebertus*, 148 F.4th 958, 970 (8th Cir. 2025) (citation modified). The State invokes its "sovereign interest" in enforcing a "democratically enacted law," Opp. 24, but that presumption applies only to valid laws. The State

[3] SpaceXAI's counsel pointed out below that suing a state over new legislation is a major corporate decision that a company like SpaceXAI must weigh carefully—particularly while preparing an initial public offering.



Appellate Case: 26-2806 Page: 19 Date Filed: 09/28/2026 Entry ID: 5688511

has no interest in enforcing an unconstitutional one. *See Ala. Ass'n of Realtors*, 594 U.S. at 766. The State's warning that "[e]ach day the law is enjoined, digital sexual violence will proliferate," Opp. 24, is overstated. Abusive, nonconsensual dissemination of sexually explicit images is already unlawful under Minnesota's deepfake and revenge-porn statutes, Minn. Stat. §§ 617.262, 604.32, and SpaceXAI prohibits and works to block the creation of such images. Dkt. 40 ¶¶ 12-14. The insinuation that "Grok Imagine spews out staggering amounts of CSAM," Opp. 20, is false: the figures the State cites include reports on thousands of *unaltered* photographs and videos uploaded to Grok, Dkt. 39 at 20 n.8, and they show SpaceXAI policing abuse, not causing it.

## CONCLUSION

For these reasons, SpaceXAI respectfully requests that the Court enter an injunction pending appeal barring the Attorney General from enforcing § 325E.91 against SpaceXAI.

Dated: September 28, 2026 Respectfully submitted,

/s/ *Robert E. Dunn*
Robert E. Dunn
EIMER STAHL LLP
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008

(408) 889-1690
RDunn@eimerstahl.com

Johnathan Hall
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 660-7600
jhall@eimerstahl.com

Kenton J. Skarin
Reid Coleman
SPACEXAI LLC
800 West Cesar Chavez Street
Austin, TX 78701
kskarin@x.ai
rcoleman@x.ai

Todd A. Noteboom
Andrew P. Leiendecker
Sarah R. Almquist
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.leiendecker@stinson.com
sarah.almquist@stinson.com

*Counsel for Plaintiff-Appellant*
*SpaceXAI LLC*



Appellate Case: 26-2806 Page: 21 Date Filed: 09/28/2026 Entry ID: 5688511

## CERTIFICATE OF COMPLIANCE

1. This reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2598 words, excluding the parts exempted by Rule 32(f).

2. This reply complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ *Robert E. Dunn*
Robert E. Dunn

*Counsel for Plaintiff-Appellant*
*SpaceXAI LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system, which will serve all counsel of record.

/s/ *Robert E. Dunn*
Robert E. Dunn

*Counsel for Plaintiff-Appellant*
*SpaceXAI LLC*



Appellate Case: 26-2806 Page: 23 Date Filed: 09/28/2026 Entry ID: 5688511