No. 26-2806

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

X.AI LLC,

*Plaintiff-Appellant*,

v.

KEITH M. ELLISON, in his official capacity as Attorney General of Minnesota,

*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Minnesota
No. 0:26-cv-03425-DWF-DTS

# BRIEF OF *AMICI CURIAE* FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, FIRST AMENDMENT LAWYERS ASSOCIATION, AND WOODHULL FREEDOM FOUNDATION IN SUPPORT OF APPELLANT AND AN INJUNCTION PENDING APPEAL

Ronald G. London
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
ronnie.london@fire.org

Counsel for *Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amici* certifies that (1) *amici* do not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amici*.



Appellate Case: 26-2806 Page: 2 Date Filed: 09/29/2026 Entry ID: 5688625

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................... i

TABLE OF AUTHORITIES ........................................................... iii

INTEREST OF *AMICI CURIAE* ........................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 4

ARGUMENT .................................................................................. 7

CONCLUSION ............................................................................. 23

CERTIFICATES OF COMPLIANCE ................................................ 24

CERTIFICATE OF SERVICE ......................................................... 25



Appellate Case: 26-2806 Page: 3 Date Filed: 09/29/2026 Entry ID: 5688625

## TABLE OF AUTHORITIES

**Cases**


*Ashcroft v. ACLU*,
542 U.S. 656 (2004) .................................................................... 4, 17

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) ................................................................ 5, 16, 17

*Ass'n for Accessible Meds. v. Ellison*,
140 F.4th 957 (8th Cir. 2025) ............................................................ 23

*Bettor Racing, Inc. v. Nat'l Indian Gaming Comm'n*,
812 F.3d 648 (8th Cir. 2016) .............................................................. 19

*Boos v. Barry*,
485 U.S. 312 (1988) ........................................................................ 13

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) ...................................................................... 3, 4

*Brown v. Linder*,
2022 WL 2919561 (8th Cir. 2022).......................................................... 1

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ........................................................................ 12

*Carson v. Simon*,
978 F.3d 1051 (8th Cir. 2020) ............................................................ 23

*Chaplinsky v. New Hampshire*,
315 U.S. 568 (1942) .......................................................................... 8

*Counterman v. Colorado*,
600 U.S. 66 (2023) ................................................................ 15, 19, 21

*Edenfield v. Fane*,
507 U.S. 761 (1993) ........................................................................ 10

*Elrod v. Burns*,
427 U.S. 347 (1976) ........................................................................ 22

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989) .......................................................... 16, 17, 21

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) .................................................................. 4, 8

*Henderson v. Sch. Dist. of Springfield R-12*,
2023 WL 3687363 (8th Cir. 2023)........................................................ 1

*Hubbard v. United Press Int'l, Inc.*,
330 N.W.2d 428 (Minn. 1983) .......................................................... 14

*Hustler Magazine, Inc. v. Falwell*,
485 U.S. 46 (1988) ........................................................................ 11

*Johnson v. Freborg*,
995 N.W.2d 374 (Minn. 2023) .......................................................... 14

*Lake v. Wal-Mart Stores, Inc.*,
582 N.W.2d 231 (Minn. 1998) .......................................................... 14

*Minn. Citizens Concerned for Life, Inc. v. Swanson*,
692 F.3d 864 (8th Cir. 2012) ........................................................... 22

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ........................................................................ 5

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ................................................................. 2, 17

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......................................................................... 2

*N. Wind, Inc. v. Daley*,
200 F.3d 13 (1st Cir. 1999)............................................................. 19

*New Times, Inc. v. Isaacks*,
146 S.W.3d 144 (Tex. 2004) ........................................................... 12

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ...................................................................... 20

*Packingham v. North Carolina*,
582 U.S. 98 (2017) .......... 5

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... 9

*Reno v. ACLU*,
521 U.S. 844 (1997) .......... 4, 13

*Republican Party of Minn. v. White*,
536 U.S. 765 (2002) .......... 10

*Smith v. California*,
361 U.S. 147 (1959) .......... 19, 20

*State v. Brenner*,
No. A25-1855, 2026 WL 1971331 (Minn. Ct. App. July 6, 2026) .......... 15

*State v. Jorgenson*,
946 N.W.2d 596 (Minn. 2020) .......... 9

*Texas v. Johnson*,
491 U.S. 397 (1989) .......... 13

*TikTok Inc. v. Garland*,
604 U.S. 56 (2025) .......... 2

*Trump v. Selzer*,
No. 4:24-cv-449 (S.D. Iowa, filed Dec. 17, 2024) .......... 1

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) .......... 20

*United States v. Alvarez*,
567 U.S. 709 (2012) .......... 21

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000) .......... 8, 9, 13, 17

*United States v. Stevens*,
559 U.S. 460 (2010) .......... 8



Appellate Case: 26-2806 Page: 6 Date Filed: 09/29/2026 Entry ID: 5688625

*Volokh v. James*,
148 F.4th 71 (2d Cir. 2025) .......... 2

*X.AI LLC v. Ellison*, No. 26-3425 (DWF/DTS), 2026 WL 2619984
(D. Minn. Sept. 4, 2026) .......... 6

**Statutes**

17 U.S.C. § 512(c)(1)(C) .......... 16
17 U.S.C. § 512(c)(3) .......... 16
47 U.S.C. § 223(h)(1)(B) .......... 15
47 U.S.C. § 223(h)(2)(A) .......... 15
47 U.S.C. § 223(h)(2)(B) .......... 15
47 U.S.C. § 223(h)(3)(A) .......... 15
47 U.S.C. § 223(h)(3)(A) .......... 15
47 U.S.C. § 223(h)(3)(B) .......... 15
47 U.S.C. § 223(h)(3)(C)(iv) .......... 15
47 U.S.C. § 223a(a) .......... 16
47 U.S.C. § 223a(a)(1) .......... 15
47 U.S.C. § 223a(a)(3) .......... 15
47 U.S.C. § 223a(b) .......... 16
Minn. Stat. § 325E.91 .......... passim
Minn. Stat. § 604.32 .......... 13
Minn. Stat. § 609.341 .......... 5, 9
Minn. Stat. § 609.748 .......... 15
Minn. Stat. § 609.749 .......... 15
Minn. Stat. § 617.246 .......... 14
Minn. Stat. § 617.247 .......... 14
Minn. Stat. § 617.262 .......... 13

**Regulations**

HF 1606 .......... passim

**Constitutional Provisions**

U.S. Const. amend. I .......... passim

## Other Authorities

Brief of FIRE *et al* as *Amici Curiae*, *Babylon Bee v. Bonta*, No. 25-6138 (9th Cir. Mar. 18, 2026) .................................................... 14

*FIRE statement on legislative proposals to regulate artificial intelligence* (Jan. 8, 2025) ............................................................. 14



Appellate Case: 26-2806 Page: 8 Date Filed: 09/29/2026 Entry ID: 5688625

## INTEREST OF *AMICI CURIAE*[1]

The **Foundation for Individual Rights and Expression** (FIRE) is a nonpartisan nonprofit that defends the rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended First Amendment rights nationwide without regard to the speakers' views through public advocacy, strategic litigation, and *amicus curiae* filings in cases implicating expressive rights. *See, e.g.*, *Trump v. Selzer*, No. 4:24-cv-449 (S.D. Iowa, filed Dec. 17, 2024) (counsel for defendants); Brief of FIRE as *Amicus Curiae* in Supp. of Def.-Appellee, *Brown v. Linder*, 2022 WL 2919561 (8th Cir. 2022); Brief of FIRE as *Amici Curiae*, in Supp. of Pls.-Appellants, *Henderson v. Sch. Dist. of Springfield R-12*, 2023 WL 3687363 (8th Cir. 2023). FIRE's work includes protecting expressive rights in the digital realm and ensuring courts apply and extend First Amendment protections consistently to emerging technologies. *See*, *e.g.*, *Volokh v.*

[1] No counsel for a party authored this brief in whole or part. Further, no person, other than *amici*, their members, or their counsel contributed money intended to fund preparing or submitting this brief. Appellant has consented to filing of this brief, but Appellee has not. A motion for leave to file therefore accompanies this brief.

*James*, 148 F.4th 71 (2d Cir. 2025), *certified question answered*, --- N.E.3d ----, 2026 N.Y. Slip. Op. 03913 (June 23, 2026) (counsel); Brief of FIRE *et al.* as *Amici Curiae* Supporting Petitioners, *TikTok Inc. v. Garland*, 604 U.S. 56 (2025) (Nos. 24-656 and 24-657); Brief of FIRE as *Amicus Curiae* Supporting Respondents in No. 22-277 and Petitioners in No. 22-555, *Moody v. NetChoice*, LLC, 603 U.S. 707 (2024) (Nos. 22-277 and 22-555); Brief of FIRE as *Amicus Curiae* Supporting Respondents, *Murthy v. Missouri*, 603 U.S. 43 (2024) (No. 23-411).

The **First Amendment Lawyers Association (FALA)** is a nonprofit organization comprised of attorneys across the United States with a shared commitment to preserving and advancing the rights guaranteed by the First Amendment. Since its founding in the 1960s, FALA has actively participated in cases concerning free expression, freedom of the press, and restrictions on speech in public spaces. FALA members are often on the front lines of First Amendment litigation, and the organization frequently appears as *amicus* to protect against government encroachment on constitutional expression.

The **Woodhull Freedom Foundation** (“**Woodhull**”) is a non-profit organization that has worked for decades to advance the

recognition of sexual freedom, gender equality, and free expression. Woodhull's mission is focused on affirming sexual freedom as a fundamental human right. Woodhull has participated in litigation as a party or amicus in cases across the country involving freedom of speech. Woodhull is particularly focused on governmental attempts to censor, burden access to, or compel online speech, as sexually themed expression is often a target of such efforts.

*Amici* seek to participate in this case to stress both its importance and potential broader impact on free speech online, and the need for immediate relief from Minnesota's "nudification" ban that restricts vast amounts of protected speech, including nonsexual nudity and parodic or satirical images. In the march of progress and sweep of time, the adoption of and experimentation with artificial intelligence remain at a nascent stage. That makes it all the more important that our bedrock principles of free expression, which "do not vary when a new and different medium for communication appears," *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011) (cleaned up), protect against governments overcorrecting or overreaching as Minnesota has here.



Appellate Case: 26-2806 Page: 11 Date Filed: 09/29/2026 Entry ID: 5688625

## INTRODUCTION AND SUMMARY OF ARGUMENT

Generation after generation of well-meaning legislatures has sought to protect society from the perceived danger *du jour*, whether it be dime novels and penny dreadfuls in the 1800s, motion pictures in the early twentieth century, or the radio dramas, comic books, television, music, and video games that followed. *Ent. Merchs. Ass'n*, 564 U.S. at 797–98 (invalidating California's attempt to restrict violent video games). In recent years, such concerns largely focus on speech online. Regrettably, concern and uncertainty often lead to legislative attempts that overcorrect or that "[l]ack[] the precision that the First Amendment requires." *Reno v. ACLU*, 521 U.S. 844, 874 (1997).

In *Reno*, the Supreme Court held a provision of the Communications Decency Act violated the First Amendment as overbroad in suppressing a large amount of speech that adults have a constitutional right to send and receive in the interest of protecting children from potentially harmful materials. *Id.* at 874–79; *see also Ashcroft v. ACLU*, 542 U.S. 656 (2004).[2] In *Ashcroft v. Free Speech*

---

[2] More recently, the Court upheld a Texas state law requiring adult websites to implement age verification before allowing access. *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461 (2025).



Appellate Case: 26-2806 Page: 12 Date Filed: 09/29/2026 Entry ID: 5688625

*Coalition*, 535 U.S. 234 (2002), the Court invalidated the federal ban on virtual child pornography as substantially overbroad insofar as it criminalized depictions of minors engaged in sexually explicit conduct produced by means other than using real children. In *Packingham v. North Carolina*, 582 U.S. 98 (2017), the Court held a state law restricting registered sex offenders' internet access violated the First Amendment because it swept far beyond conduct connected to protecting children. And in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), the Court recognized that the algorithmic curation of social-media feeds is protected editorial expression such that state efforts to balance the viewpoints platforms offer necessarily implicate the First Amendment.

The Minnesota law here, HF 1606, is the latest instance of legislators overshooting the mark. It makes it unlawful for a website, app, or other service to allow a user to "nudify" an image or video of an "identifiable individual" to depict an "intimate part," Minn. Stat. § 325E.91, subd. 1(d); 1(b); 1(c)—broadly defined to include a person's "primary genital area, groin, [or] buttocks," as well as "inner thigh" or "breast" (male or female), *id*. § 609.341, subd. 5—if it was not so depicted in the original unaltered image or video, and if the altered image or video

is so realistic a reasonable person would believe the intimate part belongs to the identifiable individual. *Id.* § 325E.91, subd. 1(d)(2). In pursuing its asserted objective without sufficient precision, HF 1606 regulates far too broadly, to the detriment of protected online speech.

That is why denial of preliminary injunctive relief based entirely on what the district court saw as delay in xAI filing suit merits immediate attention. That any asserted delay was not a valid ground for denying a preliminary injunction is clear for the reasons stated in the Emergency Motion ("Mot.") at 21–24. But delaying possible relief without considering the merits of HF 1606's constitutionality was especially egregious. The constitutional issues *are* significant and "deserve … full consideration." *X.AI LLC v. Ellison*, No. 26-3495 (DWF/DTS), 2026 WL 2619984, at *5 (D. Minn. Sept. 4, 2026). But the decision that that can await some "near future," without even broaching the merits, *id.*—while the statute is unconstitutionally halting fully protected speech *now*—ignores that the "loss of First Amendment freedoms, for *even minimal* periods of time, *unquestionably* constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (emphases added). That is why this Court, given the

Minnesota law's substantial constitutional flaws, should enjoin the state from enforcing it pending appellate review.

## ARGUMENT

HF 1606 is a content-based statute directed at protected speech and therefore must satisfy strict scrutiny, meaning Minnesota has the burden of proving the statute serves a compelling governmental interest through the least restrictive means. But regardless of any compelling interest Minnesota may identify, HF 1606 fails to pass constitutional muster because it is not narrowly tailored. The law sweeps in vast amounts of protected speech, including consensually created material, material created but never distributed, depictions of nonsexualized nudity, and parodic or satirical images. It also lacks a scienter requirement and therefore imposes strict liability—the antithesis of narrow tailoring. And the chilling effect is obvious, as illustrated by the many examples of protected speech HF 1606 encompasses. Because the law consequently violates the First Amendment in several ways, Appellant xAI is likely to succeed on the merits of its appeal and this Court should issue a preliminary injunction pending appeal.

**1.** HF 1606 is a content-based restriction on protected speech that Minnesota will have the near-impossible burden of showing satisfies strict scrutiny. "It is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000). Strict scrutiny requires the government to show that its law serves a compelling government interest, is narrowly tailored to achieve it, and is the least restrictive means of doing so, a test that "is unforgiving because it is the standard for reviewing the direct targeting of fully protected speech." *Paxton*, 606 U.S. at 469, 484. "[A]s a practical matter, it is fatal in fact absent truly extraordinary circumstances." *Id.* at 485. And Minnesota's HF 1606 is not the rare exception that can withstand such scrutiny.

As a threshold matter, the Supreme Court recognizes only a few "well-defined and narrowly limited" categories of speech outside the First Amendment's protection, including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *United States v. Stevens*, 559 U.S. 460, 468–69 (2010) (*quoting Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–572 (1942)). HF 1606 is not confined to speech within any of those categories. Nor may "nudified" images be



Appellate Case: 26-2806 Page: 16 Date Filed: 09/29/2026 Entry ID: 5688625

treated as a new category of unprotected speech; the Supreme Court has rejected any "freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *Id.* at 472; *see also State v. Jorgenson*, 946 N.W.2d 596, 604 (Minn. 2020) ("The United States Supreme Court has been reluctant to expand these traditional categories of unprotected speech.").

And HF 1606 is content-based on its face because whether its prohibitions apply depends on the content of the resulting image or video—specifically, whether an altered or generated image or video realistically depicts an identifiable individual with an "intimate part" bared that was not shown in the original unaltered image or video. Minn. Stat. §§ 325E.91, subd. 1(d)(1)–(2); 2(a)(2); *id.* § 609.341, subd. 5. It therefore "applies to particular speech" as a content-based restriction and is "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). It is the Attorney General's burden to prove otherwise, because "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *Playboy*, 529 U.S. at 816. That places the substantive burden on Minnesota as to every

element of strict scrutiny, and that is not a burden the State can carry here.

**2.** HF 1606 cannot satisfy strict scrutiny because, at a minimum, even if the State's interest is conceded for purposes of preliminary injunction,[3] and the law's ability to serve that interest in some ways is accepted,[4] it is not narrowly tailored. HF 1606 fails strict scrutiny's narrow-tailoring requirement not only because it sweeps far beyond speech that might implicate a compelling governmental interest to reach consensually created material, material created but never distributed, depictions of nonsexualized nudity, and parodic or satirical images, but also because substantially less restrictive laws already address any compelling interest Minnesota can claim to justify HF 1606.

**a.** HF 1606 is not limited to nonconsensual nudification. Neither its prohibition nor the Attorney General's enforcement authority depends

---

[3] xAI conceded—at least for purposes of its preliminary-injunction motion—Minnesota's "compelling interest in curbing the nonconsensual dissemination of artificially generated nude images." Dkt. No. 13 at 14.

[4] At this stage in the litigation, the record is limited. But to defend successfully against xAI's First Amendment challenge, Minnesota must provide clarity on the interest it claims, *Republican Party of Minn. v. White*, 536 U.S. 765, 775 (2002), and prove that HF 1606 will materially advance it, *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993).

on whether the depicted individual consented. The statute therefore reaches uses expressly authorized by that individual. And Minnesota's asserted interest in curbing nonconsensual dissemination does not justify prohibiting consensual creation. Yet if xAI permits those fully consensual uses, it faces potential civil penalties of up to $500,000 for each time the content is accessed, downloaded, or otherwise used. Minn. Stat. § 325E.91, subds. 1(d), 2, 5.

HF 1606 likewise contains no exception for parody or satire. Those forms of expression—especially commentary on public officials and public affairs—often rely on imitation, exaggeration, and fictional depictions. In *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50–57 (1988), the Supreme Court held a public figure could not recover for intentional infliction of emotional distress based on a parody that no reasonable person would understand as asserting actual facts. The Court emphasized that political discourse would be "considerably poorer" without such expression. *Id.* at 55. Parody, like other forms of criticism, can also "provide social benefit." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). But under HF 1606, xAI will be liable for plainly protected parodic speech posted to its platform.

Section 325E.91's realism element does not cure this narrow tailoring deficiency. It asks only whether the altered or generated image is so realistic that a reasonable person would believe the depicted intimate part belongs to the identifiable individual. Minn. Stat. § 325E.91, subd. 1(d)(2). It does not ask whether, viewed as a whole and in context, a reasonable person would understand the work as parody or satire rather than as an assertion of actual fact. A satirical image can be realistic in appearance yet nonfactual in context. Indeed, a "superficial degree of plausibility" may be "the hallmark of satire," *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 161 (Tex. 2004), yet HF 1606 makes it a hallmark of a statutory violation. That some viewers or readers fail to recognize the joke does not diminish the protection parody receives. *See id.* at 157–61. In short, HF 1606 reaches a great deal of protected speech that does not implicate any conceivable governmental interest that could justify the law.

**b.** HF 1606 also fails narrow tailoring because substantially less restrictive laws already address the State's asserted interest. Minnesota bears an "especially heavy burden" to explain why a less restrictive provision would not be as effective. *Reno*, 521 U.S. at 879. If a less

restrictive alternative would serve Minnesota's purpose, the State must use it. *Playboy*, 529 U.S. at 813. Yet insofar as the State's interest concerns nonconsensual dissemination of "nudified" images, laws targeting dissemination—rather than access to tools capable of lawful as well as unlawful uses—address that harm more directly and burden less protected expression.

The Supreme Court has treated the availability of such targeted laws as evidence that a broader speech restriction is unnecessary. *See Boos v. Barry*, 485 U.S. 312, 329 (1988); *Texas v. Johnson*, 491 U.S. 397, 410 (1989). And Minnesota already provides civil and criminal remedies specifically directed at the nonconsensual dissemination of intimate deepfakes. Minn. Stat. §§ 604.32, 617.262. Both statutes turn on nonconsent and culpability, and both contain exemptions for specified commercial, public-interest, research, educational, and legal uses. *See* Minn. Stat. § 604.32, subds. 2, 6; *id.* § 617.262, subds. 2, 6.[5] For depictions

[5] That said, deepfake-specific laws, especially broad ones that regulate political and election-related speech, can raise concerns of their own. *See, e.g.*, *FIRE statement on legislative proposals to regulate artificial intelligence* (Jan. 8, 2025), https://www.fire.org/news/fire-statement-legislative-proposals-regulate-artificial-intelligence [https://perma.cc/VK87-YMFH]; Brief of FIRE *et al.* as *Amici Curiae*, *Babylon Bee v. Bonta*, No. 25-6138 (9th Cir. Mar. 18, 2026),



Appellate Case: 26-2806 Page: 21 Date Filed: 09/29/2026 Entry ID: 5688625

involving minors, Minnesota's definition of child sexual abuse material includes material that "has been created, adapted, or modified to appear that an *identifiable minor* is engaging in sexual conduct," Minn. Stat. § 617.246, subd. 1(f)(2)(ii) (emphasis added), and Minnesota law criminalizes their knowing dissemination and possession, *id.* § 617.247, subds. 3–4.

Further, depending on the facts of specific applications, other remedies for nudified images may lie. These include claims for defamation, intentional infliction of emotional distress, appropriation, or publication of private facts. *See Johnson v. Freborg*, 995 N.W.2d 374, 384 (Minn. 2023); *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983); *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 235 (Minn. 1998). Victims may also seek harassment restraining orders under Minn. Stat. § 609.748, while Minn. Stat. § 609.749 separately criminalizes specified forms of harassment.[6]

---

available at https://www.fire.org/sites/default/files/2026/04/Brief%20of%20Amici%20Curiae%20in%20Support%20of%20Appellees%20-%20Babylon%20Bee%20v.%20Bonta.pdf [https://perma.cc/A5EV-WV6K].

[6] *Amici* question whether Minn. Stat. § 609.748, which allows the issuance of a restraining order if harassing acts "have a substantial



Appellate Case: 26-2806 Page: 22 Date Filed: 09/29/2026 Entry ID: 5688625

Federal law supplies additional targeted measures. The TAKE IT DOWN Act criminalizes, in specified circumstances, the knowing publication of an adult's intimate digital forgery without consent; expressly exempts a person's publication of a digital forgery depicting themselves; and requires covered platforms to maintain a notice-and-removal process.[7] 47 U.S.C. § 223(h)(3)(A), (C)(iv); *id.* § 223a(a)(1), (3). Where a generated image infringes a copyright, the Digital Millennium

---

adverse effect *or* are intended to have a substantial adverse effect on the safety, security, or privacy of another," *id.* § 609.748 (1)(a)(1) (emphasis added), meets the scienter element the First Amendment requires as announced in *Counterman v. Colorado*, 600 U.S. 66, 73–78 (2023). *See also infra* at 14–17. However, Minn. Stat. § 609.749, subd. 2(b), does have "a mens rea requirement—specific intent." *Minnesota v. Brenner*, No. A25-1855, 2026 WL 1971331, at *5 (Minn. Ct. App. July 6, 2026).

[7] This is not to say the TAKE IT DOWN Act is without First Amendment concerns. It allows liability for covered images of adults based on harm caused by publication without intent to cause that harm, and liability for covered images of minors based on intent to "abuse, humiliate, harass, or degrade" the minor, subjective terms that raise unconstitutional vagueness concerns. 47 U.S.C. § 223(h)(2)(A)–(B), (3)(A)–(B). It also extends criminal liability to digitally forged "intimate visual depictions" of identifiable minors even if they do not involve "sexually explicit conduct," *id.* § 223(h)(1)(B), (3)(B), potentially criminalizing expression that "records no crime and creates no victims by its production" in contravention of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 250 (2002). And its notice-and-removal regime incentivizes social media platforms to remove lawful speech, creating a potential digital "heckler's veto." *See* 47 U.S.C. § 223a(a), (b).



Appellate Case: 26-2806 Page: 23 Date Filed: 09/29/2026 Entry ID: 5688625

Copyright Act's safe-harbor framework also incentivizes service providers to remove or disable access to the material after receiving a compliant notice. 17 U.S.C. § 512(c)(1)(C), (c)(3).

**c.** Not only is HF 1606's lack of a scienter requirement a separate ground for holding it unconstitutional, *see infra* 18–21, it is another failure of narrow tailoring. In *Florida Star v. B.J.F.*, the Supreme Court held Florida's ban on mass-media publication of information identifying a sexual assault victim was insufficiently tailored, finding three independent defects. 491 U.S. 524, 538–40 (1989). One of those defects was the rule's breadth: Liability automatically flowed from publication, without individualized findings, and the statute had no "scienter requirement of any kind." *Id.* at 539. The Court ultimately held punishment for publishing lawfully obtained, truthful information could be imposed, if at all, only when "narrowly tailored to a state interest of the highest order," and that imposition of liability without a scienter requirement failed that standard. *Id.* at 539–41.

**d.** For all these reasons, Minnesota cannot bear its burden of proving HF 1606 is narrowly tailored. Notably, the State cannot satisfy its burden merely by identifying imperfections in the alternatives.



Appellate Case: 26-2806 Page: 24 Date Filed: 09/29/2026 Entry ID: 5688625

*Playboy*, 529 U.S. at 816–17; *Ashcroft*, 542 U.S. at 669–71. HF 1606's unconstitutionally broad-brushed approach is reason enough for issuing an injunction pending appeal.

**3.** HF 1606 is also unconstitutional for the separate reason that it is unconstitutionally overbroad. For government regulations of speech, a law violates the First Amendment due to overbreadth if "a substantial number of [its] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody*, 603 U.S. at 723 (citations omitted). Courts invalidate substantially overbroad laws even when they have some "plainly legitimate" applications. *Id*. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *See Ashcroft v. Free Speech Coalition*, 535 U.S. at 255.

For many of the same reasons it lacks the required narrow tailoring, HF 1606 is substantially overbroad. Even assuming HF 1606 is likely to substantially address nonconsensual distribution of sexualized nudification not otherwise protected as parody or by some other public interest, those cases would represent the totality of HF 1606's constitutional applications. On the other side of the ledger, the

statute's unconstitutional applications are so vast as to be practically immeasurable. Those unconstitutional applications include but are not limited to images created by the individual depicted, images created by someone else but with the permission of any identifiable people in the photograph, images that might look real but in context are understood by astute observers to be intended as parody, images that contain non-sexualized nudity, and images created but not distributed, even if non-consensual. HF 1606 is substantially overbroad because all of those unconstitutional applications far outweigh any possible constitutional applications.

**4.** HF 1606 additionally violates the First Amendment as a speech regulation that lacks a scienter requirement. The First Amendment requires scienter even if a regulation imposes only civil fines and private liability rather than criminal penalties, and does not allow an absence of scienter amounting to strict liability. *See Counterman*, 600 U.S. at 73–78 (examining, across both criminal and civil frameworks, the "strategic protection" that requiring at least some level of scienter

provides).[8] Imposing liability on a platform regardless of whether the platform knows or has reason to know a user is employing it to create or post protected as opposed to unprotected speech will predictably cause the platform to suppress large amounts of protected expression.

Nearly seven decades ago, the Supreme Court invalidated a Los Angeles ordinance that imposed strict criminal liability on a bookseller for possessing an obscene book without requiring proof the bookseller knew what the book contained. *Smith v. California*, 361 U.S. 147 (1959). The Court explained that "[b]y dispensing with any requirement of knowledge of the contents of the book … the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter," because the bookseller "will tend to restrict the books he sells to those he has inspected." *Id.* at 153. Thus, "the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature." *Id.*

---

[8] "As a general matter, scienter is not required to impose civil penalties for regulatory violations when the regulation is silent as to state of mind." *Bettor Racing, Inc. v. Nat'l Indian Gaming Comm'n*, 812 F.3d 648, 652 (8th Cir. 2016) (quoting *N. Wind, Inc. v. Daley*, 200 F.3d 13, 19 (1st Cir. 1999)). Thus, when such a statute has no scienter standard, it creates strict liability. *Id.* at 652.

For similar reasons, the Court soon after imposed a higher scienter requirement—actual malice—for defamation claims by public officials in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964) ("A rule compelling the critic of official conduct to guarantee the truth of all his factual assertions—and to do so on pain of libel judgments virtually unlimited in amount—leads to a comparable 'self-censorship.'"). And the common law has also traditionally imposed a higher level of scienter before imposing secondary liability. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489–91 (2023) (explaining that aiding-and-abetting liability requires conscious and culpable participation in another's wrongful act).

While the Supreme Court has not identified a single universal scienter standard the First Amendment requires to hold an intermediary responsible for potential or actual unlawful speech of others, these cases establish a broad principle: Liability must rest on the defendant's own constitutionally sufficient culpability rather than solely the wrongdoing of others. HF 1606, however, has no scienter requirement at all, much less the type of heightened culpability the First Amendment requires and that the common law traditionally imposes for secondary liability. *See Counterman*, 600 U.S. at 75–78; *Florida Star*, 491 U.S. at 539–41; *United*

*States v. Alvarez*, 567 U.S. 709, 719 (2012) ("Even when considering some instances of defamation and fraud … the Court has been careful to instruct that falsity alone may not suffice …. The statement must be a knowing or reckless falsehood.").

**5.** All of HF 1606's constitutional infirmities mean it cannot help but chill protected speech. For example, a platform could not permit a user to generate a realistic nude self-depiction from a clothed photograph, or permit a fashion magazine publisher to generate such an image with a model's express consent. HF 1606 likewise bars xAI from allowing individuals to use Grok Imagine or other AI tools to create "nudified" images of themselves for, *e.g.*, dating apps or other reasons, however consensual or benign. Those individuals may want to enhance their appearance or may simply prefer to use AI-generated images instead of actual photographs (and may well want to include the non-intimate body parts HF 1606 encompasses). The image of public officials in the reflecting pool appearing in xAI's motion illustrates this same defect as well: the President's post would impose liability. *See* Mot.at 14. Minnesota has no compelling interest in preventing such use.



Appellate Case: 26-2806 Page: 29 Date Filed: 09/29/2026 Entry ID: 5688625

Even if Minnesota narrowed the law so as to exempt material the State does not have an interest in regulating, it is all the more critical that it include a scienter requirement, because the covered platforms have no way of knowing if consent was obtained, or if the person in the source image even is an actual, identifiable person rather than an image that was itself AI-generated. They would have no choice but to err on the side of disallowing protected speech under a government mandate. Only injunctive relief can avoid that outcome.

As this Court has recognized, when a plaintiff establishes a likely First Amendment violation, the remaining preliminary injunction requirements are generally deemed satisfied. *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc). That is because the plaintiff will have all but necessarily demonstrated irreparable harm, *Elrod*, 427 U.S. at 373 (1976), and the interests of third parties and the public likewise favor injunctive relief, given the compelling interest in preserving First Amendment rights and that it is "always in the public interest to protect constitutional rights." *See*, *e.g.*, *Ass'n for Accessible Meds. v. Ellison*, 140 F.4th 957, 961 (8th Cir. 2025) (quoting *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020)).



Appellate Case: 26-2806 Page: 30 Date Filed: 09/29/2026 Entry ID: 5688625

## CONCLUSION

Because HF 1606 violates the First Amendment in multiple ways, this Court should grant the emergency motion for an injunction pending appeal.

Dated: September 17, 2026

/s/ *Ronald G. London*

Ronald G. London
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
ronnie.london@fire.org

Counsel for *Amici Curiae*

## CERTIFICATES OF COMPLIANCE

1. Pursuant to this Court's Rule 28A(h), a virus check of the digital submission of this brief was performed using SentinelOne Singularity, and no virus was detected.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word in 14-point Century Schoolbook font.

Dated: September 17, 2026

/s/ *Ronald G. London*
Ronald G. London
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 17, 2026, an electronic copy of the foregoing Brief of *Amici Curiae* in Support of Appellant was filed with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. The undersigned also certifies that all parties in this case are represented by counsel who are registered CM/ECF users, and service of the brief will be accomplished by the CM/ECF system.

Dated: September 17, 2026

/s/ *Ronald G. London*
Ronald G. London
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION