No. 26-2806

IN THE

# United States Court of Appeals for the Eighth Circuit

SPACEXAI LLC,
Plaintiff-Appellant,

v.

KEITH ELLISON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MINNESOTA,
Defendant-Appellee.

On Appeal From
The United States District Court for the District of Minnesota
No. 0:26-cv-03425-DWF-DTS
Judge Donovan W. Frank

## PLAINTIFF-APPELLANT SPACEXAI LLC'S OPENING BRIEF


Kenton J. Skarin
Reid Coleman
SPACEXAI LLC
800 West Cesar Chavez Street
Austin, TX 78701
kskarin@x.ai
rcoleman@x.ai

Robert E. Dunn
*Counsel of Record*
EIMER STAHL LLP
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008
(408) 889-1690
RDunn@eimerstahl.com

Johnathan Hall
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

(312) 660-7600
jhall@eimerstahl.com

Todd A. Noteboom
Andrew P. Leiendecker
Sarah R. Almquist
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.leiendecker@stinson.com
sarah.almquist@stinson.com

*Counsel for Plaintiff-Appellant SpaceXAI LLC*

**ORAL ARGUMENT REQUESTED**

## SUMMARY OF THE CASE

Minn. Stat. § 325E.91 makes it unlawful for an artificial-intelligence platform to allow a user to "nudify" an image. "Nudify" is defined as altering or generating an image so that it realistically depicts an identifiable person's "intimate part," a term the statute borrows from Minnesota's criminal sexual-contact law and that includes the inner thigh, buttocks, and male or female breast. The statute contains no consent, dissemination, or scienter element; it exempts no artistic, political, medical, or educational speech; and it imposes strict liability of up to $500,000 per image on the provider of the tool.

SpaceXAI LLC—whose Grok Imagine product lets users create and edit images and videos from ordinary prompts—sued and sought a preliminary injunction two-and-a-half months after enactment and before the statute took effect. The district court denied the motion without addressing the First Amendment. This Court has since enjoined enforcement of section 325E.91 pending appeal. The case presents constitutional questions of first impression concerning state regulation of AI-assisted expression, and argument would assist the Court. SpaceXAI requests twenty minutes of argument per side.



Appellate Case: 26-2806 Page: 3 Date Filed: 10/30/2026 Entry ID: 5700682

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1A of the Eighth Circuit Rules of Appellate Procedure, Plaintiff-Appellant SpaceXAI LLC, formerly known as X.AI LLC, discloses the following information:

On August 6, 2026, X.AI LLC changed its name to SpaceXAI LLC. X.AI LLC and SpaceXAI LLC are the same entity. The change was in name only. Plaintiff-Appellant X.AI LLC, now known as SpaceXAI LLC, is an indirect wholly owned subsidiary of Space Exploration Technologies Corp., a publicly traded corporation.

No publicly held corporation owns 10% or more of the stock of Space Exploration Technologies Corp.

## TABLE OF CONTENTS

SUMMARY OF THE CASE ........................................................ i
RULE 26.1 CORPORATE DISCLOSURE STATEMENT ........................ ii
TABLE OF CONTENTS ........................................................ iii
TABLE OF AUTHORITIES ........................................................ v
INTRODUCTION ........................................................ 1
JURISDICTIONAL STATEMENT ........................................................ 6
STATEMENT OF THE ISSUES ........................................................ 7
STATEMENT OF THE CASE ........................................................ 8

A. SpaceXAI Imposes Safeguards Against Improper Use of Grok Imagine ........................................................ 8

B. Minnesota Enacts Section 325E.91 ........................................................ 10

C. Procedural History ........................................................ 13

SUMMARY OF ARGUMENT ........................................................ 16
STANDARD OF REVIEW ........................................................ 19
ARGUMENT ........................................................ 20

I. SPACEXAI IS LIKELY TO SUCCEED ON THE MERITS BECAUSE MINN. STAT. § 325E.91 VIOLATES THE FIRST AMENDMENT. .......... 21

A. Section 325E.91 Imposes a Content-Based Restriction on Protected Speech and Is Thus Subject to Strict Scrutiny ........................................................ 21

B. The State Cannot Carry Its Burden Under Any Level of Scrutiny. ........................................................ 24

C. Section 325E.91 Is Facially Overbroad. ........................................................ 44

D. SpaceXAI May Assert Its Own First Amendment Rights and Those of Its Users. ........................................................ 45

II. THE REMAINING FACTORS WEIGH STRONGLY IN FAVOR OF INJUNCTIVE RELIEF. .......... 51

A. SpaceXAI and Its Users Face Ongoing, Irreparable Harm. .......... 51

B. The Balance of Equities and the Public Interest Favor an Injunction. .......... 58

CONCLUSION .......... 61

## TABLE OF AUTHORITIES

### Cases

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) .......... 21

*ACLU of Ill. v. Alvarez*,
679 F.3d 583 (7th Cir. 2012) .......... 47

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021) .......... 7, 53, 58, 60

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) .......... 44, 45

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) .......... 36

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) .......... 7, 29, 30, 49

*Babylon Bee, LLC v. Lopez*,
818 F. Supp. 3d 1181 (D. Haw. 2026) .......... 33

*Bakken v. U.S. Mil. Acad.*,
833 F. Supp. 3d 460 (S.D.N.Y. 2026) .......... 55

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020) .......... 24

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) .......... 30

*Benisek v. Lamone*,
585 U.S. 155 (2018) .......... 56

*Brandt v. Davis*,
191 F.3d 887 (8th Cir. 1999) .......... 58

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) .......... 21, 22, 25

*Buckley v. Valeo*,
424 U.S. 1 (1976) .......... 47

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .......... 31, 32

*Carey v. Population Servs. Int'l*,
431 U.S. 678 (1977) .......... 50

*Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*,
690 F.3d 996 (8th Cir. 2012) .......... 20

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) .......... 43

*Comput. & Commc'ns Indus. Ass'n v. Paxton*,
747 F. Supp. 3d 1011 (W.D. Tex. 2024) .......... 55

*Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
562 F. Supp. 279 (E.D. Ark. 1983) .......... 57

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... 34, 44, 45

*Craig v. Boren*,
429 U.S. 190 (1976) .......... 49, 50

*Dataphase Sys., Inc. v. C L Sys., Inc.*,
640 F.2d 109 (8th Cir. 1981) .......... 20

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025) .......... 51

*Dixon v. City of St. Louis*,
950 F.3d 1052 (8th Cir. 2020) .......... 19

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 7, 18, 52

*Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975) .......... 28

*Fields v. City of Philadelphia*,
862 F.3d 353 (3d Cir. 2017) .......... 47

*Free Speech Coal. v. Paxton*,
606 U.S. 461 (2025) .......... 25

*Free the Nipple-Fort Collins v. City of Fort Collins*,
916 F.3d 792 (10th Cir. 2019) .......... 58, 59

*Glik v. Cunniffe*,
655 F.3d 78 (1st Cir. 2011) .......... 47

*Gordon v. Holder*,
632 F.3d 722 (D.C. Cir. 2011) .......... 54

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*,
115 F.4th 889 (8th Cir. 2024) .......... 7, 56

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995) .......... 22

*Hustler Magazine, Inc. v. Falwell*,
485 U.S. 46 (1988) .......... 31

*Iowa Utils. Bd. v. FCC*,
109 F.3d 418 (8th Cir. 1996) .......... 53

*Irizarry v. Yehia*,
38 F.4th 1282 (10th Cir. 2022) .......... 22

*Jenkins v. Georgia*,
418 U.S. 153 (1974) .......... 28

*Joelner v. Vill. of Wash. Park*,
378 F.3d 613 (7th Cir. 2004) .......... 59

*Kan. Health Care Ass'n v. Kan. Dep't of Soc. & Rehab. Servs.*,
31 F.3d 1536 (10th Cir. 1994) .......... 55

*KH Outdoor, L.L.C. v. City of Trussville*,
458 F.3d 1261 (11th Cir. 2006) .......... 61

*Kohls v. Bonta*,
No. 2:24-cv-02527, 2024 WL 4374134 (E.D. Cal. Oct. 2, 2024)..... 33, 60

*Kohls v. Ellison*,
166 F.4th 728 (8th Cir. 2026) ........................................................ 55, 56

*Kohls v. Ellison*,
No. 24-cv-3754, 2025 WL 66765 (D. Minn. Jan. 10, 2025).................. 38

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) ........................................................................... 50

*Lankford v. Sherman*,
451 F.3d 496 (8th Cir. 2006) .............................................................. 21

*Mahmoud v. Taylor*,
606 U.S. 522 (2025) ........................................................................... 52

*Maryland v. King*,
567 U.S. 1301 (2012) ......................................................................... 60

*McConnell v. FEC*,
540 U.S. 93 (2003) ............................................................................. 48

*McCullen v. Coakley*,
573 U.S. 464 (2014) ..................................................... 23, 25, 36, 40, 42

*Minn. Chamber of Com. v. Choi*,
707 F. Supp. 3d 846 (D. Minn. 2023)................................................. 54

*Minn. Citizens Concerned for Life, Inc. v. Swanson*,
692 F.3d 864 (8th Cir. 2012) ......................................................... 4, 5, 20

*Minn. Voters All. v. Ellison*,
188 F.4th 1067 (8th Cir. 2026) .......................................................... 19

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*,
460 U.S. 575 (1983) ...................................................................... 23, 47

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ........................................................................... 46

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ........ 58

*Munaf v. Geren*,
553 U.S. 674 (2008) ........ 21

*N.Y. Progress & Prot. PAC v. Walsh*,
733 F.3d 483 (2d Cir. 2013) ........ 21

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
585 U.S. 755 (2018) ........ 24

*Ness v. City of Bloomington*,
11 F.4th 914 (8th Cir. 2021) ........ 17, 18, 46

*NetChoice v. Griffin*,
812 F. Supp. 3d 905 (W.D. Ark. 2025) ........ 41

*NetChoice, LLC v. Bonta*,
113 F.4th 1101 (9th Cir. 2024) ........ 55

*NetChoice, LLC v. Fitch*,
134 F.4th 799 (5th Cir. 2025) ........ 49

*NetChoice, LLC v. Griffin*,
831 F. Supp. 3d 816 (W.D. Ark. 2026) ........ 49

*NetChoice, LLC v. Griffin*,
No. 5:23-cv-05105, 2023 WL 5660155 (W.D. Ark. Aug. 31, 2023) ...... 55

*NetChoice, LLC v. Yost*,
716 F. Supp. 3d 539 (S.D. Ohio 2024) ........ 55

*New York v. Ferber*,
458 U.S. 747 (1982) ........ 34

*Nken v. Holder*,
556 U.S. 418 (2009) ........ 58

*Novak v. City of Parma*,
932 F.3d 421 (6th Cir. 2019) ........ 33

*Novus Franchising, Inc. v. Dawson*,
725 F.3d 885 (8th Cir. 2013) .......... 19, 53

*Osborne v. Ohio*,
495 U.S. 103 (1990) .......... 27, 28

*Packingham v. North Carolina*,
582 U.S. 98 (2017) .......... 7, 41

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
530 F.3d 724 (8th Cir. 2008) .......... 4, 7, 20

*Powers v. Ohio*,
499 U.S. 400 (1991) .......... 50, 51

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... 7, 23, 24, 25

*Reno v. ACLU*,
521 U.S. 844 (1997) .......... 28, 43

*Republican Party of Minn. v. White*,
416 F.3d 738 (8th Cir. 2005) .......... 26

*Rodgers v. Bryant*,
942 F.3d 451 (8th Cir. 2019) .......... 20, 58, 61

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
592 U.S. 14 (2020) .......... 52

*Schmitt v. Rebertus*,
148 F.4th 958 (8th Cir. 2025) .......... 52, 58

*Schneider v. Town of Irvington*,
308 U.S. 147 (1939) .......... 43

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
467 U.S. 947 (1984) .......... 48, 51

*Smith v. California*,
361 U.S. 147 (1959) .......... 34, 59

*Snyder v. Phelps*,
562 U.S. 443 (2011) .......... 31

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .......... 22, 47

*Stanley v. Georgia*,
394 U.S. 557 (1969) .......... 29

*State v. Casillas*,
952 N.W.2d 629 (Minn. 2020) .......... passim

*State v. Washington-Davis*,
881 N.W.2d 531 (Minn. 2016) .......... 29

*Telescope Media Grp. v. Lucero*,
936 F.3d 740 (8th Cir. 2019) .......... 46, 47

*United States v. Playboy Ent. Grp.*,
529 U.S. 803 (2000) .......... 25, 36

*United States v. Stevens*,
559 U.S. 460 (2010) .......... 33, 44

*Video Software Dealers Ass'n v. Webster*,
968 F.2d 684 (8th Cir. 1992) .......... 34

*Virginia v. Am. Booksellers Ass'n*,
484 U.S. 383 (1988) .......... 48, 49

*Volokh v. James*,
656 F. Supp. 3d 431 (S.D.N.Y. 2023) .......... 55

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .......... 40, 41

*X Corp. v. Bonta*,
116 F.4th 888 (9th Cir. 2024) .......... 54, 55

*X.AI LLC v. Harwood*,
No. 7:26-cv-00078 (N.D. Tex. filed July 14, 2026) .......... 9

**Statutes**

15 U.S.C. § 6851(a)(5)(A)(i) .................................................................37

28 U.S.C. § 1292(a)(1)...........................................................................7

28 U.S.C. § 1331 ....................................................................................6

28 U.S.C. § 1343(a)(3)...........................................................................6

42 U.S.C. § 1983 ....................................................................................6

47 U.S.C. § 223 ...............................................................................37, 38

Minn. Stat. § 325E.91.......................................................................passim

Minn. Stat. § 604.32 ....................................................................11, 27, 59

Minn. Stat. § 609.341 ......................................................................11, 26

Minn. Stat. § 617.261 ...................................................................35, 38, 45

Minn. Stat. § 617.262 ......................................................................passim

**Rules**

Fed. R. App. P. 4(a)(1)(A) ................................................................6, 7

**Other Authorities**

Amendment H1606A3 (H. Comm. on Judiciary Fin. & Civ. Law, Mar. 26, 2026) ..................................................................................36

Amendment SCS1119A-3 (S. Comm. on Judiciary & Pub. Safety, Feb. 19, 2025)..........................................................................12, 27

Br. of Appellant, *State v. Casillas*, No. A19-0576 (Minn. Apr. 15, 2020)...................................................................................38, 39

Exec. Order No. 14434, 91 Fed. Reg. 63,129 (Oct. 2, 2026)......................3

Hearing on H.F. 1606 Before the H. Comm. on Com. Fin. & Pol'y, 94th Leg. (Minn. Feb. 19, 2026).............................................................10

Hearing on S.F. 1119 Before the S. Comm. on Judiciary & Pub. Safety, 94th Leg. (Minn. Feb. 19, 2025) .......... 30

Minutes, S. Comm. on Judiciary & Pub. Safety (Minn. Feb. 19, 2025) .......... 12

S.F. 1119, 1st Eng. (Minn. Apr. 1, 2025) .......... 12, 27

S.F. 1119, 94th Leg., as introduced (Minn. Feb. 5, 2025) .......... 11, 12, 27

**Constitutional Provisions**

U.S. Const. amend. I .......... 7



Appellate Case: 26-2806 Page: 15 Date Filed: 10/30/2026 Entry ID: 5700682

## INTRODUCTION

This case challenges a law—Minn. Stat. § 325E.91—that deliberately punishes the creation of images protected by the First Amendment while ignoring decades of controlling Supreme Court precedent directly applicable to restrictions on expressive conduct. The statute is subject to strict scrutiny because it expressly ties liability to the content of the created images, and it fails that rigorous standard because it reaches ordinary protected speech, lacks any scienter, consent, or dissemination element, and is far from narrowly tailored. Without addressing the law's numerous constitutional deficiencies, the district court treated a challenge filed before the statute went into effect as untimely and invented a novel delay rule that would let courts ignore constitutional infirmities when balancing the equities. No such rule exists. Because section 325E.91 violates the First Amendment and exposes SpaceXAI to potentially crippling fines and civil liability, this Court correctly granted an emergency injunction pending appeal. It should now reverse the district court outright and enjoin the statute's enforcement against SpaceXAI pending final judgment.

Minnesota enacted section 325E.91 in May 2026. The law purports to ban “nudification,” defined as the use of artificial-intelligence tools to alter the image of a real person to depict an “intimate part.” Minn. Stat. § 325E.91. But instead of narrowly defining “intimate part,” the statute borrows a criminal sexual-contact definition that includes the “inner thigh,” “buttocks,” and “breast”—male or female. Thus, while Minnesota’s asserted goal was to protect its citizens from harms caused by the nonconsensual dissemination of AI-altered sexually explicit images, the statute it actually passed applies to wide swaths of protected speech. For instance, it penalizes AI platforms used to create images of men in swim trunks, women in bathing suits or racing shorts, and other images that would not qualify as “nudified” under any common-sense definition.

Nor does the statute contain any exemptions for images with political, artistic, medical, educational, religious, or journalistic value, including political satire. And the law contains no mens rea requirement, placing AI platforms that seek to *prevent* unlawful images on the same footing as AI platforms that encourage them. The statute holds all such AI platforms strictly liable for up to $500,000 per image.

A statute drawn that broadly cannot survive *any* level of First Amendment scrutiny. But section 325E.91 is subject to the most searching review because it is a content-based restriction on protected speech: Images and videos are expressive content, and liability turns entirely on what the created images depict. Minnesota cannot satisfy strict scrutiny. SpaceXAI[1] does not dispute that Minnesota has a compelling interest in prohibiting the dissemination of artificially edited explicit images of real people without their consent—indeed, SpaceXAI's own policies and technological barriers prohibit such images, and it has filed suit against users who evade those restrictions. But strict scrutiny requires the State to prove that section 325E.91 is narrowly tailored—*i.e.*, that it does not reach substantially more speech than its interest requires, and that no less restrictive alternative would serve that interest. The statute fails on both counts. Not only does the statute sweep in all manner of protected speech—consensually created images, non-nude images, political parody, etc.—but the State has readily available alternatives. Both Minnesota

[1] Appellant has announced that it will change its name to SpaceXSI, reflecting the fact that "Super Intelligence" better captures technology that "unlock[s] new forms of creativity." *See* Exec. Order No. 14434, 91 Fed. Reg. 63,129 (Oct. 2, 2026). For consistency with the record and its current corporate disclosure statement, this brief uses "SpaceXAI."

and Congress already have enacted targeted statutes that address the same harm without sweeping in protected speech, and the Legislature could have followed the same roadmap here. Indeed, the bill as introduced borrowed the State's existing deepfake definition, but the Legislature replaced it. As the United States explained in its Statement of Interest, section 325E.91 sweeps far beyond the federal law that already addresses the same harm. The State thus cannot show that a narrower statute would fail to achieve its goal.

Section 325E.91 would also fail intermediate scrutiny for the same reasons: it burdens far more speech than necessary and forecloses an entire medium of expression. And because its unconstitutional applications dwarf its legitimate ones, it is facially overbroad as well.

Yet without even examining these First Amendment questions, the district court denied SpaceXAI's preliminary injunction motion. That omission infected everything that followed. A movant challenging a state statute must show that it is likely to prevail on the merits, and in a First Amendment case that showing generally satisfies the remaining factors. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731-32 (8th Cir. 2008) (en banc); *Minn. Citizens Concerned for Life, Inc. v.*

*Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc). A court therefore cannot properly weigh irreparable harm, the equities, or the public interest while ignoring the constitutional injury at the heart of the case.

The court's rulings on those other factors compounded its mistake. Its first error concerned irreparable harm. The court did not deny that SpaceXAI and its users were being deprived of their First Amendment rights, or that the loss of those rights, even briefly, is irreparable. It held instead that SpaceXAI waited too long, even though it sued *before* the statute could legally be enforced and within two-and-a-half months of enactment. There is no support for the district court's arbitrary delay rule, nor did the court cite any. The court further erred by disregarding SpaceXAI's admittedly unrecoverable compliance costs.

The court's second error concerned the remaining factors. It declared that the government's interest in enforcing its law outweighed any interest in securing constitutional rights, without ever asking whether section 325E.91 is constitutional. But a court that ignores the merits in a First Amendment challenge cannot analyze the equities or the public interest because states have no valid interest in enforcing unconstitutional laws. And in all events, an injunction would leave undisturbed the



Appellate Case: 26-2806 Page: 20 Date Filed: 10/30/2026 Entry ID: 5700682

existing protections against the nonconsensual dissemination of explicit, AI-generated images.

To avoid the law's crushing $500,000-per-image penalty, SpaceXAI was compelled to restrict access to Grok Imagine in Minnesota until this Court enjoined enforcement pending appeal. SpaceXAI asks this Court for the relief the district court wrongfully withheld: reversal, with instructions to enter a preliminary injunction barring enforcement of section 325E.91 against SpaceXAI—and continuation of this Court's existing injunction until that relief is in place.

## JURISDICTIONAL STATEMENT

SpaceXAI brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against enforcement of Minn. Stat. § 325E.91 on the ground that it violates the First Amendment. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

On September 4, 2026, the district court entered a memorandum opinion and order denying SpaceXAI's motion for a preliminary injunction. Addendum ("Add.") 3-16; Joint Appendix ("JA") 291-304; R. Doc. 54. SpaceXAI filed a notice of appeal the same day. R. Doc. 55; *see also* Fed.

R. App. P. 4(a)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

**1.** Whether SpaceXAI is likely to succeed on the merits of its First Amendment challenge to Minn. Stat. § 325E.91.

*Most apposite authorities: Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002); *Packingham v. North Carolina*, 582 U.S. 98 (2017); *State v. Casillas*, 952 N.W.2d 629 (Minn. 2020); U.S. Const. amend. I; Minn. Stat. § 325E.91.

**2.** Whether the district court erred in denying a preliminary injunction on the ground that SpaceXAI "unreasonably delayed" and that the balance of equities and the public interest favor enforcement of a statute whose constitutionality the court never assessed.

*Most apposite authorities: Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724 (8th Cir. 2008) (en banc); *Elrod v. Burns*, 427 U.S. 347 (1976); *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889 (8th Cir. 2024); *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758 (2021).

## STATEMENT OF THE CASE

### A. SpaceXAI Imposes Safeguards Against Improper Use of Grok Imagine

SpaceXAI is a frontier artificial-intelligence developer whose flagship product, Grok, includes an image- and video-generation model called Grok Imagine. JA185-86; R. Doc. 40, ¶¶ 6-7. Grok Imagine generates and edits images and short videos from written or spoken prompts: a user describes what she has in mind, and the result arrives in seconds. *Id.* ¶ 7. The images and videos users create span the full range of visual culture—illustrations and concept art, animated family photographs, memes, product mockups, news content, religious imagery, and political satire. *Id.* ¶ 9; JA10, JA20-21; R. Doc. 1, ¶¶ 21, 37-38. Grok Imagine is available in all fifty states, and many of its users are in Minnesota. JA186; R. Doc. 40, ¶ 8.

Every user must agree to terms of service that forbid "illegal, harmful, or abusive activities" and that prohibit any conduct that violates SpaceXAI's Acceptable Use Policy. JA187; JA82; R. Doc. 40, ¶ 11; R. Doc. 14-1, at 2. That policy bars "[u]ndressing or nudifying real persons, or otherwise altering a real person's image or likeness to depict them in an intimate or sexual context," depicting any person's likeness "in a

pornographic manner," and "[s]exualizing or exploiting children." JA187; JA87; R. Doc. 40, ¶ 12; R. Doc. 14-1, at 3. SpaceXAI backs those rules with "sophisticated technical controls and safety mitigations intended to prevent prohibited uses"; it "detects and blocks attempts to nudify images and to create sexualized content, removes resulting content where it is generated, and terminates the accounts of users who make such attempts." JA187-88; R. Doc. 40, ¶¶ 13-14. It reports violations to law enforcement and to the National Center for Missing & Exploited Children ("NCMEC"), and it has sued users who circumvented its controls. *Id.* ¶¶ 15-16; *X.AI LLC v. Harwood*, No. 7:26-cv-00078 (N.D. Tex. filed July 14, 2026). In 2026 alone, SpaceXAI suspended more than 50,000 accounts and made more than 70,000 reports to NCMEC, resulting in at least 244 arrests.[2] JA12-13; R. Doc. 1, ¶ 26. Those policies and safeguards predate section 325E.91 and continue to be improved as technology advances. *See id.* ¶ 26 & nn.13-15.

[2] Those figures include reports based on thousands of photographs and videos uploaded to Grok that involved no image alteration at all. JA177; R. Doc. 39, at 20 n.8.

### B. Minnesota Enacts Section 325E.91

The Legislature enacted section 325E.91 to address a specific issue. At committee hearings in 2026, legislators heard (i) from three women whose likenesses had been run through programs (none of which were Grok Imagine) to create realistic pornographic images; (ii) from the Rape, Abuse & Incest National Network about the proliferation of such programs; and (iii) about AI-generated child sexual abuse material circulating in schools and online. Add. 5-6; JA293-94; R. Doc. 54, at 3-4; *see generally* Hearing on H.F. 1606 Before the H. Comm. on Com. Fin. & Pol'y, 94th Leg. (Minn. Feb. 19, 2026). Every one of those harms involved the nonconsensual creation and dissemination of realistic, sexually explicit images of identifiable victims. The State described the statute as targeting this same nonconsensual conduct in the proceedings below. JA112-19; R. Doc. 38, at 2-9.

Section 325E.91 provides that a person who "owns or controls a website, application, software, program, or other service must not" "allow a user to access, download, or use" that service "to nudify an image or video," or "nudify an image or video on behalf of a user." Minn. Stat. § 325E.91, subd. 2(a). Critically, the statute defines "nudify" as altering



Appellate Case: 26-2806 Page: 25 Date Filed: 10/30/2026 Entry ID: 5700682

or generating an image "to depict an intimate part not depicted in an original unaltered image or video of an identifiable individual," where the result is "so realistic that a reasonable person would believe that the intimate part belongs to the identifiable individual." *Id.*, subd. 1(d).

"Intimate part" is not defined in the statute itself. *Id.*, subd. 1(c). Rather than adopt the definition in Minnesota's recently enacted deepfake statute—"the genitals, pubic area, anus, or partially or fully exposed nipple," *id.* § 617.262, subd. 1(f)—the Legislature borrowed the definition from Minnesota's criminal sexual-contact law, under which "intimate parts" "include[] the primary genital area, groin, inner thigh, buttocks, or breast of a human being." *Id.* § 609.341, subd. 5. When imported into section 325E.91, that definition means that images depicting a man's bare chest or a runner's inner thigh—images no one would consider "nude"—nevertheless are considered "nudified."

That choice was deliberate. As first introduced, the bill defined "intimate part" by cross-reference to Minnesota's civil deepfake statute, Minn. Stat. § 604.32, subd. 1(d). S.F. 1119, 94th Leg., as introduced, subd. 1(b) (Minn. Feb. 5, 2025). But at the Senate Judiciary Committee's February 19, 2025 hearing, the committee struck that reference and

substituted the criminal sexual-contact definition—broadening the covered anatomy and converting an exhaustive list ("means") into an open-ended one ("includes"). Amendment SCS1119A-3 (S. Comm. on Judiciary & Pub. Safety, Feb. 19, 2025) (adopted by voice vote); Minutes, S. Comm. on Judiciary & Pub. Safety (Minn. Feb. 19, 2025); *compare* S.F. 1119, as introduced, subd. 1(b), *with* S.F. 1119, 1st Eng., subd. 1(b) (Minn. Apr. 1, 2025).

Beyond its broad definitions, what section 325E.91 omits is also significant. The word "consent" appears nowhere in the statute; an image an adult creates of herself, or of a consenting partner, thus creates liability. The statute contains no dissemination element, meaning an image generated once, seen by no one, and immediately deleted exposes providers to liability. It contains no scienter requirement, with no defense or safe harbor for a provider whose terms forbid prohibited images and whose technical controls are designed to block them—even if those controls function to near perfection. JA53-54; R. Doc. 13, at 6-7. And it contains no exception for images of artistic, political, satirical, scientific, educational, medical, or religious value. Its only exemption turns on the "technical skill" a service requires of its user, not on the value or purpose



Appellate Case: 26-2806 Page: 27 Date Filed: 10/30/2026 Entry ID: 5700682

of the image—an exemption designed to target AI platforms specifically. Minn. Stat. § 325E.91, subds. 1(e), 3.

The penalties are severe. The Attorney General may seek civil penalties of up to "$500,000 for each unlawful access, download, or use"—i.e., for each image created—together with injunctive relief, Minn. Stat. § 325E.91, subds. (4), 5(a), and the statute separately creates a private right of action for treble damages, punitive damages, injunctive relief, and attorney's fees, *id.*, subd. 4.

The Governor signed the law on May 7, 2026, with an effective date of August 1, 2026. Add. 7; JA295; R. Doc. 54, at 5.

### C. Procedural History

SpaceXAI filed this action on July 27, 2026, and moved for a temporary restraining order ("TRO") and preliminary injunction on July 29—just two-and-a-half months after the statute was enacted and before it took effect. JA1; R. Doc. 1; R. Doc. 11.

On July 31, 2026, the district court denied the TRO and ordered expedited briefing on SpaceXAI's preliminary injunction motion. Add. 1; JA109; R. Doc. 21. Without addressing the merits, the court reasoned that "delay in bringing the action and the motion suggests that harm is

not immediate." *Id.* at 1. The next day, to avoid strict-liability exposure when the statute took effect, SpaceXAI deployed geographically targeted controls that restricted Grok Imagine's image-editing features for every Minnesota user. JA188-89; R. Doc. 40, ¶¶ 18-19. Designing, deploying, and maintaining a bespoke Minnesota version of Grok Imagine required a significant amount of engineering resources. JA188-90; R. Doc. 40, ¶¶ 19-24.

On September 4, 2026, the district court denied the preliminary injunction. Add. 3; JA291; R. Doc. 54. The court, once again, did not address the merits of SpaceXAI's First Amendment claim. It acknowledged that "[t]he parties sharply contest the strength of xAI's First Amendment claim" and that "[t]he constitutional issues raised by the parties are complex," but declared that those issues would be decided later, on the State's motion to dismiss. Add. 15; JA303; R. Doc. 54, at 13. The court instead rested its denial on two grounds.

First, it doubled down on its conclusion that SpaceXAI had "unreasonably delayed" by moving "[n]early three months" after enactment and "only three days before the law was set to take effect," reasoning that "a sophisticated and well-resourced litigant" that "genuinely feared



Appellate Case: 26-2806 Page: 29 Date Filed: 10/30/2026 Entry ID: 5700682

irreparable harm" would have moved faster, and that SpaceXAI had "failed to otherwise demonstrate a threat of irreparable harm." Add. 10-13; JA298-301; R. Doc. 54, at 8-11. And although the court recognized Minnesota's oral argument concession that "any associated cost will not be compensable by the State if the law is invalidated," it dismissed SpaceXAI's evidence of compliance costs as "vague and conclusory." Add. 12; JA300; R. Doc. 54, at 10.

Second, even though it conducted no analysis of the law's First Amendment deficiencies, the court nevertheless concluded that the balance of harms and public interest "tip[] steeply in favor of the State," crediting the State's interest in enforcing a duly enacted statute. Add. 14-15; JA302-03; R. Doc. 54, at 12-13.

SpaceXAI filed a notice of appeal the same day, R. Doc. 55, and moved in the district court for an injunction pending appeal, R. Doc. 59. The district court denied that motion on September 9, reiterating its earlier conclusions. JA334; R. Doc. 66. SpaceXAI moved in this Court for an injunction pending appeal on September 11. On October 2, 2026, this Court granted the motion and enjoined enforcement of section 325E.91



Appellate Case: 26-2806 Page: 30 Date Filed: 10/30/2026 Entry ID: 5700682

against SpaceXAI pending appeal. Order, No. 26-2806 (8th Cir. Oct. 2, 2026).

## SUMMARY OF ARGUMENT

**I.A.** SpaceXAI is likely to succeed on the merits. The images and videos users create with Grok Imagine are protected expression. The act of creating them is protected too, and a state cannot evade the First Amendment by targeting the tools for creating speech. Section 325E.91 is content based on its face: whether a provider is liable turns entirely on what a finished image depicts. A user may edit a photograph to change a hairstyle without consequence, but the same image edited to reveal an inner thigh or a bare chest exposes the provider to a $500,000 penalty. That is the most obvious form of content discrimination.

**I.B.** Section 325E.91 cannot survive strict scrutiny—or any level of heightened scrutiny. The State bears the burden of proving that the statute is not overinclusive and is the least restrictive means of serving its interest. It cannot. The statute is overinclusive in at least five ways: its definition reaches images containing no nudity as that term is ordinarily understood; it reaches images created with the depicted person's consent; it reaches images never disseminated; it does not exempt core forms of

protected speech; and it imposes strict liability with no safe harbor, even for providers whose terms and controls forbid the very images the statute targets.

The statute also violates the First Amendment because it is not the least restrictive means: Minnesota's own deepfake statute and the federal TAKE IT DOWN Act already reach the dissemination of explicit imagery while narrowly defining intimate parts, requiring scienter and lack of consent, and exempting matters of public concern and other protected uses. The Minnesota Attorney General already knows that narrow tailoring requires these safeguards; he told the Minnesota Supreme Court exactly that when he successfully defended Minnesota's revenge-porn statute in *Casillas*, 952 N.W.2d at 643. The statute thus fails strict scrutiny.

**I.C.** Next, the statute is facially overbroad, because its unconstitutional applications—prohibiting non-nude images, images made with consent, political satire, etc.—dwarf any legitimate ones.

**I.D.** SpaceXAI has prudential standing to assert these claims. It has its own First Amendment interest in designing and operating a speech-creation tool, an "important stage of the speech process," *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021), and it may assert

the rights of its users under the relaxed third-party standing rules that govern First Amendment cases.

**II.** The district court's rulings on the remaining injunctive factors cannot stand. Because it ignored the First Amendment entirely, the court never confronted the constitutional injury that drives the remaining factors, and every one of its other rulings rested on the unexamined assumption that the statute is valid. And because the merits turn on legal questions and undisputed facts, this Court should resolve them itself rather than remand.

**II.A.** The loss of First Amendment freedoms "for even minimal periods of time" is irreparable injury under *Elrod*, 427 U.S. at 373, a rule the Supreme Court reaffirmed recently, and SpaceXAI's users suffered exactly that loss every day the statute was in force. The court's delay holding started the clock in the wrong place. A statute harms no one until it takes effect, and a motion to enjoin a statute before it may legally be enforced is timely by definition; no court has held otherwise. Even measured from enactment, SpaceXAI moved faster than plaintiffs who are routinely granted relief—and far faster than the plaintiffs in the cases the court cited, each of whom waited while already suffering harm.

Additionally, SpaceXAI's unrecoverable compliance costs—which the State conceded cannot be recovered—are independently irreparable.

**II.B.** The balance of equities and public interest also favor relief because a state has no legitimate interest in enforcing an unconstitutional law and the presumption the court invoked applies only to valid statutes.

## STANDARD OF REVIEW

This Court reviews the denial of a preliminary injunction for abuse of discretion, but "the legal merits of the claim—including the likelihood of success—are subject to de novo review." *Minn. Voters All. v. Ellison*, 188 F.4th 1067, 1076 (8th Cir. 2026). A district court abuses its discretion when it "relies on clearly erroneous factual findings or an error of law," or when "a relevant factor that should have been given significant weight is not considered." *Dixon v. City of St. Louis*, 950 F.3d 1052, 1055 (8th Cir. 2020) (citation modified). And although the district court has "a range of choice" in weighing the factors, its decision is not insulated if it is "influenced by any mistake of law." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (citation modified).



Appellate Case: 26-2806 Page: 34 Date Filed: 10/30/2026 Entry ID: 5700682

## ARGUMENT

A preliminary injunction turns on four factors: the movant's likelihood of success on the merits, the threat of irreparable harm, the balance of equities, and the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). When the constitutionality of a state statute is challenged, the movant must show that it is likely to prevail on the merits. *Rounds*, 530 F.3d at 731-32. And in a First Amendment case, that showing is usually decisive: "[w]hen a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Swanson*, 692 F.3d at 870 (citation omitted); *see also Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019); *Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1000, 1004 (8th Cir. 2012). The district court skipped that threshold inquiry altogether, and its rulings on the remaining factors—each premised on the unexamined assumption that the statute is valid—cannot stand. SpaceXAI prevails on every factor.[3] This Court should reverse and

[3] Although the district court did not resolve the likelihood of success, there is no need to remand for further proceedings if this Court disagrees with its conclusions on the remaining preliminary-injunction factors. The



Appellate Case: 26-2806 Page: 35 Date Filed: 10/30/2026 Entry ID: 5700682

remand with instructions to enjoin section 325E.91, keeping its injunction pending appeal in full effect until the district court complies.

## I. SpaceXAI Is Likely to Succeed on the Merits Because Minn. Stat. § 325E.91 Violates the First Amendment.

### A. Section 325E.91 Imposes a Content-Based Restriction on Protected Speech and Is Thus Subject to Strict Scrutiny.

The images and videos users create with Grok Imagine are protected expression. "All manner of speech—from pictures, films, paintings, drawings, and engravings, to oral utterance and the printed word—qualify for the First Amendment's protections." *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023) (citation modified). Like other expressive media, those images and videos "communicate ideas—and even social messages," and "[t]hat suffices to confer First Amendment protection." *Brown*

---

First Amendment claim turns on questions of law—the statute's text and undisputed application to Grok Imagine, *see Munaf v. Geren*, 553 U.S. 674, 691 (2008), and "this court owes no special deference to the district court" when "purely legal questions are presented." *Lankford v. Sherman*, 451 F.3d 496, 504 (8th Cir. 2006); *see also id.* at 507 (addressing argument going to likelihood of success that "the district court did not discuss" in its order denying a preliminary injunction); *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488-89 (2d Cir. 2013) (reversing denial of preliminary injunction and ordering entry of injunction in First Amendment case where the district court "conducted no analysis of [the plaintiff's] likelihood of success").

*v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011). Protection does not depend on a work's merit, its medium, or whether it carries any "narrow, succinctly articulable message." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). And the use of artificial (or super) intelligence to create speech changes nothing, because "the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary when a new and different medium for communication appears." *Brown*, 564 U.S. at 790 (citation modified). The State has never disputed any of this. *See* JA160; R. Doc. 39, at 3. Nor could it.

The act of creating expression is also protected. "Whether government regulation applies to creating, distributing, or consuming speech makes no difference." *Brown*, 564 U.S. at 792 n.1; *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). A state therefore may not evade the First Amendment by "proceeding upstream and damming the source of speech." *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022) (citation modified). A law banning the "purchase or use of ink" is just as unconstitutional as a law forbidding the publication of books, *Sorrell*, 564 U.S. at 571 (citation modified), and even a tax on the paper and ink a newspaper consumes burdens "rights protected by the First Amendment,"



Appellate Case: 26-2806 Page: 37 Date Filed: 10/30/2026 Entry ID: 5700682

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582 (1983). Grok Imagine is a speech-creation tool, and section 325E.91 restricts users' speech by punishing SpaceXAI for certain images its users create with that tool. Minn. Stat. § 325E.91, subd. 2(a).

Moreover, section 325E.91 is content based on its face. A law is content based when it "draws distinctions based on the message a speaker conveys," or when liability can be determined only by "examin[ing] the content of the message that is conveyed." *Reed,* 576 U.S. at 163; *McCullen v. Coakley*, 573 U.S. 464, 479 (2014). In *Reed*, for example, the Court held that a town's sign code was content based because the treatment of any given sign turned on what it said: a sign directing passersby to a church service could be no larger than six square feet and could stand only from twelve hours before the service until one hour after, while a sign conveying an ideological message could be up to twenty square feet and remain up indefinitely. 576 U.S. at 159-61. The restrictions that applied to any given sign thus "depend[ed] entirely on the communicative content of the sign." *Id.* at 164.

So too here. Section 325E.91 punishes AI platforms for the specific images they allow users to create. Whether a provider is liable turns



Appellate Case: 26-2806 Page: 38 Date Filed: 10/30/2026 Entry ID: 5700682

entirely on what a finished image depicts: a user may edit a photograph to change its background or alter a hairstyle without consequence, but the same tool used to reveal an inner thigh or a bare chest exposes the provider to a $500,000 penalty. Minn. Stat. § 325E.91, subds. 1(d), 2(a). In short, the statute can be enforced only by reference to what the created images depict. It thus "singles out specific subject matter for differential treatment," the most "obvious" form of content discrimination. *Reed*, 576 U.S. at 163, 169; *see also Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 619 (2020) (plurality opinion) (law is content based when it "focuses on whether the caller is *speaking* about a particular topic"); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) (holding that a notice requirement was content based because it "alter[ed] the content of [the regulated parties'] speech").

### B. The State Cannot Carry Its Burden Under Any Level of Scrutiny.

Because section 325E.91 is a content-based restriction on protected speech, it is subject to strict scrutiny, and the State cannot carry its heavy burden under that standard. Nor would the statute fare any better under intermediate scrutiny, because it burdens far more speech than



Appellate Case: 26-2806 Page: 39 Date Filed: 10/30/2026 Entry ID: 5700682

necessary to serve the State's interest and forecloses an entire medium of expression.

### 1. Section 325E.91 Fails Strict Scrutiny.

Content-based restrictions are "presumptively unconstitutional" and survive only if they are narrowly tailored to a compelling interest and are the "least restrictive means" of advancing it. *Reed*, 576 U.S. at 163; *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 813, 824 (2000). Strict scrutiny is "the most demanding test known to constitutional law," "fatal in fact absent truly extraordinary circumstances." *Free Speech Coal. v. Paxton*, 606 U.S. 461, 484-85 (2025). The burden rests with the State at every step, and "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Brown*, 564 U.S. at 799 (quoting *Playboy*, 529 U.S. at 818). While SpaceXAI does not dispute Minnesota's interest in curbing the nonconsensual dissemination of artificially generated explicit images—an interest SpaceXAI enforces through its own moderation and terms of service—the State cannot carry its heavy burden of proving that section 325E.91 is not overinclusive or that it is the least restrictive means of serving that interest. *McCullen*, 573 U.S. at 478, 495.

### a. The statute is overinclusive.

A statute is overinclusive when it "sweep[s] too broadly," burdening more protected speech than the State's interest requires. *Republican Party of Minn. v. White*, 416 F.3d 738, 751 (8th Cir. 2005) (en banc). Section 325E.91 is wildly overinclusive, omitting every element that would confine it to the asserted harm. Its definition of "intimate parts" reaches far beyond nudity, it does not require consent or dissemination, it lacks a safe harbor for providers that police misuse, and it omits any exemption for images of artistic, political, medical, scientific, religious, or educational value. Each of these failures is independently fatal.

**1. Definition.** The statute imposes liability for a wide range of images containing no nudity as that term is ordinarily understood. Because it borrows the criminal sexual-contact definition of "intimate parts," Minn. Stat. § 609.341, subd. 5, the statute covers benign images of people in shorts (inner thigh), men without shirts (breast), and competitive swimmers (buttocks and breast)—images that would not be considered "nude" under any common-sense understanding. That broad definition was no accident: the bill as introduced used the civil deepfake statute's appropriately specific definition of intimate parts—"genitals, pubic area,

partially or fully exposed nipple, or anus" (Minn. Stat. § 604.32, subd. 1(d))—but the Legislature struck it in favor of the broader criminal sexual-contact definition. *See* Amendment SCS1119A-3 (S. Comm. on Judiciary & Pub. Safety, Feb. 19, 2025); *compare* S.F. 1119, 94th Leg., as introduced, subd. 1(b) (Minn. Feb. 5, 2025), *with* S.F. 1119, 1st Eng., subd. 1(b) (Minn. Apr. 1, 2025).

As a result of that drafting choice, a user who edits a vacation photograph so that his adult friend appears in swim trunks rather than a wetsuit has "nudified" the image under section 325E.91, even though such an image does not depict nudity and is nowhere near obscene. The statute's definition of "intimate parts" thus unambiguously sweeps in *protected* expression, which the State has no legitimate interest in penalizing, in violation of the First Amendment.

**2. Consent.** The statute reaches images created with consent, including images the user creates of himself. Creating a revealing image of oneself, or of one's partner with that person's consent, is not the same as creating an explicit image of a stranger, and the State's position that nude images are per se unlawful regardless of the circumstances is long foreclosed by Supreme Court precedent. *Osborne v. Ohio*, 495 U.S. 103,

112 (1990) (reaffirming that "depictions of nudity, without more, constitute protected expression"); *Jenkins v. Georgia*, 418 U.S. 153, 161 (1974) (holding that "nudity alone is not enough to make material legally obscene"). The Supreme Court's decision in *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975), is instructive. There, a city ordinance declared it a public nuisance for a drive-in theater to exhibit any film in which "bare buttocks," "bare pubic areas," or female "bare breasts" were shown if the screen was visible from a public street or public place. *Id.* at 206-07. The city defended the ordinance as a means of protecting minors, but the Court held that it swept far too broadly. Rather than targeting "sexually explicit nudity," the ordinance "sweepingly forb[ade] display of all films containing any uncovered buttocks or breasts, irrespective of context or pervasiveness," and so would "bar a film containing a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous." *Id.* at 213. As the Court explained, "all nudity cannot be deemed obscene, even as to minors." *Id.* Section 325E.91 likewise prohibits covered images regardless of context.

Beyond nudity, even sexual expression that is not obscene is protected by the First Amendment, *Reno v. ACLU*, 521 U.S. 844, 874 (1997);



Appellate Case: 26-2806 Page: 43 Date Filed: 10/30/2026 Entry ID: 5700682

*Free Speech Coal.*, 535 U.S. at 245-46, and an adult's decision to create and share such an image or video of herself has long been protected, *Stanley v. Georgia*, 394 U.S. 557, 565 (1969). *See also State v. Washington-Davis*, 881 N.W.2d 531, 538-39 (Minn. 2016) (recognizing that the production of sexually explicit images with "consenting adult actors" is "protected under the First Amendment"). By treating as sanctionable images made with consent—both those containing nudity and the more benign images described above—the statute restricts far more speech than its object requires. *See* U.S. Statement of Interest, JA204; R. Doc. 42, at 11.

The State cannot cure the problem by noting that consensual and nonconsensual images can look alike, because the First Amendment does not allow the State to ban protected speech on that ground. In *Free Speech Coalition*, the Government defended a ban on computer-generated sexual images of fictional children with exactly that argument, claiming that such images are indistinguishable from real child pornography. 535 U.S. at 254-55. The Supreme Court disagreed: "[p]rotected speech does not become unprotected merely because it resembles" speech the State may prohibit. *Id.* at 255. The Minnesota Supreme Court also recognized as much in *Casillas*, reasoning that consensually created

images are protected speech but upholding Minnesota's revenge-porn statute because its consent element kept "commercial advertisements, certain adult films, artistic works, and other creative expression" outside the statute's reach. *Casillas*, 952 N.W.2d at 641-44. Section 325E.91 ignores this controlling precedent to sweep in broad swaths of protected, consensually created expression. *See also Hearing on S.F. 1119 Before the S. Comm. on Judiciary & Pub. Safety*, 94th Leg. (Minn. Feb. 19, 2025) (audio recording at 0:40:14:10) (statement of Sen. Maye Quade that application to consensual images "is intentional").

**3. Dissemination.** The statute reaches images that are never disseminated. A picture generated once, seen by no one, and immediately deleted exposes SpaceXAI to the same $500,000 penalty as one broadcast to the world. Every harm the Legislature invoked—and every harm the district court recounted—involved distribution of explicit images. JA293-94; R. Doc. 54, at 3-4. Those harms cannot justify a law that imposes liability even where there is no distribution. The State "may not prohibit speech because it increases the chance an unlawful act will be committed at some indefinite future time." *Free Speech Coal.*, 535 U.S. at 253 (citation modified); *see also Bartnicki v. Vopper*, 532 U.S. 514, 529-30 (2001)



Appellate Case: 26-2806 Page: 45 Date Filed: 10/30/2026 Entry ID: 5700682

("The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it."). Any suggestion that the harm occurs "at the moment of nudification," regardless of distribution, is in tension with the State's own account of the harm, with the Legislature's decision in the criminal deepfake statute to punish only intentional dissemination, and with the Minnesota Attorney General's arguments in defense of the deepfake statute. Minn. Stat. § 617.262, subd. 2; *cf.* JA140; R. Doc. 38, at 30 & n.27. *See also Casillas*, 952 N.W.2d at 643 (reciting Attorney General's argument and upholding revenge-porn statute that reaches only intentional dissemination).

**4. Exemptions.** The statute does not exempt any category of protected speech, including core political satire and images with artistic, medical, scientific, educational, or religious value. JA54; R. Doc. 13, at 7. Political satire and parody of public officials "occup[y] the highest rung of the hierarchy of First Amendment values," *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (citation modified), and the Supreme Court has long protected caricature that exaggerates a public figure's physical features to make a political point, *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53-55 (1988); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579



Appellate Case: 26-2806 Page: 46 Date Filed: 10/30/2026 Entry ID: 5700682

(1994) (parody is expression that "can provide social benefit"). Section 325E.91 bans it anyway. Take the image below, which the President himself posted to make light of a controversy over repairs to the Reflecting Pool on the National Mall. JA19; R. Doc. 1, ¶ 36.




Because the fabricated "intimate part[s]"—the depicted officials' bare chests—appear real, the image would be actionable if created by a user in Minnesota. Minn. Stat. § 325E.91, subd. 1(d)(2); JA19-21; R. Doc. 1, ¶¶ 36-38. The same is true of other satirical images such as those SpaceXAI highlighted in its Complaint: an image of two governors in a sumo match, and an image of the President exposing inner thigh while dining with the President of China. *Id.* ¶¶ 37-38. That is core political speech, and a statute that makes it unlawful to provide a tool that allows

a citizen to create that speech is not "narrowly tailored" to any compelling interest. *See United States v. Stevens*, 559 U.S. 460, 477-80 (2010) (holding that an exception for depictions with "serious" value did not save a statute that otherwise reached protected speech); *Novak v. City of Parma*, 932 F.3d 421, 427-28 (6th Cir. 2019) (invoking the "long history of protecting parody and satire," including satirical cartoons "from the early cartoon portraying George Washington as an ass down to the present day"); *Kohls v. Bonta*, No. 2:24-cv-02527, 2024 WL 4374134, at *4-*5 (E.D. Cal. Oct. 2, 2024) (enjoining California deepfake statute because "YouTube videos, Facebook posts, and X tweets are the newspaper advertisements and political cartoons of today, and the First Amendment protects an individual's right to speak regardless of the new medium these critiques may take"); *Babylon Bee, LLC v. Lopez*, 818 F. Supp. 3d 1181, 1196-97 (D. Haw. 2026) (striking down AI-deepfake statute that "does not provide any explicit or implicit exception for satire or parody").[4]

[4] The statute's "realism" requirement does not exempt parody or satire, because it turns on the realism of the fabricated anatomy, not the authenticity of the scene. A shirtless President standing atop the White House would be actionable if his chest looked real, however obviously fake the setting. Minn. Stat. § 325E.91, subd. 1(d)(2). The State cannot rewrite the statute that it chose to pass to claim otherwise.

**5. Strict Liability.** The statute imposes strict liability and draconian fines on AI platforms despite the absence of any mens rea requirement. That omission violates binding Supreme Court precedent. Because of the chilling effect of any speech-based punishment, the government must include a "subjective mental-state requirement" in any statute targeting even the least protected categories of expression: obscenity, incitement, and true threats. *Counterman v. Colorado*, 600 U.S. 66, 75-76 (2023); *see also New York v. Ferber*, 458 U.S. 747, 765 (1982) (holding that even child-pornography laws must include "some element of scienter"); *Smith v. California*, 361 U.S. 147, 153 (1959) (reasoning that strict liability for a bookseller would make him "tend to restrict the books he sells to those he has inspected," imposing "a restriction upon the distribution of constitutionally protected as well as obscene literature"). This Court likewise has cautioned that "any statute that chills the exercise of First Amendment rights must contain a knowledge element." *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992). Yet section 325E.91 makes a provider strictly liable for a user's creation of a prohibited image and imposes a $500,000-per-image fine. There is no safe harbor even for providers—like SpaceXAI—whose terms of service forbid

such images and whose content filters are engineered to block them. Instead, the statute punishes the provider for the user's evasion: however diligently a platform polices misuse, it is treated no differently from one that does nothing.[5]

Minnesota's own revenge-porn statute illustrates how a mens rea requirement works. It provides that an interactive computer service is not liable "solely as a result of content or information provided by another person," Minn. Stat. § 617.261, subd. 6—so that the statute reaches only those who themselves knowingly disseminate nonconsensual images. *See Casillas*, 952 N.W.2d at 643-44. Section 325E.91 contains no comparable limit. And although the Legislature had before it a limited notice-and-

---

[5] The Legislature could have limited liability to providers that knowingly permit misuse—for example, providers that know (or should know) their service is being used to create prohibited images and do nothing about it. Such a requirement would limit liability to the services the State itself described: purpose-built "nudify" apps and websites that exist to digitally undress people, that often do not even ask whether the person depicted has consented, and that advertise themselves "with slogans such as 'Undress Any Girl You Want.'" JA115; JA117; R. Doc. 38, at 5, 7; *see also* Appellee's Resp. to Emergency Mot. for Inj. Pending Appeal (8th Cir. Sept. 21, 2026) ("IPA Resp.") (citing "sixteen 'nudify' websites"); JA248; R. Doc. 45, at 42. A statute aimed at platforms designed to produce sexual imagery would have addressed the harm the Legislature identified without sweeping in general-purpose AI providers like SpaceXAI that police such conduct.

cure provision, *see* Amendment H1606A3 (H. Comm. on Judiciary Fin. & Civ. Law, Mar. 26, 2026) (proposed pre-suit notice-and-cure provision for private civil actions), that provision was not adopted.

Given the absence of *any* of these safeguards, section 325E.91 is wildly overinclusive, punishing vast swaths of protected speech.

#### b. The statute is not the least restrictive means.

Section 325E.91 is also not the least restrictive means of advancing the State's interest. "If a less restrictive alternative would serve the [g]overnment's purpose, the legislature must use that alternative." *Playboy*, 529 U.S. at 813. Again, the State bears the burden "to prove that the alternative will be ineffective to achieve its goals," and "the risk of nonpersuasion … must rest with the [g]overnment, not with the citizen." *Id.* at 816, 818; *see also Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004); *McCullen*, 573 U.S. at 495 (requiring the State to show that "alternative measures that burden substantially less speech would fail to achieve" its interests). Minnesota cannot carry that heavy burden because the less restrictive alternatives are not hypothetical. They already *are* law.

Minnesota's deepfake statute defines "intimate parts" in a commonsense manner as "the genitals, pubic area, anus, or partially or fully



Appellate Case: 26-2806 Page: 51 Date Filed: 10/30/2026 Entry ID: 5700682

exposed nipple of an individual." Minn. Stat. § 617.262, subd. 1(f). As the United States explained in its Statement of Interest in the court below, Congress drew the line even more carefully in the TAKE IT DOWN Act, which punishes sexually explicit deepfakes and defines an "intimate visual depiction" to reach "the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual." 15 U.S.C. § 6851(a)(5)(A)(i); 47 U.S.C. § 223(h)(1)(E); *see also* U.S. Statement of Interest, JA203; R. Doc. 42, at 10 (explaining that "whereas [section 325E.91] would apply to an artificially generated image of a shirtless man in a swimming pool, federal law does not"). Those definitions would serve the Legislature's stated goals here without reaching a runner in shorts or a swimmer in a racing suit—and the federal definition would reasonably exclude an image depicting a bare male chest.

Both statutes contain the very safeguards section 325E.91 omits. Both condition liability on the depicted individual's lack of consent, and on knowing dissemination with knowledge (actual or constructive) that the depicted individual did not consent. Minn. Stat. § 617.262, subd. 2; 47 U.S.C. § 223(h)(3)(A). Both statutes also exempt speech of evident value—medical, artistic, scientific, and educational material, and



Appellate Case: 26-2806 Page: 52 Date Filed: 10/30/2026 Entry ID: 5700682

matters of public interest or concern. Minn. Stat. § 617.262, subd. 6(3)-(6); 47 U.S.C. § 223(h)(3)(A)(iii), (C). *See* JA200; R. Doc. 42, at 7 (United States Statement of Interest describing elements required for prosecution under the TAKE IT DOWN Act). Minnesota's election-deepfake law similarly exempts evident parody and satire—a feature the district court found relevant in upholding it against a First Amendment challenge. *Kohls v. Ellison*, No. 24-cv-3754, 2025 WL 66765, at *4 (D. Minn. Jan. 10, 2025).

The State cannot claim that these safeguards are irrelevant to the First Amendment because it relied on exactly these features to defeat the challenge to its revenge-porn statute in *Casillas*. There, the State told the Minnesota Supreme Court that the very features section 325E.91 lacks were what made section 617.261 narrowly tailored:

- *Definition*: the statute "provides several definitions to ensure that its terms are not interpreted more broadly than the Legislature intended." Br. of Appellant at 47, *State v. Casillas*, No. A19-0576 (Minn. Apr. 15, 2020) ("Casillas Br.").

- *Consent*: the statute "allows for the exercise of free speech" because "sexual images may be disseminated if the person depicted consents to the dissemination"; "[t]he harm is the dissemination without consent." *Id.* at 28, 47-48.

- *Intentional Dissemination*: the statute reaches only one who "intentionally disseminate[s]," so that "[a]ccidental, mistaken, negligent,

or even reckless dissemination is not criminalized." *Id.* at 11, 13, 46.

- *Exemptions*: "no one can be charged under the statute if the images disseminated have public safety, medical, commercial, artistic, public interest, scientific, educational, or legal value." *Id.* at 22, 25-26.

- *Strict Liability*: the statute's "several scienter requirements" and its immunity for interactive computer services "further narrowed the statute" and ensured enforcement only against "those who are actually intentionally disseminating nonconsensual pornography," not "people or companies 'solely as a result of content or information provided by another person.'" *Id.* at 46-47.

The Minnesota Supreme Court adopted that analysis element by element. 952 N.W.2d at 643-44. The Minnesota Attorney General himself has thus already told Minnesota's highest court which features make a statute in this field narrowly tailored—precise definitions, a consent element, intentional dissemination, categorical exemptions, and layered scienter with no liability for platforms based on user content. Section 325E.91 has none of them. The Attorney General instead now defends a statute that fails every test he told the Minnesota Supreme Court to apply. And whereas he argued in *Casillas* that "existing statutes were insufficient" to address the targeted harm, Casillas Br. 48-49, the State cannot make that showing here because less restrictive statutes already



Appellate Case: 26-2806 Page: 54 Date Filed: 10/30/2026 Entry ID: 5700682

exist to address the nonconsensual dissemination of explicit, edited images.

### 2. Section 325E.91 Fails Intermediate Scrutiny.

Even if section 325E.91 were content neutral—which it is not—it would fail intermediate scrutiny. A content-neutral restriction on speech must be "narrowly tailored to serve a significant governmental interest" and must "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citation modified). Although intermediate scrutiny is somewhat less demanding, the government still "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals," *id.* at 799, and a law fails if it "burden[s] substantially more speech than is necessary to further the government's legitimate interests," *id.*; *see also McCullen*, 573 U.S. at 486. The State, not the challenger, bears the burden of making that showing. *Id.* at 495. Section 325E.91 fails that test.

The statute burdens substantially more speech than necessary. Every one of the tailoring failures described above is a burden on speech that does nothing to advance the State's interest. *See supra* Part I.B.1.a.



Appellate Case: 26-2806 Page: 55 Date Filed: 10/30/2026 Entry ID: 5700682

Those burdens do "not serve to advance" the State's goals, *Ward*, 491 U.S. at 799, but together they comprise the bulk of the statute's reach.

The Supreme Court's decision in *Packingham* is on point. There, North Carolina made it a felony for registered sex offenders to access commercial social-networking websites that permit minors to become members. *Id.* at 101. The Court recognized the State's interest, holding that a legislature "may pass valid laws to protect children and other victims of sexual assault from abuse." *Id.* at 106-07 (citation modified). But even assuming the law was content neutral, the Court struck it down under intermediate scrutiny because, rather than targeting the conduct that actually threatened children, it "enact[ed] a prohibition unprecedented in the scope of First Amendment speech it burden[ed]." *Id.* at 107-08. "Specific laws" aimed at the harmful conduct itself, the Court explained, "must be the State's first resort." *Id.* at 107. So too here: the State has a legitimate interest in protecting victims of digital sexual abuse, but section 325E.91 burdens a vast range of protected expression when narrower alternatives are readily available. *See also NetChoice v. Griffin*, 812 F. Supp. 3d 905, 924 (W.D. Ark. 2025) (enjoining under

intermediate scrutiny a law restricting social-media platform features as insufficiently tailored to the State's interest in protecting minors).

The narrower statutes already on the books show as much. Intermediate scrutiny demands that the government "seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen*, 573 U.S. at 494. Minnesota plainly did not. The deepfake statute and the TAKE IT DOWN Act demonstrate that the State's interest can be served—indeed, is already being served—by laws that condition liability on nonconsent, dissemination, and knowledge, and that exempt matters of public concern. *See supra* Part I.B.1.b. A Legislature that had those tools in front of it, began by cross-referencing one of them, and then discarded every limit they contain without explanation did not "seriously undertake" to use them. Even under intermediate scrutiny the government must "demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen*, 573 U.S. at 495.

The statute also fails to leave "ample alternative channels" for the expression it suppresses. Minnesota users cannot use any AI tool to create a parody of a shirtless politician, a medical illustration, or



Appellate Case: 26-2806 Page: 57 Date Filed: 10/30/2026 Entry ID: 5700682

photographs of themselves at the beach. That the public might create such content with other tools that require significant skill, such as Photoshop, is no answer. The First Amendment protects the choice of medium, and "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Reno*, 521 U.S. at 880 (quoting *Schneider v. Town of Irvington*, 308 U.S. 147, 163 (1939)). The State could not, for example, justify a ban on protected speech on websites by pointing out that the same speech remains available in books. *See id.*; *cf. City of Ladue v. Gilleo*, 512 U.S. 43, 57 (1994) (for "persons of modest means," a cheap and convenient medium "may have no practical substitute"). And it cannot justify a ban on AI-assisted expression by pointing to tools that demand skills most speakers lack.

*　　*　　*

Because the Legislature made no attempt to tailor section 325E.91 to the harm it sought to remedy, the statute is unconstitutional under any level of heightened scrutiny. At minimum, it is unconstitutional as applied to SpaceXAI, which bars use of its platform for abusive purposes and attempts to block those uses yet faces liability whenever a user



Appellate Case: 26-2806 Page: 58 Date Filed: 10/30/2026 Entry ID: 5700682

violates its terms of service and evades its technological controls. Given the absence of a mens rea requirement or good-faith safe harbor, any application of the statute to SpaceXAI violates the First Amendment. JA169; R. Doc. 39, at 12 n.5.

### C. Section 325E.91 Is Facially Overbroad.

Section 325E.91 is also facially overbroad, an independent ground for relief that does not depend on the level of scrutiny. Under the First Amendment, a law is invalid on its face when "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (quoting *Stevens*, 559 U.S. at 473), such that its "impermissible applications … far outnumber any permissible ones," *Stevens*, 559 U.S. at 481. That test is readily satisfied here.

After multiple rounds of briefing in the district court and an emergency injunction pending appeal here, Minnesota has yet to identify any scenario in which section 325E.91 could constitutionally be applied to an AI platform. Even if the statute were aimed only at unprotected speech, the First Amendment would demand a "subjective mental-state requirement" before the State may punish such speech. *Counterman*, 600 U.S.



Appellate Case: 26-2806 Page: 59 Date Filed: 10/30/2026 Entry ID: 5700682

at 75-79. Yet section 325E.91 imposes strict liability—unlike Minnesota's revenge-porn and deepfake statutes, both of which contain mens rea requirements. Minn. Stat. §§ 617.261, subd. 1; 617.262, subd. 2. A statute that is unconstitutional in every application satisfies even the "no set of circumstances" test for facial relief (a more demanding test than for a First Amendment overbreadth challenge). *Ams. for Prosperity Found.*, 594 U.S. at 615. And if obscenity, child sexual abuse material, and revenge porn were the Legislature's concern, it should have—and easily could have—drafted the law to reach only those harms.

On the other side of the ledger, the statute's impermissible applications to protected speech—non-nude images, consensual and self-created images, images never disseminated, political and other expression, etc.—dwarf whatever narrow set of applications the State could permissibly reach. *See supra* Part I.B.1.a. A law professor seeking to illustrate the overbreadth doctrine could find no better example of that constitutional infirmity than section 325E.91.

### D. SpaceXAI May Assert Its Own First Amendment Rights and Those of Its Users.

In its briefing below and in this Court, the State asserted that SpaceXAI lacked prudential standing even to raise a First Amendment

challenge to section 325E.91. JA126-30; R. Doc. 38, at 16-20; Appellee's Resp. to Emergency Mot. for Inj. Pending Appeal (8th Cir. Sept. 21, 2026) at 14-16. But the State cannot dodge the merits. SpaceXAI has its own protected First Amendment interest and also has standing to assert the rights of its users.

### 1. SpaceXAI Has Its Own First Amendment Interest at Stake.

Grok Imagine is a speech-creation tool that provides Minnesotans with the ability to generate expressive content. JA185-86; R. Doc. 40, ¶¶ 6-9. Designing and operating such a tool is an inherently expressive exercise that requires aesthetic and editorial judgment at every step, including about what the tool will and will not create. Those choices are protected. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024) (affording "First Amendment protection" to platforms' "expressive choices" about how to present third-party speech); *id.* at 716 (explaining that entities that "create expressive products … receive the First Amendment's protection"). The development and operation of Grok Imagine is also protected activity because it is "an important stage of the speech process that ends with the dissemination of information." *Ness,* 11 F.4th at 923; *see also Telescope Media Grp. v. Lucero*, 936 F.3d 740, 751-52 (8th Cir. 2019)



Appellate Case: 26-2806 Page: 61 Date Filed: 10/30/2026 Entry ID: 5700682

(holding that the component acts of filmmaking are not mere "conduct" because they "come together to produce finished videos that are 'medi[a] for the communication of ideas'" (citation modified)).[6]

And beyond SpaceXAI's own aesthetic and editorial judgments, Grok Imagine is also protected as a tool—and a powerful one at that—for creating speech. Liability turns entirely on whether it is used to create speech the State seeks to ban. Minn. Stat. § 325E.91, subd. 2(a)(1)-(2). But a state may not burden the tools of expression to reach the targeted expression. *See Sorrell*, 564 U.S. at 571; *Minneapolis Star*, 460 U.S. at 582-83; *Buckley v. Valeo*, 424 U.S. 1, 19-21 (1976) (per curiam).

Any other rule would frustrate the fundamental communicative purpose of the First Amendment. "Control any cog in the machine, and you can halt the whole apparatus. License printers, and it matters little

---

[6] *See also ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595-97 (7th Cir. 2012) (holding that "[t]he act of *making* an audio or audiovisual recording is necessarily included within the First Amendment's guarantee" as a "corollary of the right to disseminate the resulting recording"); *Fields v. City of Philadelphia*, 862 F.3d 353, 358-59 (3d Cir. 2017) ("The First Amendment protects actual photos, videos, and recordings, and for this protection to have meaning the Amendment must also protect the act of creating that material." (citation modified)); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (recognizing that the First Amendment protects the gathering and creation of information, not only its dissemination).



Appellate Case: 26-2806 Page: 62 Date Filed: 10/30/2026 Entry ID: 5700682

whether authors are still free to write. Restrict the sale of books, and it matters little who prints them." *McConnell v. FEC*, 540 U.S. 93, 251 (2003) (Scalia, J., concurring in part and dissenting in part). Because SpaceXAI's creation and operation of Grok Imagine is an important step in the process of creating and disseminating speech, SpaceXAI may challenge the State's restriction of it.

### 2. SpaceXAI May Assert Its Users' First Amendment Rights.

SpaceXAI also may assert the First Amendment rights of its users. In the First Amendment context, the rules of third-party standing are relaxed: a litigant may "challenge a statute not because [its] own rights of free expression are violated, but because … the statute's very existence may cause others not before the court to refrain from constitutionally protected speech." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988) (citation modified); *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) (explaining that unique concerns in the First Amendment context "justify a lessening of prudential limitations on standing"). Under that principle, those who distribute protected speech, or provide the means of creating it, may assert the rights of their audiences and users. For example, booksellers may assert the rights of book

buyers, *Am. Booksellers*, 484 U.S. at 388 & n.3, 392-93; film distributors may assert the rights of viewers, *Free Speech Coal.*, 535 U.S. at 243, 252-53; and "it is plain that an online platform is not barred by prudential standing when it asserts its users' First Amendment rights," *NetChoice, LLC v. Fitch*, 134 F.4th 799, 807 (5th Cir. 2025); *see also NetChoice, LLC v. Griffin*, 831 F. Supp. 3d 816, 828 (W.D. Ark. 2026) (holding that "NetChoice has third-party standing to assert the First Amendment rights of its members' users").

SpaceXAI falls squarely within that rule. Grok Imagine's users indisputably have First Amendment interests at stake, *see* JA122; R. Doc. 38, at 12; section 325E.91 directly regulates SpaceXAI; and the "threatened imposition of governmental sanctions" on the company forced it to restrict Grok Imagine's image-editing features for every one of those users. JA188-89; R. Doc. 40, ¶ 19. If the statute is unconstitutional, its enforcement against SpaceXAI "would result indirectly in the violation of third parties' rights," and SpaceXAI may resist that enforcement "by acting as [an] advocate[] of the rights of third parties who seek access" to Grok Imagine. *Craig v. Boren*, 429 U.S. 190, 195 (1976) (citation modified).

SpaceXAI also satisfies the general requirements for third-party standing that apply outside the First Amendment context. A litigant may assert the rights of others when it has suffered an injury in fact, has a "'close' relationship" with the third parties, and the third parties face some "hindrance" to asserting their own rights. *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004); *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991). The Supreme Court has repeatedly found those requirements satisfied when vendors and providers assert the rights of their customers. *Craig*, 429 U.S. at 195; *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682-84 (1977). Each is satisfied here. SpaceXAI's injury—exposure to a $500,000-per-image penalty and the forced restriction of its product—is undisputed. Its provider-customer relationship with its users is close, and their interests align: both seek to preserve users' ability to create lawful expression with Grok Imagine.[7]

And there are "practical barriers" that would hinder the ability of an individual user to bring suit. Because section 325E.91 regulates only

[7] The State's contrary suggestion—that SpaceXAI's enforcement of its terms against abusive users shows that its interests diverge from its users', JA126-27; R. Doc. 38, at 16-17; IPA Resp. 15—gets it backwards. Policing unlawful conduct by some users does not make SpaceXAI an unsuitable advocate for the many users engaged in protected expression.

service providers, users may struggle even to establish Article III standing. *See Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025). The statute operates on them by forcing the platform to remove the tool, leaving no enforcement action to defend and no forum in which to be heard. JA71; R. Doc. 13, at 24. Even without that hurdle, the "small financial stake involved and the economic burdens of litigation," *Powers*, 499 U.S. at 415, along with the need to surrender anonymity to advocate for disfavored speech, would be a further bar to any user's constitutional challenge. SpaceXAI—facing a $500,000-per-image penalty—faces no such barriers, has the requisite "adversarial zeal" to defend its users' First Amendment rights, and is best positioned to do so. *Munson*, 467 U.S. at 956; *see also Powers*, 499 U.S. at 414 (observing that a litigant with "much at stake" will be "a motivated, effective advocate" for third parties' rights).

## II. THE REMAINING FACTORS WEIGH STRONGLY IN FAVOR OF INJUNCTIVE RELIEF.

### A. SpaceXAI and Its Users Face Ongoing, Irreparable Harm.

It is black-letter law that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable



Appellate Case: 26-2806 Page: 66 Date Filed: 10/30/2026 Entry ID: 5700682

injury." *Elrod*, 427 U.S. at 373 (plurality opinion); *see also Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) (ordering preliminary injunction because plaintiffs "will continue to" suffer an unconstitutional burden on their First Amendment rights absent relief); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (reiterating that the loss of First Amendment freedoms "for even minimal periods of time, unquestionably constitutes irreparable injury" (quoting *Elrod*, 427 U.S. at 373)); *Schmitt v. Rebertus*, 148 F.4th 958, 970 (8th Cir. 2025) (same). From August 1, 2026, until this Court enjoined enforcement pending appeal, section 325E.91 forced SpaceXAI to restrict Grok Imagine's image-editing features for every Minnesota user to avoid crippling penalties. JA188-89; R. Doc. 40, ¶ 19. SpaceXAI's users were consequently barred from creating protected expression that may lawfully be created in every other state. Absent reversal, that injunction will dissolve with this appeal, and the deprivation will resume.

Beyond the irreparable harm inflicted by ongoing First Amendment violations, SpaceXAI has incurred, and will again incur (if this Court's injunction is lifted) costs to design, test, deploy, and maintain geographically targeted controls that restrict Grok Imagine's image-editing tool

for Minnesota users. JA188-90; R. Doc. 40, ¶¶ 18-24. As the State conceded below, those costs "will not be compensable by the State if the law is invalidated." Add. 12; JA300; R. Doc. 54, at 10. Unrecoverable economic and operational injuries are irreparable harm. *Ala. Ass'n of Realtors,* 594 U.S. at 765 (per curiam); *see also Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996).

The district court did not deny that SpaceXAI and its users were being deprived of their First Amendment rights, nor did it deny that the loss of those rights, even briefly, is irreparable. Add. 12-13; JA300-01; R. Doc. 54, at 10-11. Instead, the district court erroneously asserted that SpaceXAI could not show irreparable harm because, in its view, SpaceXAI had "unreasonably delayed" in seeking relief. Add. 13; JA301; R. Doc. 54, at 11. But the court started the clock at the wrong time. Delay undercuts a showing of irreparable harm only when a movant sits idle while suffering the injury it later calls irreparable. *Cf. Novus*, 725 F.3d at 894. Section 325E.91 inflicted no injury on anyone until it took effect on August 1, 2026, so the only question is whether SpaceXAI moved promptly once the threat of enforcement became real. It did better than that: it sued and sought preliminary relief *before* the statute could be



Appellate Case: 26-2806 Page: 68 Date Filed: 10/30/2026 Entry ID: 5700682

enforced at all. JA1; R. Doc. 1; R. Doc. 11; *see also* Add. 10; JA298; R. Doc. 54, at 8. A party that moves before a statute may lawfully be enforced has plainly not slept on its rights. On the contrary, "[a] motion seeking to enjoin a statute's enforcement before the statute may legally be enforced is timely—or at least not late—by definition." *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011).[8] The date of enactment, which the district court treated as dispositive, is beside the point; it marks when the law was written, not when it began to harm anyone. The district court cited no decision—from any jurisdiction—denying a preliminary injunction as untimely where the plaintiff sued before the challenged law took effect, and SpaceXAI is aware of none.

Even if enactment were the right starting point (it is not), SpaceXAI's two-and-a-half-month timeline would be unremarkable. Courts routinely grant preliminary relief to plaintiffs who challenge statutes long after enactment, so long as they move before, or reasonably soon after, the law takes effect. *See, e.g.*, *X Corp. v. Bonta*, 116 F.4th 888 (9th

---

[8] *See also Minn. Chamber of Com. v. Choi*, 707 F. Supp. 3d 846, 869 (D. Minn. 2023) (finding no undue delay where plaintiffs sought relief in a pre-enforcement challenge five months after enactment and before the effective date).



Appellate Case: 26-2806 Page: 69 Date Filed: 10/30/2026 Entry ID: 5700682

Cir. 2024) (reversing denial of preliminary injunction where plaintiff sued before effective date and roughly twelve months after enactment); *NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024) (three months after enactment); *Comput. & Commc'ns Indus. Ass'n v. Paxton*, 747 F. Supp. 3d 1011 (W.D. Tex. 2024) (more than thirteen months after enactment); *NetChoice, LLC v. Yost*, 716 F. Supp. 3d 539 (S.D. Ohio 2024) (six months after enactment); *Volokh v. James*, 656 F. Supp. 3d 431 (S.D.N.Y. 2023) (six months after enactment); *NetChoice, LLC v. Griffin*, No. 5:23-cv-05105, 2023 WL 5660155 (W.D. Ark. Aug. 31, 2023) (two-and-a-half months after enactment); *see also Kan. Health Care Ass'n v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1541, 1543-44 (10th Cir. 1994) (affirming injunction where plaintiffs sued eight months after effective date); *Bakken v. U.S. Mil. Acad.*, 833 F. Supp. 3d 460, 517-18 (S.D.N.Y. 2026) (granting First Amendment injunction where plaintiff moved nearly ten months after effective date).

The decisions the district court invoked—none of which involved a motion before the challenged law took effect—do not support its conclusion. On the contrary, they highlight SpaceXAI's diligence. In *Kohls*, the plaintiffs waited sixteen months after the challenged law was enacted

before moving for relief—and one of the plaintiffs was a state legislator who voted for the law she later challenged. *Kohls v. Ellison*, 166 F.4th 728, 732-33 (8th Cir. 2026). The plaintiff in *Hotchkiss* waited sixteen months after receiving the no-trespass notice he sought to enjoin. *Hotchkiss,* 115 F.4th at 893-94. And the plaintiffs in *Benisek v. Lamone* waited roughly six years. 585 U.S. 155, 159 (2018) (per curiam). Even measured from enactment, these delays are all longer (some significantly) than the short time within which SpaceXAI filed its challenge.

The district court's contrary approach would require a company to rush to the courthouse immediately after a bill is signed—before it has fully evaluated the law, weighed its options, or even retained counsel. Diligence has never required plaintiffs to file half-baked cases within days of enactment, and a rule penalizing modest deliberation would only encourage hasty, ill-considered filings.[9]

Nor does it matter that SpaceXAI is "a sophisticated and well-resourced litigant with the means to move quickly when its interests are at

[9] As SpaceXAI's counsel explained at the hearing below, suing a state over newly enacted legislation is a major corporate decision that a company of SpaceXAI's size must weigh carefully—a process involving multiple decision-makers—particularly where, as here, the company is preparing an initial public offering. JA238-39; R. Doc. 45, at 32-33.

stake." Add. 10; JA298; R. Doc. 54, at 8. The courthouse is open to litigants of every means, and the diligence standard does not tighten on assertions that a party could, in theory, have moved faster. *Cf. supra* 54-55 (citing cases granting preliminary relief to large companies and trade associations that sued many months after enactment).

The district court separately misconstrued SpaceXAI's irreparable harm based on its unreimbursable costs to design and maintain Minnesota-specific restrictions on Grok Imagine. Its irreparable-harm determination erroneously rested on a single forty-year-old district court decision addressing *recoupable* monetary loss. Add. 11; JA299; R. Doc. 54, at 9 (citing *Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 562 F. Supp. 279, 283 (E.D. Ark. 1983)). The court also asserted that SpaceXAI provided no evidence of ongoing costs and that its evidence was "vague and conclusory." Add. 12; JA300; R. Doc. 54, at 10. But SpaceXAI's sworn declaration attests that it designed, tested, and deployed geographically targeted controls, that its engineers spent "a substantial amount of their time" doing so, and that the moderation rate for Minnesota image-editing prompts had risen more than ten percent to avoid Minnesota's overbroad prohibitions, with attendant ongoing cost. JA188-90; R. Doc. 40, ¶¶ 19,

22-24. The State submitted nothing to rebut it, and a sworn, unrebutted declaration by a competent witness suffices to prove an essential fact. *Brandt v. Davis*, 191 F.3d 887, 892 (8th Cir. 1999).

At bottom, SpaceXAI faced—until this Court's injunction—the daily "Hobson's choice" of "expos[ing itself] to potentially huge liability" or "suffer[ing] the injury of obeying" an unconstitutional law—which alone constitutes "irreparable injury." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).

### B. The Balance of Equities and the Public Interest Favor an Injunction.

The balance-of-equities and public-interest factors "merge when the [g]overnment is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And here they tilt just as decisively in favor of injunctive relief. "It is always in the public interest to protect constitutional rights," and "the balance of the equities generally favors the constitutionally-protected freedom of expression." *Schmitt*, 148 F.4th at 970 (quoting *Rodgers*, 942 F.3d at 458). Conversely, the State cannot "act unlawfully even in pursuit of desirable ends," and so has no valid interest in enforcing an unconstitutional statute. *Ala. Ass'n of Realtors*, 594 U.S. at 766; *see also Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 807



Appellate Case: 26-2806 Page: 73 Date Filed: 10/30/2026 Entry ID: 5700682

(10th Cir. 2019) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (citation modified)); *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004) ("[T]here can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute.").

Both factors favor SpaceXAI. Section 325E.91 abridged the First Amendment rights of SpaceXAI and its users every day it was in force, and it will do so again if the injunction pending appeal lapses. The harm is not to SpaceXAI alone: the public has an interest in preserving access to a speech-enabling tool that remains available in the other forty-nine states. JA73, JA75-76; R. Doc. 13, at 26, 28-29; *cf. Smith*, 361 U.S. at 153-54.

Minnesota, for its part, has no legitimate interest in enforcing a statute that violates the First Amendment, and restoring the status quo that existed until August 1, 2026, until the statute's constitutional problems can be fully adjudicated will cause the State and its citizens little harm. It is already unlawful to use image-alteration tools to create and disseminate nonconsensual, sexually explicit images, Minn. Stat. §§ 617.262, 604.32; SpaceXAI's own terms prohibit the use of Grok Imagine

to create such images, JA187; R. Doc. 40, ¶ 12; and the undisputed record shows that Grok Imagine has rigorous protections in place to prevent the creation of explicit images of real people, *id.* ¶¶ 13-14. *Cf. Kohls v. Bonta*, 2024 WL 4374134, at *5 (observing that existing law "already provide[s] recourse to public figures or private individuals whose reputations may be afflicted by artificially altered depictions"). An injunction leaves those protections fully intact and withdraws only section 325E.91's additional, unconstitutional restrictions on protected speech.[10]

The district court nevertheless concluded that the balance "tips steeply in favor of the State" because the State has an interest in enforcing its enacted statutes. Add. 14-15; JA302-03; R. Doc. 54, at 12-13 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). But *King*'s presumption that a state is injured whenever it is enjoined from enforcing its statutes applies only to constitutionally valid laws. *See Ala. Ass'n of Realtors*, 594 U.S. at 766 ("[O]ur system does not

[10] The lawsuits the district court noted, which allege that third parties used Grok to create and disseminate child sexual abuse material, Add. 8; JA296; R. Doc. 54, at 6, do not alter the balance. SpaceXAI prohibits and blocks that conduct and has done so since before section 325E.91 was enacted. JA187-88; JA12-13; R. Doc. 40, ¶¶ 11-16; R. Doc. 1, ¶ 26 & nn.13-15. The figures the State cites include reports on thousands of *unaltered* photographs and videos uploaded to Grok. JA177; R. Doc. 39, at 20 n.8.



Appellate Case: 26-2806 Page: 75 Date Filed: 10/30/2026 Entry ID: 5700682

permit agencies to act unlawfully even in pursuit of desirable ends."); *Rodgers*, 942 F.3d at 458 ("[T]he balance of equities … generally favors the constitutionally-protected freedom of expression." (citation modified)); *KH Outdoor, L.L.C. v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) ("[T]he public has no interest in enforcing an unconstitutional ordinance.").

By declining to assess the statute's constitutionality, the district court assumed away the First Amendment violation and then gave dispositive weight to the State's interest in enforcing a law that violates the First Amendment. The court compounded that error by downplaying the threat to SpaceXAI's First Amendment interests by again applying its legally unsupported delay rule. As shown above, SpaceXAI did not delay but rather moved before the statute's effective date. Once the merits are properly considered, the equities and the public interest point decisively toward an injunction.

## CONCLUSION

Section 325E.91 is fatally flawed in multiple ways. Minnesota has trampled its citizens' constitutional rights by flouting decades of controlling Supreme Court precedents that explain exactly how—and how not—



Appellate Case: 26-2806 Page: 76 Date Filed: 10/30/2026 Entry ID: 5700682

to craft a law that properly balances free speech against content that may be prohibited. And it did so knowingly, given the narrower drafts rejected and narrower Minnesota laws passed and successfully defended by the Attorney General in other cases. It thus falls to the judiciary to uphold the First Amendment.

Accordingly, this Court should reverse the district court's order and remand with instructions to enter a preliminary injunction barring the Attorney General from enforcing Minn. Stat. § 325E.91 against SpaceXAI, and it should continue this Court's existing injunction pending appeal until that relief is in place.

Dated: October 29, 2026

Respectfully submitted,

*/s/ Robert E. Dunn*

Robert E. Dunn
EIMER STAHL LLP
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008
(408) 889-1690
RDunn@eimerstahl.com

Johnathan Hall
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 660-7600
jhall@eimerstahl.com

Kenton J. Skarin
Reid Coleman
SPACEXAI LLC
800 West Cesar Chavez Street
Austin, TX 78701
kskarin@x.ai
rcoleman@x.ai

Todd A. Noteboom
Andrew P. Leiendecker
Sarah R. Almquist
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.leiendecker@stinson.com
sarah.almquist@stinson.com

*Counsel for Plaintiff-Appellant*
*SpaceXAI LLC*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,784 words, excluding the parts of the brief exempted by Rule 32(f).

2. This opening brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

3. Pursuant to 8th Cir. R. 28A(h)(2), this brief has been scanned for viruses and is virus-free.

*/s/ Robert E. Dunn*
Robert E. Dunn

*Counsel for Plaintiff-Appellant*
*SpaceXAI LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system, which will serve all counsel of record.

*/s/ Robert E. Dunn*
Robert E. Dunn

*Counsel for Plaintiff-Appellant*
*SpaceXAI LLC*