**No. 26-2806**

In the United States Court of Appeals
for the Eighth Circuit

SpaceXAI LLC,

*Plaintiff-Appellant,*

*v.*

KEITH M. ELLISON, in his official capacity
as Attorney General of Minnesota

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Minnesota,
Case No. 0:26-cv-03425-DWF-DTS

# BRIEF OF AMICUS CURIAE THE DUKE LAW FIRST AMENDMENT CLINIC IN SUPPORT OF PLAINTIFF-APPELLANT

Sarah H. Ludington
C. Amanda Martin
The Duke Law First Amendment Clinic
210 Science Drive
Durham, NC 27708
(919) 613-7048
ludington@law.duke.edu

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................ i
TABLE OF AUTHORITIES .................................................................. iii
INTEREST OF AMICUS CURIAE ........................................................ 1
INTRODUCTION AND SUMMARY OF ARGUMENT ....................... 2
ARGUMENT ........................................................................................ 4
- I. PONT REACHES PROTECTED SPEECH BECAUSE IT LACKS LIMITING LANGUAGE INCLUDED IN SIMILAR LAWS. ........................................................................ 4
- II. PONT IMPEDES SCIENTIFIC EXPRESSION. ................ 6
  - A. PONT removes a tool used by breast cancer survivors and the physicians treating them. .............................. 6
  - B. PONT blocks AI researchers from studying nudification technology and building detection software to combat it. ........................................................................ 7
- III. PONT REACHES RELIGIOUS, POLITICAL, AND ARTISTIC SPEECH. ......................................................... 8
  - A. PONT sweeps in protected religious imagery. .......... 8
  - B. PONT reaches popular forms of political commentary. ........................................................................ 11
  - C. PONT hamstrings local artists. ............................... 14
- IV. PONT FRUSTRATES SPEECH BETWEEN CONSENTING ADULTS. ........................................................................ 15
  - A. PONT disrupts the virtual marital bed. .................... 15
  - B. PONT handicaps Minnesota's virtual sex workers. 16

CONCLUSION .................................................................................... 18

CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION AND TYPEFACE AND TYPESTYLE REQUIREMENTS .......... 19

CERTIFICATE OF COMPLIANCE WITH EIGHTH CIRCUIT RULE 28A(H) .......... 20

CERTIFICATE OF SERVICE .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) .......... 17

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) .......... 16

*Griswold v. Connecticut*,
381 U.S. 479 (1965) .......... 15

*Hustler Mag., Inc. v. Falwell*,
485 U.S. 46 (1988) .......... 11

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022) .......... 8, 10

*Lawrence v. Texas*,
539 U.S. 558 (2003) .......... 16

*Miller v. California*,
413 U.S. 15 (1973) .......... 6, 7, 14

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .......... 2

*Sable Commc'ns of Cal., Inc. v. FCC*,
492 U.S. 115 (1989) .......... 17

*State v. Casillas*,
952 N.W.2d 629 (2020) .......... 4, 5

*State v. VanBuren*,
2018 VT 95, 214 A.3d 791. .......... 4

*Sweezy v. New Hampshire*,
354 U.S. 234 (1957) .......... 8

*United States v. Williams*,
553 U.S. 285 (2008) .......... 2

**Statutes**

29 U.S.C. § 1185b ........ 7

Minn. Stat. § 325E.91 ........ passim

Minn. Stat. § 609.341, subd. 5 ........ 3, 7, 9

Minn. Stat. § 617.261 ........ 4, 5

**Other Authorities**

*10 Practical Intimacy Tips for Couples Experiencing Deployment,* Military.com, https://tinyurl.com/2xnlzvcz ........ 15

Adobe Creative Team, *Creative Pros Are Leveraging Generative AI to Do More and Better Work* (Feb. 2, 2024), https://tinyurl.com/275fez66 ........ 14

Armaan Agarwal, *Grok Creates Elon Musk Wearing Bikini Photo on X After User Request, Musk Responds to Creepy Trend*, India Today (Jan. 2, 2026), https://tinyurl.com/2ct2xony ........ 13

Brandon T. McDaniel & Michelle Drouin, *Sexting Among Married Couples*, 18 Cyberpsychology, Behav. & Soc. Networking 628 (2015) ........ 15

*Chih Lai and Manjeet Rege on the Rise of Deepfake AI Technology*, Univ. of St. Thomas Newsroom (Aug. 2, 2023), https://tinyurl.com/2bu69a9g ........ 7

Cole Reynolds, *AI Helps Create Tattoos in the Twin Cities—and an Identity Crisis*, Star Trib. (Oct. 8, 2026), https://tinyurl.com/284sljet ........ 14

Compl., *X.AI LLC v. Ellison*, No. 0:26-cv-03425-DWF-DTS (D. Minn. July 27, 2026), ECF No. 1 ........ 2, 3

Daisy Finch, *OnlyFans Twins: How Users Are Using AI to Be Always Available*, Polyester Zine (Aug. 27, 2025), https://tinyurl.com/286ts4a6 ........ 17

Daniela Ovadia, *AI Will Help Cinderella to See Herself in the Mirror*, Cancerworld (Feb. 11, 2020), https://tinyurl.com/fzcpz5f6 ........ 6

Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj., *X.AI LLC v. Ellison*, No. 0:26-cv-03425-DWF-DTS (D. Minn. Aug. 14, 2026), ECF No. 38 ........ 15

Doloresz Katanich, *OnlyFans Takes $7.2bn from Subscribers in 2024*, Euronews (Aug. 25, 2025), https://tinyurl.com/2an72fp9 ........ 16

Edmund C. Ryder, *Nudity and Classical Themes in Byzantine Art*, Metro. Museum of Art: Heilbrunn Timeline of Art Hist. (Sept. 2008), https://tinyurl.com/2dag56ds ........ 9

Elon Musk (@elonmusk), X (Jan. 14, 2026, 2:53 PM EST), https://tinyurl.com/bdpd9ba5 ........ 12

Fenix Int'l Ltd., *Annual Report and Consolidated Financial Statements for the Year Ended 30 November 2025* (2026), https://tinyurl.com/me448b4u ........ 16

Frank Geiser, *Mythologies of AI Consent: A Review of 'A Third Act' at Sulk Chicago*, Newcity Art (June 11, 2024), https://tinyurl.com/25en2kqy ........ 14

Harrison Smith, *Deface the Nation: Our Best Political Photoshops*, Washingtonian (July 10, 2015), https://tinyurl.com/23uwxvyq ........ 11

Landeur (@Landeur), X (Jan. 14, 2026, 6:15 PM EST), https://tinyurl.com/2bzy3m7j ........ 12

Margaret R. Miles, *A Complex Delight: The Secularization of the Breast, 1350–1750* (2008) ........ 9

*Mayo Clinic Leads U.S. News & World Report's Hospital Rankings for a 36th Time*, KIMT (July 29, 2025), https://tinyurl.com/2xq7fyrf ........ 6

Mayo Clinic, *Simon J. Laplante, M.D., M.S.*, https://tinyurl.com/22f38vfh ........ 6

Olivia Kemp, *'She Never Sleeps': This Platform Wants to Be OnlyFans for the AI Era*, CNN (June 21, 2025), https://tinyurl.com/24d5c57y ........ 17

Orla Brennan, *Artist Arvida Byström Deepfakes Her Own Nudes*, AnOther Mag. (Apr. 3, 2024), https://tinyurl.com/29ljn964 .................. 16

Refik Anadol, *Unsupervised*, MoMA, https://tinyurl.com/2a88lsav...... 14

*The Health Issue*, N.Y. Mag. (July 15, 2024), https://tinyurl.com/2y7qewcv .................................................................. 12

wirelyss (@wirelyss), X (Jan. 14, 2026, 7:11 PM EST), https://tinyurl.com/yc55dyd4 .................................................................. 13

## INTEREST OF AMICUS CURIAE

The Duke Law First Amendment Clinic is a clinical program of Duke University School of Law dedicated to defending and advancing the freedoms of speech, press, assembly, and petition.[1] The Clinic litigates in state and federal courts nationwide, serves as a public resource on free expression and press rights, and trains law students to practice in this field.

Amicus submits this brief to draw this Court's attention to the practical consequences of Minn. Stat. § 325E.91 for Minnesotans engaged in lawful expressive activity. The statute's reach extends beyond the harms the legislature identified to encompass, among others, clinicians who work with medical imaging, researchers who develop and audit image-generation models, and artists working in figurative and documentary media. The Clinic has researched the statute's effect on these Minnesotans, who are not parties to this appeal and whose interests are not represented in the parties' briefing. These effects bear directly on the overbreadth and vagueness questions in this appeal.

[1] No party's counsel authored this brief in whole or in part. No person other than amicus curiae contributed money intended to fund the preparation or submission of this brief. The Duke Law First Amendment Clinic is a clinical program of Duke University School of Law; this brief represents the views of the Clinic and not those of Duke University or Duke University School of Law.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Minnesota has a legitimate interest in regulating nonconsensual sexual images, especially considering the abuses facilitated by platforms like Grok. Despite this laudable goal, Minnesota's Prohibition on Nudification Technology ("PONT") is written so broadly that it imperils legitimate uses of image-generating technology. The consequences are already visible: SpaceXAI represented that PONT left it with "no practical choice but to restrict Grok Imagine's image-editing features." Compl. ¶ 7, *X.AI LLC v. Ellison*, No. 0:26-cv-03425-DWF-DTS (D. Minn. July 27, 2026), ECF No. 1. By restricting Minnesotans' ability to express themselves with such tools, PONT deprives them of their First Amendment rights.

As written, PONT is overbroad and facially violates the First Amendment. Where expressive activity is involved, the overbreadth doctrine requires a plaintiff to establish that a statute "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008); *see Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). The first step in the overbreadth analysis is to construe the statute to determine what it covers. *Williams*, 553 U.S. at 293.

PONT forbids anyone "who owns or controls a website" from allowing users to "nudify an image or video" through that website. Minn. Stat. § 325E.91, subd. 2(a). Minnesota defines "nudify" as "the process by which . . . an image or video is

altered to depict an intimate part." Minn. Stat. § 325E.91, subd. 1(d). Intimate parts "include[] the primary genital area, groin, inner thigh, buttocks, or breast of a human being." Minn. Stat. § 609.341, subd. 5.

Each violation of this law exposes the platform to two levels of liability. First, PONT grants any "individual depicted" with a full suite of civil remedies, including punitive damages, attorney fees, and "other relief the court deems just and equitable." Minn. Stat. § 325E.91, subd. 4. Further, the "individual depicted" need not be the person whose image was nudified. PONT gives anyone "depicted in an image or video that was nudified" the same cause of action. *Id.* Second, even absent an injury or plaintiff, PONT empowers the Attorney General to seek civil penalties up to $500,000 "for each unlawful access, download, or use." Minn. Stat. § 325E.91, subd. 5(a). Consequently, a user that nudifies his own image, for his own use, exposes the platform he used to a half-a-million-dollar penalty. While the penalty caps at $500,000, "each unlawful access, download, or use" constitutes a separate violation. *Id.* PONT's virtually limitless liability will likely drive platforms to substantially reduce or end service, as SpaceXAI has indicated. Compl. ¶ 7.

Here, this Court cannot remedy PONT's substantial overbreadth through judicial interpretation. Its overbreadth stems from multiple omissions that interact to bring a substantial amount of protected speech within the statute's reach.

Further, the protected speech PONT restricts is not hypothetical. This brief illustrates those unconstitutional applications, showing how PONT imperils (1) images created by breast cancer patients and the physicians treating them; (2) AI researchers building nudification detection software; (3) people creating religious or devotional images; (4) political satirists; (5) artists; (6) married couples; and (7) sex workers.

For these reasons, this Court should rule that SpaceXAI is likely to succeed on the merits because PONT is facially unconstitutional under the First Amendment.

## ARGUMENT

### I. PONT reaches protected speech because it lacks limiting language included in similar laws.

The Minnesota legislature already knows how to regulate sexual imagery without violating the First Amendment. In 2016, it criminalized the "nonconsensual dissemination" of "private sexual images," commonly known as revenge porn. Minn. Stat. § 617.261. The revenge porn statute survived strict scrutiny, in part, because it was "narrowly tailored." *State v. Casillas*, 952 N.W.2d 629, 643–44 (Minn. 2020). The Minnesota legislature and other states' lawmakers have narrowly tailored laws targeting nudification by including three limiting requirements that PONT lacks. *See, e.g.*, *id.*; *see also State v. VanBuren*, 2018 VT 95, ¶ ¶ 47–69, 214 A.3d 791, 807–14 (upholding Vermont's revenge porn statute

in part because it had limiting requirements, including consent and mens rea requirements and specific carveouts for valuable speech).

First, the revenge porn statute provides “seven broad exemptions” that preemptively carve out protected categories of speech. *Casillas*, 952 N.W.2d at 643. Those exemptions include materials pertaining to legal investigations, medical treatment, artistic expression, public interest, and research, among others. *See id.* By contrast, PONT indiscriminately reaches each of these protected speech categories.

Second, the revenge porn statute applies only when the user “intentionally disseminate[s]” the nudified material. Minn. Stat. § 617.261, subd. 1. Under PONT, liability attaches as soon as a user “access[es], download[s], or use[s]” the service. § 325E.91, subd. 2(a)(1). Without a dissemination requirement, PONT reaches speech that never leaves the user’s personal computer.

Finally, the revenge porn statute requires that the user disseminated the material without consent. § 617.261, subd. 1(2). PONT, on the other hand, ignores consent; the word “consent” appears nowhere in the statute. By including consensual speech, PONT ignores users’ agency and impedes many of the most valuable uses of generative technology, including scientific research.

## II. PONT impedes scientific expression.

The First Amendment generally protects speech that has serious "scientific value." *Miller v. California*, 413 U.S. 15, 24 (1973). Minnesota's anti-nudification law reaches such speech. In fact, it burdens two fields Minnesota excels in: medicine and AI research.

### A. PONT removes a tool used by breast cancer survivors and the physicians treating them.

Minnesota's Mayo Clinic leads the nation in medical care. *Mayo Clinic Leads U.S. News & World Report's Hospital Rankings for a 36th Time*, KIMT (July 29, 2025), https://tinyurl.com/2xq7fyrf. Researchers and providers at the Mayo Clinic use AI to generate simulated images of patients, allowing surgeons to simulate and prepare for surgery. *See* Mayo Clinic, Simon J. Laplante, M.D., M.S., https://tinyurl.com/22f38vfh (last visited Nov. 2, 2026) (describing "generative AI for simulation" in surgical planning). Generative technology also empowers patients to visualize their surgical options after a mastectomy. Daniela Ovadia, *AI Will Help Cinderella to See Herself in the Mirror*, Cancerworld (Feb. 11, 2020), https://tinyurl.com/fzcpz5f6. Using simulated images of their own bodies, patients considering reconstruction can make more informed decisions about their care. *Id.*

Under a plain language reading of PONT, medical patients are "identifiable individual[s]" and altered images of their breasts would show "an intimate part not depicted in an original unaltered image." § 325E.91, subd. 1(b), (d)(1). The

statute's definition of "intimate part" expressly includes the "breast of a human being." Minn. Stat. § 609.341, subd. 5; *see* Minn. Stat. § 325E.91, subd. 1(c). So, a breast cancer survivor considering reconstructive surgery at the Mayo Clinic—a procedure federal law requires insurers to cover—could trigger a half-million-dollar platform penalty if her care includes generating a realistic image of her reconstructed breast. *See* 29 U.S.C. § 1185b. PONT robs those patients of that information and bars surgeons from using cutting-edge technology with scientific value. *See Miller*, 413 U.S. at 24. Because PONT would impinge this protected speech, its application here runs afoul of the First Amendment.

### B. PONT blocks AI researchers from studying nudification technology and building detection software to combat it.

Long term solutions to the crisis of internet exploitation that PONT seeks to address will rely on researchers' ability to create tools that can root out misuse as soon as it happens and prohibit models from being manipulated. Unfortunately, the overbreadth of PONT prohibits researchers in Minnesota from being part of such a solution.

AI researchers simulate the misuse of platforms to develop technologies that identify and eliminate that misuse. Researchers in Minnesota, for example, generate synthetic images to teach and study deepfake detection. *Chih Lai and Manjeet Rege on the Rise of Deepfake AI Technology*, Univ. of St. Thomas Newsroom (Aug. 2, 2023), https://tinyurl.com/2bu69a9g. In this process, a

researcher running her own image-generating model is both the "user" who nudifies an image and the "person who owns or controls" the "software" that "allow[s]" it, triggering potential liability for the platform.[2] Minn. Stat. § 325E.91, subd. 2(a). Because PONT lacks a dissemination requirement or scientific use carveout, *see supra* Part I, that liability attaches even though the researcher's images never leave the lab.

As the Supreme Court has stated, researchers "must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) (plurality opinion). PONT restrains researchers, stifling their inquiry by removing tools integral to their work. In doing so, PONT violates the rights guaranteed to the researchers by First Amendment.

## III. PONT reaches religious, political, and artistic speech.

### A. PONT sweeps in protected religious imagery.

The First Amendment's protection of religious expression is a bedrock constitutional principle. In fact, the Supreme Court has stated that "the First Amendment doubly protects religious speech." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 523 (2022). Yet PONT potentially censors religious imagery by

---

[2] In such cases, researchers are not necessarily using proprietary image-generating models. Instead, they are using their own models, meaning the University or individual researcher may be liable under PONT.

attaching liability to platforms when a user generates an image of an "intimate part" of an "identifiable individual." Minn. Stat. § 325E.91, subd. 1(b)–(c). PONT broadly defines an "identifiable individual," as a person identifiable "from the image itself, by the person depicted . . . or by another person." Minn. Stat. § 325E.91, subd. 1(b). And "intimate part[s]" include the breast, groin, and inner thighs of a human being. Minn. Stat. § 609.341, subd. 5.

Consequently, PONT could attach liability to generated images of religious and historical figures, both living and dead. Notably, it sweeps in important typologies of Christian art. For instance, painters have long depicted the bare breasts of Mary breastfeeding the infant Jesus as a symbol of her maternity. *See generally* Margaret R. Miles, *A Complex Delight: The Secularization of the Breast, 1350–1750* (2008). Additionally, almost all depictions of Jesus Christ on the Cross include his bare chest, groin, and inner thigh. *See* Edmund C. Ryder, *Nudity and Classical Themes in Byzantine Art*, Metro. Museum of Art: Heilbrunn Timeline of Art Hist. (Sept. 2008), https://tinyurl.com/2dag56ds.

These uses aren't hypothetical. Minnesotan Catholics already generate devotional images of the saints and Christ on the Cross, such as Figure One,[3]

---

[3] Mark Johnson, Saints Come to Life Through Artificial Intelligence, Cath. Spirit (Apr. 17, 2024), https://tinyurl.com/2asth88n; r/GenerationOfTheSaints, Reddit, https://tinyurl.com/27knpzeg (last visited Nov. 2, 2026). For more examples of religious expression using AI see: u/practicalfaiths, *Saints Fabian and Sebastian*, Reddit: r/generationofthesAInts, https://tinyurl.com/2cecxgmf (last visited Nov. 4,

below. PONT effectively prohibits platforms from facilitating religious speech, thereby preventing Minnesotans from engaging in the "doubly protected" religious expression they already practice. *See Kennedy*, 597 U.S. at 523.



2026); u/Informal-Selection16, *Via Crucis Day 14—He Is Not Here*, Reddit: r/DamasceneSacredArt, https://tinyurl.com/292ud2hz (last visited Nov. 4, 2026); u/nrsht, *Holy Apostles (How They Died)*, Reddit: r/generationofthesAInts, https://tinyurl.com/263ajd7y (last visited Nov. 4, 2026); Heavenly Visions, Facebook (Oct. 16, 2026, 12:13 PM), https://tinyurl.com/26uowsy2; *The Whisper in the Garden Art App*, Bible Art Gallery (July 31, 2025), https://tinyurl.com/2976sj9d; @artur_ai_art, Instagram (Sept. 20, 2026), https://tinyurl.com/22wea74m; *see also* Geoff Brumfiel, *Fantasy or Faith? One Company's AI-Generated Bible Content Stirs Controversy*, NPR (Sept. 7, 2025), https://tinyurl.com/2795xpaf.

### B. PONT reaches popular forms of political commentary.

The political cartoon is a venerable form of protected speech. *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 53–55 (1988). Such satirical cartoons are "often based on exploitation of unfortunate physical traits" and have long relied on image-altering technologies. *Id.* at 54. For example, on its May 1980 cover, *Washingtonian* Magazine satirized President Ronald Reagan's age by photoshopping his head atop a muscular body wearing only a Speedo.[4] Harrison Smith, *Deface the Nation: Our Best Political Photoshops*, Washingtonian (July 10, 2015), https://tinyurl.com/23uwxvyq.




[4] PONT exempts platforms from liability where editing an image requires the "technical skill of a user." Minn. Stat. § 325E.91, subd. 3; *see id.* subd. 1(e). Because courts would have to decide how much skill is enough to be exempt, it's unclear whether images like this one—produced in Photoshop or by hand—would fall inside PONT's scope.

Additionally, in July 2024, *New York Magazine* criticized the health of then-presidential candidates Joe Biden and Donald Trump by publishing altered images of them bare-breasted, wearing only their underpants. *The Health Issue*, N.Y. Mag (July 15, 2024), https://tinyurl.com/2y7qewcv.




Finally, in January 2026, Musk asked whether "anyone [could] actually break Grok image moderation." Elon Musk (@elonmusk), X (Jan. 14, 2026, 2:53 PM EST), https://tinyurl.com/bdpd9ba5. Users replied by nudifying Musk himself, using Grok to put him in a bikini to prove the guardrails did not work. *See, e.g.*, Landeur (@Landeur), X (Jan. 14, 2026, 6:15 PM EST), https://tinyurl.com/2bzy3m7j; wirelyss (@wirelyss), X (Jan. 14, 2026, 7:11 PM

EST), https://tinyurl.com/yc55dyd4. Even Musk himself shared one such image. Armaan Agarwal, *Grok Creates Elon Musk Wearing Bikini Photo on X After User Request, Musk Responds to Creepy Trend*, India Today (Jan. 2, 2026), https://tinyurl.com/2ct2xony.




Because these images of Musk in a bikini reveal groin and inner thigh, PONT would attach liability in the same way it attaches liability for abusive and nonconsensual nudification. This disregards the First Amendment's foundational commitment to protecting political expression and criticism of public figures.

### C. PONT hamstrings local artists.

The First Amendment safeguards expression with serious artistic value. *Miller,* 413 U.S. at 34. Artists increasingly use generative technologies to help realize their visions. According to Adobe, more than four in five creative professionals now use generative AI in their work. Adobe Creative Team, *Creative Pros Are Leveraging Generative AI to Do More and Better Work* (Feb. 2, 2024), https://tinyurl.com/275fez66. One Twin Cities tattoo artist recently described how his process uses the technology to develop designs. Cole Reynolds, *AI Helps Create Tattoos in the Twin Cities—and an Identity Crisis*, Star Trib. (Oct. 8, 2026), https://tinyurl.com/284sljet. The fine art world has also begun featuring exhibits created with AI tools. *Refik Anadol, Unsupervised*, MoMA, https://tinyurl.com/2a88lsav (last visited Nov. 2, 2026).

In 2024, artists Justice Apple and Mac Pierce debuted "A Third Act," a collection of photographs in which they used AI to replace their fully covered bodies with fabricated nude bodies. Frank Geiser, *Mythologies of AI Consent: A Review of "A Third Act" at Sulk Chicago*, Newcity Art (June 11, 2024), https://tinyurl.com/25en2kqy. A review of the work highlighted its exploration of consent, deepfakes, and the societal implications of AI-generated imagery. *Id.* Ironically, PONT would bar the creation of this constitutionally protected work because it is not limited to nonconsensual images.

## IV. PONT frustrates speech between consenting adults.

PONT's practical applications do not align with its compelling interest of preventing "digital sexual victimization." Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj. at 26, 31, 34–35, *X.AI LLC v. Ellison*, No. 0:26-cv-03425-DWF-DTS (D. Minn. Aug. 14, 2026), ECF No. 38. Not all nudification subjects consider themselves victims. Many adults consensually nudify themselves and others for legitimate reasons. But because PONT ignores consent, *see supra* Part I, it transforms consenting adults into de jure victims, undercutting the State's compelling interest.

### A. PONT disrupts the virtual marital bed.

What the Supreme Court has called the "sacred precincts of marital bedrooms" are no longer contained to literal bedrooms. *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965). Married and committed couples increasingly share intimate moments through digital means, especially when work, school, or military service keep them physically distant. *See, e.g.*, Brandon T. McDaniel & Michelle Drouin, *Sexting Among Married Couples*, 18 Cyberpsychology, Behav. & Soc. Networking 628 (2015); *10 Practical Intimacy Tips for Couples Experiencing Deployment*, Military.com, https://tinyurl.com/2xnlzvcz (last visited Nov. 2, 2026) (recommending boudoir photographs for a deployed spouse).

Couples today may choose to use image-altering tools to create intimate images of themselves for each other. *See, e.g.*, Orla Brennan, *Artist Arvida Byström Deepfakes Her Own Nudes*, AnOther Mag. (Apr. 3, 2024), https://tinyurl.com/29ljn964. The Constitution protects such intimacy in "both its spatial and in its more transcendent dimensions." *Lawrence v. Texas*, 539 U.S. 558, 562 (2003). And the First Amendment persists "whatever the challenges of applying the Constitution to ever-advancing technology." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011). PONT ignores these principles. Because PONT applies to consensual images, it treats a husband who generates an image of himself for his deployed partner identically to a predator who generates a nonconsensual nude image of a woman.

**B. PONT handicaps Minnesota's virtual sex workers.**

Online sex work is a multibillion-dollar industry. Doloresz Katanich, *OnlyFans Takes $7.2bn from Subscribers in 2024*, Euronews (Aug. 25, 2025), https://tinyurl.com/2an72fp9. Minnesotan sex workers compete with millions of other creators across the world. Fenix Int'l Ltd., *Annual Report and Consolidated Financial Statements for the Year Ended 30 November 2025*, at 2 (2026), https://tinyurl.com/me448b4u. To participate in that market and remain competitive, they must have access to the same tools available to other content creators.

Generative technologies multiply the reach of virtual sex workers. For example, workers can create AI "twins" that stay available around the clock, allowing them to broaden their exposure and earn more money. Daisy Finch, *OnlyFans Twins: How Users Are Using AI to Be Always Available*, Polyester Zine (Aug. 27, 2025), https://tinyurl.com/286ts4a6; Olivia Kemp, *'She Never Sleeps': This Platform Wants to Be OnlyFans for the AI Era*, CNN (June 21, 2025), https://tinyurl.com/24d5c57y. Workers who wish to transition away from live performance can use generative technologies to bridge the income gap. *See* Finch, *supra* (quoting a 58-year-old creator: "I want to retire someday. . . . I see AI as a way to take this brand that I've built . . . and see if it could continue forever.").

The First Amendment protects the rights of adults to make and consume sexual content. "Sexual expression which is indecent but not obscene is protected by the First Amendment." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). That protection extends to computer-generated sexual imagery that "records no crime and creates no victims by its production." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 250 (2002). PONT unduly restricts the right to create and consume sexual content by stripping Minnesotan sex workers of the ability to use AI.

## CONCLUSION

Minnesota has a legitimate interest in regulating nudification technology. However, it must regulate that technology within the boundaries prescribed by the Constitution. PONT exceeds those boundaries because it does not exempt plainly legitimate uses of image-generating technology and because it applies regardless of dissemination or consent. PONT indiscriminately reaches scientific, religious, political, artistic, and sexual speech, chilling protected expression. The unconstitutional applications are substantial and dwarf its constitutional applications in comparison. For these reasons, this Court should rule that SpaceXAI is likely to succeed on the merits because PONT is facially unconstitutional under the First Amendment.

Respectfully submitted,

Sarah H. Ludington
C. Amanda Martin
The Duke Law First Amendment Clinic
210 Science Drive
Durham, NC 27708
(919) 613-7048
ludington@law.duke.edu

*Counsel for Amicus Curiae*

November 5, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION AND TYPEFACE AND TYPESTYLE REQUIREMENTS

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 3,346 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman 14-point font.

*/s/ Sarah H. Ludington*

November 5, 2026

## CERTIFICATE OF COMPLIANCE WITH EIGHTH CIRCUIT RULE 28A(H)

Pursuant to this Court's Rule 28A(h), I hereby certify that the electronic version of this document has been scanned for viruses and is virus-free.

*/s/ Sarah H. Ludington*

November 5, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

*/s/ Sarah H. Ludington*

November 5, 2026